



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 28, 2021**

*Mark X. Mullin*
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **BAINBRIDGE UINTA, LLC**, *et al.*,[1] | § | Case No. 20-42794 |
| | § | |
| Debtors. | § | Jointly Administered |

---

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

---

CAME ON FOR CONSIDERATION (a) confirmation of the *Debtors' Joint Chapter 11 Plan of Liquidation* [Docket No. 293] filed on May 14, 2021 by Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC (collectively, the **"Debtors"**) in the above-captioned chapter 11 bankruptcy cases (the **"Chapter 11 Cases"** or **"Cases"**), as amended by the *Debtors' First Amended Joint Chapter 11 Plan of Liquidation* [Docket No. 345] (together with all documents and/or supplements related thereto or

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Bainbridge Uinta, LLC (9240); and Bainbridge Uinta Holdings, LLC (9761).

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 1 OF 39

8580169 v1 (72651.00003.000)

contemplated thereunder, the **"Plan"**)[2] filed on June 24, 2021, including the documents contained in the Debtors' *Notice of Filing Chapter 11 Plan Supplement* [Docket No. 334] (as amended, modified or supplemented, the **"Plan Supplement"**) filed on June 16, 2021, and (b) final approval of the *Debtors' Joint Disclosure Statement Pursuant to 11 U.S.C. § 1125* [Docket No. 294] (the **"Disclosure Statement"**) filed on May 14, 2021.

Having considered the Plan, the Disclosure Statement, the *Declaration of Paul Ching in Support of Confirmation of the Debtors' Joint Chapter 11 Plan of Liquidation* [Docket No. 347] (the **"Ching Declaration"**) filed by the Debtors on June 24, 2021, the *Declaration of Theresa Garcia Regarding Ballots and Tabulation of Votes in Connection with the Debtors' Joint Chapter 11 Plan of Liquidation* [Docket No. 349] (the **"Ballot Declaration"**) filed by the Debtors on June 24, 2021, and all other evidence presented at the combined hearing to consider final approval of the Disclosure Statement and confirmation of the Plan held before this Court on **June 25, 2021 at 9:30 a.m. CT** (the **"Confirmation Hearing"**); and the Debtors having timely provided all holders of Claims against or Interests in the Debtors (collectively, **"Claimants"**) and all parties in interest with good and sufficient notice of the Plan, Disclosure Statement, Confirmation Hearing, and all applicable deadlines in accordance with the provisions of title 11 of the United States Code (the **"Bankruptcy Code"**),[3] the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), the Local Rules of this Court (the **"Local Rules"**), and the orders of this Court, as evidenced by the docket in this case, the Ballot Declaration and the Certificates of Service filed with this Court (collectively, the **"Solicitation Certificates"**);[4] and all

---

[2] Capitalized terms used but not defined herein shall have the meanings provided in the Plan unless otherwise noted.

[3] All references to statutory code provisions reference the Bankruptcy Code unless otherwise noted.

[4] **"Solicitation Certificates,"** as used herein, refers collectively to (i) the *Certificate of Service* dated May 25, 2021 [Docket No. 307] evidencing the Debtors' service of the Solicitation Packages (defined below); (ii) the *Certificate of Service* dated June 18, 2021 [Docket No. 335] evidencing the Debtors' service of the Plan Supplement; (iii) the *Certificate of Service* dated June 24, 2021 [Docket No. 353] evidencing service of the *Debtors' First Amended Chapter 11 Plan of Liquidation*; and (iv) any other *Certificates of Service* Filed with the Court in connection with the Plan, Plan Documents, Disclosure Statement, Solicitation Packages, or solicitation process.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 2 OF 39

8580169 v1 (72651.00003.000)

objections to confirmation of the Plan or final approval of the Disclosure Statement (collectively, the **"Objections"**) having been overruled by the Court on the record at the Confirmation Hearing and/or by terms of this order (this **"Order"**) or resolved by the applicable parties; and upon the entire record of these Cases, the record made at the Confirmation Hearing, and the arguments of counsel and all evidence adduced at the Confirmation Hearing; and the Court having determined, based upon the foregoing, and as further set forth herein, that the Plan should be confirmed and the Disclosure Statement should be approved on a final basis; and after due deliberation and good cause appearing therefor, the Court hereby

### FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:

A. **Findings of Fact and Conclusions of Law**. The findings and conclusions set forth herein and on the record at the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by this Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated into this Order. To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

B. **Jurisdiction, Venue, Core Proceeding**. This Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan and final approval of the Disclosure Statement is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (L) and (O), and this Court has jurisdiction to enter a final order with respect thereto. To the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution, the Debtors consent to the entry of a final order by the Court in accordance with the terms set forth herein. The Debtors are eligible debtors

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 3 OF 39

8580169 v1 (72651.00003.000)

under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are proponents of the Plan under section 1121(a) of the Bankruptcy Code.

C. **Commencement of the Chapter 11 Cases**. On September 1, 2020 (the **"Petition Date"**), each of the Debtors filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code, thereby commencing these Cases. The Debtors' Cases are jointly administered under Case No. 20-42794 pursuant to Bankruptcy Rules 1015(b) and Local Rule 1015-1. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108. The Debtors commenced these Cases in good faith and for appropriate purposes and have acted in good faith throughout the duration of the Cases. No trustee or examiner has been appointed in these Cases under Bankruptcy Code § 1104. No committee has been appointed in these Cases under Bankruptcy Code § 1102.

D. **Judicial Notice**. The Court takes judicial notice of the dockets of the Debtors' Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings, proofs of claim, reports, and other documents filed in these Cases, all orders entered in these Cases, all hearing transcripts in these Cases, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of these Cases.

E. **Burden of Proof**. Based on the record of the Debtors' Chapter 11 Cases: (i) each of the Debtors has met their burden of proving each element of Bankruptcy Code § 1129(a) and/or (b) by a preponderance of the evidence; (ii) the Debtors have complied with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules with respect to the Plan and Disclosure Statement and their solicitation of votes on the Plan, including, without limitation, Bankruptcy Rule 2002; (iii) the Plan satisfies all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, including, without limitation, Bankruptcy Code §§ 1122, 1123, and 1129; and (iv) the

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING     PAGE 4 OF 39
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION     8580169 v1 (72651.00003.000)

Disclosure Statement satisfies all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, including, without limitation, Bankruptcy Code § 1125.

      F.    **Adequacy of Disclosure Statement**. The Disclosure Statement, which was timely and properly delivered to all claimants and parties-in-interest entitled to vote, contains "adequate information," as such term is defined in Bankruptcy Code § 1125(a)(1), with respect to the Debtors, the Plan, and the transactions contemplated therein.

      G.    **Disclosure Statement Order**. On May 21, 2021, the Court entered its *Order (I) Conditionally Approving the Disclosure Statement; (II) Scheduling a Combined Plan and Disclosure Statement Hearing; (III) Approving the Solicitation Packages and Procedures; (IV) Approving the Form of Ballots, Notices, and Other Solicitation Materials; (V) Setting Supplemental Administrative Expense Claim Bar Date; and Granting Related Relief* [Docket No. 304] (the **"Disclosure Statement Order"**), which, among other things:

    i.    granted the Debtors' *Emergency Motion for Entry of an Order (I) Conditionally Approving the Disclosure Statement; (II) Scheduling a Combined Plan and Disclosure Statement Hearing; (III) Approving the Solicitation Packages and Procedures; (IV) Approving the Form of Ballots, Notices, and Other Solicitation Materials; (V) Setting Supplemental Administrative Expense Claim Bar Date, and (VI) Granting Related Relief* [Docket No. 295] (the **"Motion for Conditional Approval"**) filed on May 17, 2021;

    ii.    conditionally approved the Disclosure Statement;

    iii.    established **June 23, 2021 at 5:00 p.m. CT** as the deadline for parties to object to final approval of the Disclosure Statement and/or confirmation of the Plan (the **"Objection Deadline"**);

    iv.    established **June 23, 2021 at 5:00 p.m. CT** as the deadline for parties to submit Ballots (defined below) accepting or rejecting the Plan (the **"Voting Deadline"**);

    v.    approved the form of the *Notice of (I) Combined Hearing, (II) Supplemental Administrative Claims Bar Date, and (III) Deadline to Object to Debtors' Plan of Liquidation* attached to the Motion for Conditional Approval as <u>Exhibit B</u> (the **"Combined Hearing Notice"**);

    vi.    approved the form of *Non-Voting Status Notice With Respect to Unimpaired Classes Presumed to Accept the Joint Chapter 11 Plan of Liquidation of Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC* attached as <u>Exhibit C</u> to the Motion for

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING         PAGE 5 OF 39
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION     8580169 v1 (72651.00003.000)

Conditional Approval and approved the form of *Non-Voting Status Notice With Respect to Impaired Classes Presumed to Reject the Joint Chapter 11 Plan of Liquidation of Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC* attached to the Motion for Conditional Approval as Exhibit D (collectively, the **"Non-Voting Status Notices"**), including the Opt-Out Forms attached to each Non-Voting Status Notice for the purpose of enabling parties to "opt out" of the Plan's Non-Debtor Release (as defined below) provisions (the **"Opt-Out Form"**);

vii.     approved the form of the *Ballot for Voting to Accept or Reject the Debtors' Plan of Liquidation* attached to the Motion for Conditional Approval as Exhibit E (the **"Ballot"**);

viii.    established procedures for the Debtors' solicitation of votes on the Plan; and

ix.     scheduled the Confirmation Hearing.

H.     **Solicitation**.  On or about May 21, 2021, the Debtors, through their counsel, Kane Russell Coleman Logan PC (**"KRCL"**), served solicitation packages to all Claimants and parties in interest in these Cases consisting of (i) the Combined Hearing Notice; (ii) the Disclosure Statement, including the Plan attached thereto as Exhibit A and the *Liquidation Analysis* attached thereto as Exhibit B (the **"Liquidation Analysis"**); (iii) the Disclosure Statement Order; and (iv) where appropriate, a Ballot or a Non-Voting Status Notice and Opt-Out Form (collectively, the **"Solicitation Packages"**). As further evidenced by and described in the Solicitation Certificates and Ballot Declaration, the Debtors' service of the Solicitation Packages and other Plan solicitation efforts (collectively, the **"Solicitation"**) was conducted in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and all other applicable non-bankruptcy rules, laws, and regulations applicable to the Solicitation.  Transmittal and service of the Solicitation Packages was due, proper, adequate, timely, appropriate, and sufficient under the circumstances with respect to all Claimants and parties in interest in these Cases.

I.     **Voting and Results**.  Prior to the Debtors' Solicitation of votes on the Plan, all Claimants were provided with "adequate information" as defined in Bankruptcy Code § 1125.  As evidenced by the Ballot Declaration, votes to accept or reject the Plan have been solicited and

Findings of Fact, Conclusions of Law, and Order (I) Approving Debtors' Joint Disclosure Statement on a Final Basis and (II) Confirming Debtors' Joint Chapter 11 Plan of Liquidation

Page 6 of 39

8580169 v1 (72651.00003.000)

tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Classes 2, 4, 5, 6, 7, and 9 are Impaired under the Plan, and Classes 2, 4, and 5 were entitled to cast Ballots with respect to voting on the Plan. As described in the Ballot Declaration, Classes 2, 4, and 5 have each voted to accept the Plan in the numbers and amounts required by Bankruptcy Code § 1126. There are no Claimants Classes 1, 6, or 7 under the Plan. Classes 1, 3, and 8 are deemed to accept the Plan, and Classes 6, 7, and 9 are deemed to reject the Plan.

J.      **Plan Modifications**. On or about June 24, 2021, the Debtor filed the (i) *Debtor's First Amended Joint Chapter 11 Plan of Liquidation* [Docket No. 345] and the (ii) *Notice Filing and Redline of Debtors' First Amended Joint Chapter 11 Plan of Liquidation* [Docket No. 346] setting forth a "redline" indicating all changes to the Plan as originally filed. None of the amendments or modifications to the Plan (as originally filed at Docket No. 293), whether reflected in the Plan as filed or announced on the record at the Confirmation Hearing, if any, have any material effect on the Plan or the treatment of any Claims or Interests under the Plan or are otherwise material, and all such amendments and modifications set forth in the Debtor's First Amended Plan of Liquidation are hereby approved.

K.      **Compliance with Bankruptcy Rule 3016(a)**. The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b). The discharge, release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

L.      **Compliance with Bankruptcy Code § 1125**.

i.      **Solicitation – § 1125(b)**. After notice and hearing on the Motion for Conditional Approval, the Court entered the Disclosure Statement Order approving all Solicitation

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 7 OF 39

8580169 v1 (72651.00003.000)

Package materials and determining, on a conditional basis, that the Disclosure Statement contains "adequate information" within the meaning of Bankruptcy Code § 1125(a). Service of the Solicitation Packages was made in compliance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. All Solicitation Packages were served at least twenty-eight (28) days prior to the Objection Deadline in compliance with Bankruptcy Rule 2002(b). Thus, the Debtors' solicitation of the Plan complied with Bankruptcy Code § 1125(b).

      ii.      **Service of Disclosure Statement – § 1125(c)**. The Debtors served the same Disclosure Statement upon all holders of Claims and Interests in compliance with Bankruptcy Code § 1125(c).

      iii.      **Good Faith Solicitation – § 1125(e)**. Based on the record before the Court in these Cases, the Debtors and their Professionals—including each of their respective current officers, directors, employees, and managers, as of the date of this Order—and all other Persons involved in the Solicitation process have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the Disclosure Statement Order and with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the development of the Plan and in connection with all of their respective activities arising out of or relating to (i) the administration of these Cases, (ii) the negotiation and pursuit of approval of the Disclosure Statement, (iii) the preparation, development, and solicitation of acceptances of the Plan, (iv) the pursuit of confirmation of the Plan, (v) the funding of the Plan, (vi) the consummation of the Plan, and (vii) the administration of the Plan and the property to be distributed under the Plan, and are entitled to the protections afforded by Bankruptcy Code § 1125(e).

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 8 OF 39

8580169 v1 (72651.00003.000)

M. **Compliance with Bankruptcy Code §§ 1122 and 1123**.

i. **Proper Classification – § 1122**. Article III of the Plan provides for the separate classification of Claims against and Interests in the Debtors based upon differences in the legal nature and/or priority of such Claims and Interests. The Plan designates the following Classes of Claims and Interests:

- Class 1 – Priority Non-Tax Claims
- Class 2 – Prepetition Secured Claims
- Class 3 – Other Secured Claims
- Class 4 – Prepetition Secured Lender Deficiency Claims
- Class 5 – GUC Claims
- Class 6 – Intercompany Claims
- Class 7 – 510(b) Claims
- Class 8 – Bainbridge Interests
- Class 9 – Bainbridge Holdings Interests

This classification scheme complies with Bankruptcy Code § 1122(a) because the Claims or Interests in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the Classes of Claims and Interests under the Plan; such classifications were not done for any improper purpose; and such classifications do not unfairly discriminate between the holders of Claims or Interests.

ii. **Designation of Classes of Claims and Interests – § 1123(a)(1)**. The Plan complies with Bankruptcy Code § 1123(a)(1) in that Article III designates the various Classes of Claims and Interests under the Plan, as further set forth in the preceding paragraph.

iii. **Specify Unimpaired Classes – § 1123(a)(2)**. The Plan complies with Bankruptcy Code § 1123(a)(2) in that Section 5.01 of the Plan designates Classes that are Unimpaired (and Section 5.02 designates Classes that are Impaired). Unimpaired and Impaired Classes are further designated in the chart in Section 3.03 of the Plan.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 9 OF 39

8580169 v1 (72651.00003.000)

iv.        **Specify Treatment of Impaired Classes – § 1123(a)(3)**.  The Plan complies with Bankruptcy Code § 1123(a)(3) in that Article IV of the Plan clearly explains the treatment for each Class of Claims and Interests under the Plan, including Impaired Classes.

v.        **No Discrimination – § 1123(a)(4)**.  The Plan complies with Bankruptcy Code § 1123(a)(4) in that all Claims or Interests, as applicable, within a particular Class are treated the same as all other Claims or Interests within such Class (without regard to any rights a Claimant may hold against third parties), unless the holder of a particular Claim or Interest has agreed to less favorable treatment of its Claim or Interest.

vi.        **Adequate Means of Implementation – § 1123(a)(5)**.  The Plan complies with Bankruptcy Code § 1123(a)(5) in that Article VI of the Plan provides in detail the means for implementation of the Plan.  Specifically, Article VI explains, among other things, that: (i) the Plan will be funded with Available Cash, which consists primarily of the Debtors' proceeds from the Sale; (ii) the Debtors' remaining Assets will vest in the Post-Effective Date Debtors free and clear of Liens, Claims, and Causes of Action, except with respect to the Liens of the Agent; and (iii) the Debtors' directors, officers, and managers will be eliminated and the Plan Administrator will oversee the Post-Effective Date Debtors and Wind-Down.

vii.        **Prohibition on Issuance of Non-Voting Securities - § 1123(a)(6)**.  The Plan complies with Bankruptcy Code § 1123(a)(6) in that, except with respect to the issuance of a single Bainbridge Holdings Interest to be held by the Plan Administrator for purposes of managing the Post-Effective Date Debtors and administering the Wind-Down, the Plan does not contemplate the issuance of any Interests in the Debtors and the holders of Interests are not entitled to vote on the Plan.  Section 4.08 of the Plan provides for Bainbridge Interests (*i.e.*, Interests in Bainbridge Uinta, LLC), all of which are owned by Bainbridge Uinta Holdings, LLC, to be Reinstated (as defined in the Plan) upon the Effective Date.  Section 4.09 of the Plan provides for all Bainbridge Holdings Interests

Findings of Fact, Conclusions of Law, and Order (I) Approving Debtors' Joint Disclosure Statement on a Final Basis and (II) Confirming Debtors' Joint Chapter 11 Plan of Liquidation

Page 10 of 39

8580169 v1 (72651.00003.000)

(i.e., Interests in Bainbridge Uinta Holdings, LLC) to be cancelled and extinguished upon the Effective Date, save and except for a single Bainbridge Holdings Interest to be held by the Plan Administrator for purposes of managing the Post-Effective Date Debtors and administering the Wind-Down.

viii.    **Directors and Officers – § 1123(a)(7)**.  The Plan complies with Bankruptcy Code § 1123(a)(7) in that the Post-Effective Date Debtors will exist solely for the limited purposes of winding up and dissolving under the Plan.  All of the Debtors' directors, officers, and managers will be terminated and eliminated as of the Effective Date without any further corporate action, notice, or order of the Court, at which point the Post-Effective Date Debtors will be managed exclusively by the Plan Administrator pursuant to the Plan, this Confirmation Order and Plan Administrator Agreement.  Paul Ching will serve as the initial Plan Administrator.  The Plan is consistent with the interests of Claimants and with public policy.

ix.    **Payments to Creditors – § 1123(a)(8)**.  Bankruptcy Code § 1123(a)(8) is inapplicable in that the Debtors are not individuals.

x.    **Permissive Plan Provisions – § 1123(b)**.  All of the Plan's provisions are consistent with Bankruptcy Code § 1123(b), including, without limitation, the following:

•    Impaired and Unimpaired Claims/Interests.  In accordance with Bankruptcy Code § 1123(b)(1), the Plan Impairs certain Classes of Claims and Interests and leaves other Classes Unimpaired.  Classes 1, 3, and 8 are Unimpaired, and Classes 2, 4, 5, 6, 7, and 9 are Impaired.  The Plan's modification of the rights of holders of Impaired Claims and Interests complies with Bankruptcy Code § 1123(b)(5).

•    Debtor Release.  Section 15.04 of the Plan effects a release of the Released Parties from any Claims and Causes of Action held by the Debtors, the Estates, or the Post-Effective Date Debtors that arose prior to the Effective Date (subject to and as more fully set forth in Section 15.04 of the Plan, the **"Debtor Release"**).  The Debtor Release does not release any party

Findings of Fact, Conclusions of Law, and Order (I) Approving                    Page 11 of 39
Debtors' Joint Disclosure Statement on a Final Basis and
(II) Confirming Debtors' Joint Chapter 11 Plan of Liquidation                    8580169 v1 (72651.00003.000)

from Claims or Causes of Action determined by Final Order to be the result of fraud, gross negligence, or willful misconduct. The Debtor Release is critical to the successful implementation and confirmation of the Plan; the Debtor Release is fair, reasonable, and in the best interests of the Debtors and Estates; and the Debtor Release is appropriate under the circumstances of these Cases. Specifically, with respect to the Agent Released Parties, the Debtor Release was negotiated in good faith in connection with the treatment of the Prepetition Secured Lenders' Claims under the Plan and the support for the Plan by the Agent and the Prepetition Secured Lenders. The Debtor Release constitutes a valid exercise of the Debtors' business judgment in these Cases and is permissible under Bankruptcy Code § 1123(b).

- Non-Debtor Release. The Plan effects a release of the Debtors, the Estates, and the Released Parties from any Claims and Causes of Action held by the Releasing Parties that arose prior to the Effective Date (subject to and as more fully set forth in Section 15.05 of the Plan, the **"Non-Debtor Release"**, and collectively with the Debtor Release, the **"Releases"**). The Non-Debtor Release does not release any party from Claims or Causes of Action determined by Final Order to be the result of fraud, gross negligence, or willful misconduct. The Non-Debtor Release was conspicuously noticed in the Plan, Disclosure Statement, Ballots, and Non-Voting Status Notices. All holders of Claims or Interests (including holders of Administrative Claims and Priority Tax Claims) were given the chance to opt out of the Non-Debtor Release by checking the appropriate box on their Ballot or Opt-Out Form. Accordingly, the Non-Debtor Release is consensual and is an integral part of the Plan. The Non-Debtor Release is permissible under Bankruptcy Code § 1123(b).

- Exculpation. The Plan provides for an exculpation limiting the liability of the Exculpated Parties for acts or omissions in connection with, among other things, these Cases, the commencement and administration of these Cases, or the negotiation or implementation of the Plan, save and except for acts determined by Final Order to be the result of intentional fraud, criminal

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 12 OF 39

8580169 v1 (72651.00003.000)

conduct, gross negligence, or willful misconduct (subject to and as more fully described in Section 15.06 of the Plan, the **"Exculpation"**). The Exculpation is appropriate and vital because it provides protection to those parties who served as fiduciaries during these Cases or made substantial and critical contributions to the Sale and/or the Plan. The Exculpation prevents future collateral attacks against those who have worked to maximize the Estates and, therefore, the Exculpation is appropriate and consistent with applicable law. The Exculpation is permissible under Bankruptcy Code § 1123(b).

- Injunction. The Plan permanently enjoins parties from pursuing or enforcing any Claims or Interests that are released or exculpated under the terms of the Plan (as more fully described in Section 15.07 of the Plan, the **"Injunction"**), which is a key component of the Plan necessary to implement the Releases and Exculpation. Without the injunction, the Plan's Release and Exculpation would lose their impact. The Injunction is permissible under Bankruptcy Code § 1123(b).

- Settlement. Pursuant to Bankruptcy Code § 1123 and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, Releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan (including, the Releases, Exculpation, and Injunction) shall constitute a good-faith compromise and settlement of all controversies, Claims, and interests resolved pursuant to the Plan. The Plan is a valid compromise of Claims and Interests and is the product of good faith, arm's-length negotiations with the Debtors' Creditors, including the Agent and the Prepetition Secured Lenders. The Plan represents the best possible recovery to general unsecured Creditors and other parties in interest under the circumstances. As further set forth herein, the Plan represents a valid compromise that is fair and equitable and in the best interests of the Estates. The Plan's settlement and compromise of Claims and Interest is permissible under Bankruptcy Code § 1123(b).

xi. **Plans Proposed by other Parties – § 1123(c)**. Bankruptcy Code § 1123(c) is not applicable because the Debtors are not individuals.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 13 OF 39

8580169 v1 (72651.00003.000)

xii. **Amounts Necessary to Cure Defaults – § 1123(d)**. The Plan complies with Bankruptcy Code § 1123(d) in that any Executory Contracts or Unexpired Leases assumed by the Debtors under the Plan (if any) will be cured in accordance with Bankruptcy Code § 365(b), the provisions of such contract or lease, and applicable law (or as otherwise agreed to by the Debtors and the counterparty thereto).

N. **Compliance with Bankruptcy Code § 1129**.

i. **Plan's Compliance with Bankruptcy Code – § 1129(a)(1)**. The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

ii. **Debtors' Compliance with Bankruptcy Code – § 1129(a)(2)**. The Debtors have complied with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules in proposing and soliciting votes on the Plan, specifically Bankruptcy Code §§ 1122, 1123, and 1125. Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code. The Debtors have complied with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules in all respects, including in the Solicitation and tabulation of votes on the Plan.

iii. **Plan Proposed in Good Faith – § 1129(a)(3)**. The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from, *inter alia*, the facts and record of these Cases, the Disclosure Statement, the record made at the Confirmation Hearing, and the other proceedings in these Cases. The Plan and the Plan Documents were proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a liquidation of the Debtors. The Plan and Plan Documents were negotiated at arm's-length. Further, the Plan's classification, indemnification, Exculpation, Releases, and Injunction provisions have been negotiated in good faith and at arm's-length. Such provisions

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 14 OF 39

8580169 v1 (72651.00003.000)

are consistent with Bankruptcy Code §§ 105, 1122, 1123(b)(6), 1125, 1129, and 1142; each provision is necessary for the success of the Plan; and none of the Plan's provisions were included for any improper purpose.

      iv. **Payment for Services or Costs and Expenses – § 1129(a)(4)**. The Plan complies with Bankruptcy Code § 1129(a)(4) in that any payments to be made by the Debtors, Plan Administrator, or any person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with the Cases, or in connection with the Plan and incident to the Cases, is approved by, or subject to the approval of, as applicable, the Bankruptcy Court as reasonable.

      v. **Directors, Officers, and Insiders – § 1129(a)(5)**. The Debtors have complied with Bankruptcy Code § 1129(a)(5) in that the Plan identifies Paul Ching as the Plan Administrator, and the Plan Administrator's powers and duties are clearly set forth in the Plan Supplement and Article VII of the Plan. The Plan Administrator's appointment is consistent with the interests of all Claimants and with public policy.

      vi. **No Rate Changes – § 1129(a)(6)**. Bankruptcy Code § 1129(a)(6) is not applicable to the Debtors or the Plan.

      vii. **Best Interest of Creditors – § 1129(a)(7)**. The Plan satisfies Bankruptcy Code § 1129(a)(7) in that, as demonstrated by the Liquidation Analysis, each holder of an Impaired Claim that has not accepted the Plan will, on account of such Claim, receive or retain property under the Plan having a value, as of the Effective Date, that is at least equal to the amount that such holder would receive or retain if the Debtors' Estates were liquidated under Chapter 7 of the Bankruptcy Code.

      viii. **Acceptance by Impaired Classes – § 1129(a)(8)**. Claims and Interests in Classes 1, 3, and 8 are Unimpaired and deemed to accept the Plan pursuant to Bankruptcy Code §

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING         **PAGE 15 OF 39**
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION       8580169 v1 (72651.00003.000)

1126(f). Claims in Classes 2, 4, and 5 are Impaired under the Plan, and each of those Classes have accepted the Plan in accordance with Bankruptcy Code § 1126(c), as demonstrated by the Ballot Declaration. Bainbridge Interests in Class 8 are Unimpaired and deemed to accept the Plan pursuant to Bankruptcy Code § 1126(f). Intercompany Claims in Class 6, Section 510(b) Claims in Class 7, and Bainbridge Holdings Interests in Class 9 are Impaired and deemed to reject the Plan pursuant to Bankruptcy Code § 1126(g). Thus, the Plan satisfies Bankruptcy Code § 1129(a)(8) in that all Impaired Classes entitled to vote on the Plan voted to accept the Plan. The Plan further satisfies the requirements for confirmation under the "cram down" provisions of Bankruptcy Code § 1129(b).

ix. **Administrative Claims and Priority Tax Claims – § 1129(a)(9).** The Plan complies with Bankruptcy Code § 1129(a)(9) in that Article II of the Plan provides for all Allowed Administrative Claims and Allowed Priority Tax Claims to be paid in full on the Effective Date or such later date in accordance with the Plan and § 1129(a)(9)(C)-(D), except to the extent that the Claimant agrees to less favorable treatment, and for Professional Fee Claims that are not yet Allowed as of the Effective Date to be paid in full upon allowance by the Bankruptcy Court.

x. **Acceptance by Impaired Class – § 1129(a)(10).** Bankruptcy Code § 1129(a)(10) is satisfied in that, as described above and in the Ballot Declaration, Classes 2, 4, and 5 are Impaired and voted to accept the Plan.

xi. **Feasibility – § 1129(a)(11).** Bankruptcy Code § 1129(a)(11) is satisfied in that the Plan provides for the liquidation, Wind-Down, and dissolution of the Debtors. Article VI sets forth a feasible means of implementing the Plan, and the Plan Supplement demonstrates that all Distributions required under the Plan can be paid from the Available Cash. Further, the Wind Down Budget, as an exhibit at the Confirmation Hearing, provides adequate funding to fully implement the Plan.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 16 OF 39

8580169 v1 (72651.00003.000)

xii.     **U.S. Trustee Fees – § 1129(a)(12)**.  The Plan satisfies Bankruptcy Code §
1129(a)(12) in that Section 2.05 of the Plan provides for all U.S. Trustee Fees that are currently due
and payable under 28 U.S.C. § 1930, as determined by the Court, to be paid by the Debtors and/or
Plan Administrator on or before the Effective Date, and for all U.S. Trustee Fees coming due after
the Effective Date to be paid by the Plan Administrator when due.

xiii.     **Retiree Benefits – § 1129(a)(13)**.  Bankruptcy Code § 1129(a)(13) is not
applicable to the Plan because the Plan provides for the liquidation of the Debtors and for all of the
Debtors' current directors, officers, managers, and employees to be terminated as of the Effective
Date.

xiv.     **Domestic Support Obligations – § 1129(a)(14)**.  Bankruptcy Code §
1129(a)(14) is not applicable because the Debtors are not individuals and do not have any domestic
support obligations.

xv.     **Payments by Individual Debtors – § 1129(a)(15)**.  Bankruptcy Code §
1129(a)(15) is not applicable because the Debtors are not individuals.

xvi.     **Transfers of Property – § 1129(a)(16)**.  Bankruptcy Code § 1129(a)(16) is not
applicable because the Debtors are not non-profit corporations or trusts.  However, all transfers of
property contemplated by the Plan are to be made in accordance with applicable nonbankruptcy law
governing the transfer of property.

xvii.     **Non-Consensual Confirmation (Cram Down) – § 1129(b)**.  The Plan does
not discriminate unfairly and is fair and equitable with respect to each Impaired Class that has not
voted to accept the Plan, and all classified Claims and Interests are treated the same as all other Claims
or Interests within their respective Class.  Classes 6, 7, and 9 are Impaired but deemed to reject the
Plan—all other Impaired Classes have accepted the Plan in accordance with Bankruptcy Code §
1126(c), as set forth in the Ballot Declaration.  Classes 6, 7, and 9 are deemed to reject the Plan,

pursuant to Bankruptcy Code § 1126(g), because the holders in those Classes will not receive or retain any property under the Plan. Accordingly, the Plan complies with all provisions of Bankruptcy Code § 1129(b), including the "absolute-priority" rule contained in Bankruptcy Code § 1129(b)(2), and may be confirmed notwithstanding that Classes 6, 7, and 9 are deemed to reject the Plan.

xviii.   **One Plan – § 1129(c)**. Bankruptcy Code § 1129(c) is satisfied in that the Plan is the only Chapter 11 plan subject to confirmation in these Cases.

xix.   **Purpose of the Plan – § 1129(d)**. Bankruptcy Code § 1129(d) is satisfied in that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

xx.   **Small Business Cases – § 1129(e)**. Bankruptcy Code § 1129(e) is not applicable because the Debtors' Cases are not small business cases.

O.   **Satisfaction of Disclosure, Solicitation, and Confirmation Requirements**. All requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules have been satisfied as necessary for confirmation of the Plan and final approval of the Disclosure Statement.

P.   **Plan and Plan Documents**. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the Debtors provided good, proper, and sufficient notice of the Plan, Plan Supplement, and all other Plan Documents in accordance with the Bankruptcy Code and the Bankruptcy Rules, and no further notice is necessary or required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan and are hereby approved. Subject to the terms of the Plan, the Debtors reserve the right to make alterations, amendments, updates, or modifications to the Plan Supplement and any other Plan Documents before the Effective Date. The Plan Documents, including the Plan Supplement and all Plan exhibits (as may be amended or supplemented) have been negotiated in good faith and are, in the judgment of the Court and the parties, necessary and appropriate to effectuate the Plan. The Plan Documents are

essential elements of the Plan, and entry into each such Plan Document is in the best interests of the Debtors, the Estates, and holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining to enter into the Plan, and the terms and conditions of the Plan, including the fees, expenses, and other payments set forth therein, have been in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, non-avoidable, and enforceable agreements and not be in conflict with any federal, state, or local law. The Debtors have provided sufficient and adequate notice of the Plan, including each of the Plan Documents, to all parties in interest in the Debtors' Chapter 11 Cases.

Q. **Sound Business Judgment**. Consummation of the Plan, the transactions contemplated under the Plan, and execution of all Plan Documents is a sound exercise of the Debtors' business judgment. The terms and provisions of the Plan and all Plan Documents are in the best interest of the Debtors, their Estates, and Claimants.

R. **Assumption and Rejection**. Each assumption or rejection of an Executory Contract or Unexpired Lease as provided in section 10.01 of the Plan shall be legal, valid, and binding upon the applicable Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies all requirements of Bankruptcy Code § 365.

S. **Exculpation, Releases, and Injunction**. The Releases, Exculpation, and Injunction provisions set forth in Article XV of the Plan constitute good faith compromises and settlements of the matters covered thereby. Each of the Release, Exculpation, and Injunction provisions set forth in Article XV of the Plan: (i) is within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) is an essential means of implementing the Plan pursuant to Bankruptcy Code § 1123(a)(5); (iii) is an integral element of the resolution of the Chapter 11 Cases, and implementation of the Plan, in accordance with the Plan and the failure to effect such provision would seriously impair the Debtors' ability to

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 19 OF 39

8580169 v1 (72651.00003.000)

confirm the Plan; (iv) confers material benefits on, and is in the best interests, of the Debtors, the Debtors' Estates, and Claimants; (v) is, *inter alia*, supported by extensive consideration; (vi) is important to the overall objectives of the Plan to finally resolve all Claims and Interests among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; (vii) is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates, Creditors, and Interest holders; and (viii) is consistent with Bankruptcy Code §§ 105, 1123, and 1129 and other applicable sections of the Bankruptcy Code and Bankruptcy Rules. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Releases, Exculpation, and Injunction provisions contained in Article XV of the Plan. Accordingly, this Court finds that the Exculpation, Injunction, and Releases are consistent with the Bankruptcy Code and applicable law.

T. **Consensual Non-Debtor Releases**. The Non-Debtor Release described in Section 15.05 of the Plan is a consensual third party release and constitutes an integral component of the Plan. The Plan provides that: (i) parties entitled to vote on the Plan may affirmatively opt out of the Non-Debtor Releases by voting to reject the Plan and checking the appropriate box on their Ballot to opt out of the Releases; and (ii) parties not entitled to vote on the Plan may affirmatively opt out of the Non-Debtor Releases by checking the appropriate box on the Opt Out Form included with their Non-Voting Status Notice.

i. <u>Parties Entitled to Vote on the Plan</u>. The Ballots clearly and explicitly stated that, in order to avoid being deemed a Releasing Party, parties were required to timely vote to reject the Plan and check the opt out box on their Ballot; the Ballots included the full text of the Non-Debtor Releases set forth in Section 15.05 of the Plan; and both the Plan and the Ballots conspicuously stated that parties are deemed to provide the Non-Debtor Release unless they opted out. Thus, all parties entitled to vote on the Plan were given due and adequate notice that voting to accept the Plan (or otherwise failing to reject the Plan and opt out of the Non-Debtor Releases) constituted consent to the Non-Debtor Release. All parties who voted to accept the Plan, and all parties whose vote was solicited but did not return a Ballot return a Ballot rejecting the Plan and opting out of the Non-Debtor Release, have manifested their consent to, and are contractually bound by, the Non-Debtor Release, including, without

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 20 OF 39

8580169 v1 (72651.00003.000)

limitation, releases of claims against non-debtors to the extent set forth in Section 15.05 of the Plan.

ii. <u>Parties Not Entitled to Vote on the Plan</u>. The Non-Voting Status Notices clearly and explicitly stated that, in order to avoid being deemed a Releasing Party, parties were required to timely submit the Opt Out Form included with their Non-Voting Status Notice checking the box to opt out of the Non-Debtor Release; the Non-Voting Status Notices included the full text of the Non-Debtor Releases set forth in Section 15.05 of the Plan; and both the Plan and the Non-Voting Status Notices conspicuously stated that parties are deemed to provide the Non-Debtor Release unless they opted out. Thus, all parties not entitled to vote on the Plan were given due and adequate notice that failing to submit the Opt Out Form opting out of the Non-Debtor Releases constituted consent to the Non-Debtor Release. All parties not entitled to vote on the Plan that did not return an Opt Out Form opting out of the Non-Debtor Release have manifested their consent to, and are contractually bound by, the Non-Debtor Release, including, without limitation, releases of claims against non-debtors to the extent set forth in Section 15.05 of the Plan.

Furthermore, the Debtors and Released Parties compensated Claimants for the Non-Debtor Release with adequate consideration, including, without limitation by providing substantial contributions to the Chapter 11 Cases and the Plan.[5] Without such substantial contributions, a successful liquidation and confirmation of the Plan would not be possible. The substantial contributions by the Debtors and Released Parties have thus ultimately resulted in the Debtors being able to submit the Plan, which provides for efficient and timely Distributions to be made to Creditors. Additionally, the Non-Debtor Release: (i) constitutes a good-faith Settlement and compromise of the Claims and Causes of Action released by the Non-Debtor Release; (ii) is in the best interests of the Debtors and their Estates; (iii) is fair, equitable, and reasonable; (iv) is given and made after due notice and opportunity for hearing;

---

[5] The substantial contributions of the Agent Released Parties include, without limitation, (i) a $100,000 gift of the Prepetition Secured Lenders' cash collateral for unsecured Creditors in the form of the GUC Claims Reserve; and (ii) a complete release of the Prepetition Secured Lender Deficiency Claim (totaling approximately $20 million). The substantial contributions of the Debtor Related Persons include, without limitation: (i) performance of all necessary acts to administer the Estates, implement the Plan, and effect an orderly Wind Down of the Debtors; (ii) timely and cost-efficient payment and resolution of all outstanding Claims (including U.S. Trustee Fees; and (iii) all necessary oversight of post-Sale Closing matters. The Non-Debtor Release is a critical incentive for these substantial contributions.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 21 OF 39

8580169 v1 (72651.00003.000)

(v) is narrowly tailored; and (vi) is a bar to any Claims or Causes of Action released by the Non-Debtor Release against any of the Released Parties.

U. **Exculpation**. The Exculpation provisions set forth in Section 15.06 of the Plan are essential to the Plan. The record in the Chapter 11 Cases fully supports the Exculpation and the provisions set forth in Section 15.06 of the Plan, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

V. **Injunction**. The Injunction provisions set forth in Section 15.07 of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Non-Debtor Release, and the Exculpation, and the Injunction provisions are appropriately tailored to achieve those purposes. Any dispute regarding the scope or application of the Releases contained in the Plan shall be brought before the Bankruptcy Court or such court as the Bankruptcy Court may direct.

W. **Settlement of Claims and Interests**. The settlements and compromises of Claims and Interests contained in (or incorporated into) the Plan, including, without limitation, the global settlement with the Agent (each such settlement and compromise, a **"Settlement,"** and collectively, the **"Settlements"**), are necessary to, and are an integral and essential element of, the Plan and its consummation, and the terms and conditions of such Settlements are fair and reasonable under the circumstances. The performance of the terms thereof is authorized, and the parties are directed to consummate the same. The Settlements are the product of arm's-length negotiation, and have been proposed in good faith, for legitimate business purposes, are supported by reasonably equivalent value and fair consideration and reflects the Debtors' exercise of reasonable business judgment. Entry into the Settlements and consummation of the same is in the best interests of the Debtors, their Estates, their Creditors, and Interest holders. The Debtors have provided all interested parties with sufficient

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 22 OF 39

8580169 v1 (72651.00003.000)

and adequate notice of, and an opportunity to object and to be heard with respect to, any and all Settlements. The terms and provisions of the Settlements are approved pursuant to this Order.

       i.      <u>Oak Hills Settlement</u>. As further discussed in the Ching Declaration and on the record at the Confirmation Hearing, the Debtors have reached a Settlement with Oak Hills Securities, Inc. (**"Oak Hills"**) in full and final resolution of the *Application of Oak Hills Securities, Inc. for Approval and Allowance of Administrative Claim* [Docket No. 184] and all objections or responses thereto (the **"Oak Hills Settlement"**). Pursuant to the Oak Hills Settlement, Oak Hills shall have an Allowed Administrative Claim in the total amount of $15,000.00, which shall be paid in accordance with Section 2.01 of the Plan.

       ii.      <u>Argonaut Settlement</u>. As further discussed in the Ching Declaration and on the record at the Confirmation Hearing, the Debtors have reached a Settlement with Argonaut Insurance Company (**"Argonaut"**) and Moon Lake Electric Association, Inc. (**"Moon Lake"**) in full and final resolution of Argonaut's and Moon Lake's respective GUC Claims (the **"Argonaut Settlement"**). Pursuant to the Argonaut Settlement, as further set forth in the *Joint Motion Pursuant to Rule 9019 to Approve Compromise and Settlement Agreement* [Docket Nos. 341, 344]: (i) Moon Lake shall not have an Allowed GUC Claim under the Plan; (ii) Moon Lake shall be entitled to apply the Debtors' cash deposit of approximately $40,000.00 to offset its asserted GUC Claim of $67,460.16; (iii) Argonaut shall pay Moon Lake $22,000.00 in full satisfaction of Moon Lake's claim against Argonaut; and (iv) Argonaut shall have an Allowed Class 5 GUC Claim in the amount of $37,000.00.

       X.      **Enforceability of the Plan**. Except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Order, the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. The Debtors, the Debtor Related Persons, the Post-Effective Date Debtors, and their advisors, attorneys, employees, agents, and representatives, the Agent Released Parties, and the Plan Administrator and its advisors, attorneys, employees, agents, and

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING           **PAGE 23 OF 39**
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION         8580169 v1 (72651.00003.000)

representatives will be acting in good faith if they proceed to (i) consummate, implement and proceed in furtherance of the Plan and the agreements, the Settlement, transactions, transfers and documentation contemplated thereby and (ii) take any actions authorized and directed by this Order.

Y. **PPP Loan**. On or about April 14, 2020, the Debtors obtained a PPP Loan under the CARES Act in the amount of $550,500.00 from CrossFirst Bank (the **"PPP Loan"**). CrossFirst Bank (**"CrossFirst"**) received due and timely notice of these Chapter 11 Cases. Neither CrossFirst Bank nor the United States Small Business Administration (the **"SBA"**) filed a Proof of Claim in connection with the PPP Loan prior to the applicable Claims Bar Date (*i.e.*, the General Claims Bar Date and Government Claims Bar Date, respectively). The uncontroverted evidence shows that the PPP Loan was forgiven in full prior to the Confirmation Hearing, and, to the extent not forgiven, is discharged as against the Debtors pursuant to the Plan and this Order. Any Claim or potential Claim of or by either CrossFirst or the SBA is disallowed for all purposes and neither are entitled to any Distribution at any time for any reason whatsoever in these Cases, whether under the Plan or otherwise. The Plan Administrator shall not make any Distributions to CrossFirst or the SBA.

Z. **Objections**. All parties and parties-in-interest have had a full and fair opportunity to file objections to confirmation of the Plan or final approval of the Disclosure Statement and to litigate any such objections.

Based upon the foregoing, all requirements for confirmation of the Plan and final approval of the Disclosure Statement—whether set forth in the Bankruptcy Code, Bankruptcy Rules, Local Rules, or otherwise—have been satisfied, and the Plan shall be confirmed and the Disclosure Statement shall be approved. Accordingly,

## IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. **CONFIRMATION OF PLAN**. The Plan attached hereto as **Exhibit A** is hereby **CONFIRMED** in each and every respect pursuant to Bankruptcy Code § 1129. Any modifications

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 24 OF 39

8580169 v1 (72651.00003.000)

to the Plan are hereby approved and incorporated into and made an integral part of the Plan. Each and every provision of the Plan is incorporated by reference into, and is made an integral part of, this Order as if the Plan were set forth in its entirety in this paragraph. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent. The failure to specifically include or refer to any particular section or provision of the Plan or the Plan Documents in this Order shall not diminish or impair the effectiveness or enforceability of such section or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by reference.

2.     **FINAL APPROVAL OF DISCLOSURE STATEMENT**.  The Disclosure Statement is hereby **APPROVED** on a final basis in all respects. The Disclosure Statement contains (a) sufficient information of a kind consistent with the disclosure requirements of all applicable nonbankruptcy law, rules, and regulations, and (b) "adequate information" (as such term is defined in Bankruptcy Code § 1125(a) and used in Bankruptcy Code § 1126(b)(2)) with respect to the Debtors, the Plan and the transactions contemplated therein.

3.     **APPROVAL OF PLAN DOCUMENTS**.  All of the Plan Documents are hereby authorized and **APPROVED**, including, without limitation: (a) the Plan Administrator Agreement in substantially the form attached hereto as **Exhibit B** (the **"Plan Administrator Agreement"**); (b) the Wind-Down Budget attached hereto **Exhibit C** (the **"Wind-Down Budget"**); (c) the Schedule of Allowed Claims attached hereto as **Exhibit D** (the **"Schedule of Allowed Claims"**); and (d) the Notice of Insurance Cancellation attached hereto as **Exhibit E** (the **"Insurance Cancellation Notice"**). The form, terms, and provisions of the Plan Documents shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with its terms. The terms and provisions of the Plan Documents are incorporated by reference into, and are made an integral part of, this Order as set forth entirely in this paragraph. Subject to the terms of the Plan,

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 25 OF 39

8580169 v1 (72651.00003.000)

(including all consent rights provided therein), the Debtors reserve the right to alter, amend, update, or modify the Plan Documents prior to the Effective Date.

4.  **SOLICITATION AND NOTICE**. Notice of the Confirmation Hearing and the Debtors' Solicitation of votes on the Plan complied with the terms of the Disclosure Statement Order, were appropriate and satisfactory based upon the circumstances of the Debtors' Cases, and were in compliance with the provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

5.  **OBJECTIONS**. To the extent that any Objections (including any reservations of rights contained therein) to confirmation of the Plan, or final approval of the Disclosure Statement, or other responses or reservations of rights with respect thereto have not been withdrawn, waived, settled or otherwise resolved prior to entry of this Order, such Objections and responses shall be, and hereby are, overruled on the merits and denied for all purposes.

6.  **ORDER EFFECTIVE IMMEDIATELY**. Notwithstanding the provisions of Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, or otherwise, this Order and all terms and provisions hereof shall be effective immediately upon entry. The Debtors, the Debtor Related Persons, the Post-Effective Date Debtors, and their advisors, attorneys, employees, agents, and representatives, the Agent Released Parties, and the Plan Administrator and its advisors, attorneys, employees, agents, and representatives shall be acting in good faith if they proceed to immediately (a) consummate the Plan and the agreements, the Settlement, transactions, transfers and documentation contemplated thereby and (b) take any actions authorized and directed by this Order, including commencing Distributions and paying U.S. Trustee Fees.

7.  **SUBSTANTIAL CONSUMMATION**. The Plan shall be deemed substantially consummated as of the Effective Date under Bankruptcy Code §§ 1101 and 1127(b).

8.  **BINDING EFFECT**. In accordance with Bankruptcy Code § 1141, and immediately upon entry of this Order, the provisions of the Plan (including the Plan Documents) and this Order

shall be, and hereby are, binding upon any past, present, or future Claimant, including counterparties to the Debtors' Executory Contracts and Unexpired Leases, whether or not such Claimant is Impaired under the Plan, whether known or unknown, and whether or not such Claimant has accepted the Plan. The terms of the Plan (including all consent rights provided therein), all exhibits thereto, all Plan Documents, and all other relevant and necessary documents shall be effective and binding as of the Effective Date, and the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. Subject to the terms of the Plan and this Order, all prior orders of this Court entered in these Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder, and all motions or requests for relief by the Debtors pending before the Court as of the Effective Date shall be, and hereby are, binding on and shall inure to the benefit of the Plan Administrator and Post-Effective Date Debtors. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

9. **PLAN ADMINISTRATOR**. Ching Energy, LLC is hereby approved as the Plan Administrator and is hereby authorized to take any and all actions contemplated of the Plan Administrator under this Order, the Plan, and/or the Plan Administrator Agreement, subject to the terms thereof (including, without limitation, all acts to implement the Plan set forth in Article VI of the Plan). The Plan Administrator shall have all powers and duties (and all rights and privileges) set forth in Article VII of the Plan and the Plan Administrator Agreement. Upon the Effective Date, pursuant to Section 6.03 of the Plan: (a) the positions of the current Governors of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action); and (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor that has a Governor shall vest in the Plan Administrator, who shall serve as the sole officer and director of each Post-Effective Date Debtor after the Effective Date. Ching Energy, LLC,

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 27 OF 39

8580169 v1 (72651.00003.000)

as the Plan Administrator, shall be the sole officer, director, and manager, of the Post-Effective Date Debtors.

10. **PLAN CLASSIFICATION CONTROLLING**. The classification of Claims and Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan.

11. **VESTING OF ASSETS**. As of the Effective Date, pursuant to Bankruptcy Code § 1141(b) and (c), and in accordance with Section 6.02 of the Plan, the Assets shall vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, Causes of Action, encumbrances, charges, and other interests, except with respect to the Liens of the Agent.

12. **RETENTION OF CAUSES OF ACTION/RESERVATION OF RIGHTS**. Subject to the terms of the Plan, and except to the extent not otherwise released by the Plan, all of the Debtors' Claims and Causes of Action against third parties, including, without limitation, Avoidance Actions, (collectively, **"Actions"**) shall survive Confirmation and the commencement of prosecution of Actions shall not be barred or limited by any res judicata or estoppel, whether judicial, equitable or otherwise, based on, *inter alia*, confirmation of the Plan or the extent to which the Plan, Disclosure Statement, Schedules of Assets and Liabilities, or Statements of Financial Affairs identify any Actions or Causes of Action. The Plan Administrator and Post-Effective Date Debtors' right to commence and prosecute Actions not otherwise released by the Plan shall not be abridged or materially altered in any manner by reason of confirmation of the Plan.

13. **CASE ADMINISTRATION**. From and after the Effective Date and continuing through the date that a Final Decree closing these Cases is entered under Bankruptcy Code § 350 and Bankruptcy Rule 3022, the Plan Administrator will possess the rights of the Debtors for all matters arising in, arising under or related to these Cases, as further set forth in the Plan Administrator Agreement. In addition to, and without limiting the generality of the foregoing, for all matters arising

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 28 OF 39

8580169 v1 (72651.00003.000)

in, arising under or related to these Cases, the Plan Administrator will: (a) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (b) have the right to obtain records of, or related to, the Debtors (including, without limitation, financial records, tax returns, bank statements and cancelled checks), and the entities from which such records may be requested are hereby authorized and directed to produce such records to the Plan Administrator; (c) be entitled to notice and opportunity for hearing; (d) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (e) have exclusive standing to commence Actions not otherwise released by the Plan; (f) be entitled to request the Bankruptcy Court to enter a Final Decree closing the Cases; (g) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in this case; and (h) have all other rights, privileges, and protections set forth in the Plan Administrator Agreement and the Plan.

14. **PROPERTY OF THE DEBTORS**. The Plan Administrator has express authority to convey, transfer, and assign any and all property of the Debtors consistent with the terms of the Plan and Plan Administrator Agreement, and to take all actions necessary to effectuate the same.

15. **DISSOLUTION OF DEBTORS**. Upon the Effective Date, as set forth in Section 6.04 of the Plan, the Plan Administrator shall complete the Wind-Down as expeditiously as practicable without the necessity for (a) any other or further actions to be taken by or on behalf of such Post-Effective Date Debtor or (b) any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate Governmental Unit. Subject to the terms of the Plan and the Plan Administration Agreement and the consents of the Agent set forth therein, the Plan Administrator may take all appropriate or necessary actions to dissolve the Debtors and complete the Wind-Down at any time following the Effective Date, notwithstanding whether any Distributions or

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING      PAGE 29 OF 39
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION      8580169 v1 (72651.00003.000)

Budgeted Expenses remain to be paid under the Plan, if the Plan Administrator finds the same to be in the best interests of the Estates and Claimants.

16. **NOTICE OF CONFIRMATION AND EFFECTIVE DATE**. Within five (5) Business Days after the Effective Date, the Post-Effective Date Debtors shall File a notice advising of (a) the entry of this Order; (b) the occurrence of the Effective Date; (c) the last date to File Professional Fee Claims; and (d) the last date to File Rejection Claims arising from the rejection of any Executory Contracts or Unexpired Leases pursuant to Article X of the Plan (the **"Notice of Effective Date"**). The Post-Effective Date Debtors shall serve the Notice of Effective Date via regular U.S. mail, postage prepaid, upon all parties set forth on the master mailing matrices for both of these Cases, and such service shall be sufficient to apprise all parties in interest of the applicable Claims Bar Dates and all other information contained in the Notice of Effective Date.

17. **ADMINISTRATIVE CLAIMS**.

(a) **Initial and Supplemental Administrative Claims Bar Dates**. Any and all Administrative Claims subject to the Initial Administrative Claims Bar Date or the Supplemental Administrative Claims Bar Date are hereby forever barred, disallowed, and discharged pursuant to the Plan, unless such Administrative Claims are (i) set forth on the Schedule of Allowed Claims or (ii) otherwise Allowed pursuant to a Final Order of this Court.

(b) **Final Administrative Claims Bar Date**. Any and all Administrative Claims not subject to the Initial or Supplement Administrative Claims Bar Date (**"Other Administrative Claims"**) shall be Filed by no later than twenty-one (21) days after the Effective Date (the **"Final Administrative Claims Bar Date"**). Any requests for allowance and payment of Other Administrative Claims shall be served upon the Plan Administrator, the Debtors' counsel, the U.S. Trustee, and all other parties required under the Bankruptcy Rules or Local Rules by no later than Final Administrative Claims Bar Date and shall, at a minimum, set forth the name of the holder,

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 30 OF 39

8580169 v1 (72651.00003.000)

amount, and basis for the alleged Administrative Claim. Any and all Other Administrative Claims shall be forever barred, disallowed, and discharged pursuant to the Plan unless (i) requests for such Administrative Claims are Filed and served prior to the Final Administrative Claims Bar Date and (ii) such Administrative Claims are thereafter Allowed pursuant to a Final Order of this Court. All objections to Other Administrative Claims shall be filed within fourteen (14) days after the Filing of the request for such Other Administrative Claim.

(c) **Payment**. Except to the extent that a holder of an Allowed Administrative Claim consents to different treatment, each holder of an Allowed Administrative Claim shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash in an amount equal to the Allowed amount of such Administrative Claim in accordance with the Plan.

18. **PROFESSIONAL FEE CLAIMS**. Each Professional, including Ordinary Course Professionals, holding a Professional Fee Claim that has not previously been Allowed shall File a final fee application for allowance and payment of such Professional Fee Claim (a **"Fee Application"**) no later than twenty-one (21) days after the Effective Date. All Fee Applications shall conform to and comply with all applicable rules and regulations contained in the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. Any objections to a Fee Application shall be Filed within fourteen (14) days after the Filing of such Fee Application. Allowed Professional Fee Claims shall be paid in accordance with and pursuant to section 2.04 of the Plan.

19. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**. Pursuant to Section 10.01 of the Plan, each Debtor is hereby deemed to have rejected, as of the Effective Date, each Executory Contract or Unexpired Lease that is not an Assigned Contract or that was not previously assumed, assumed and assigned, or rejected pursuant to an Order of the Bankruptcy Court or that is not designated for assumption, assumption and assignment, or rejection pursuant to the Supplemental Assumption-Rejection Notice. This Order shall constitute approval, pursuant to Bankruptcy Code

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 31 OF 39

8580169 v1 (72651.00003.000)

§§ 365(a) and 1123(b), of (i) the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases as provided in the Supplemental Assumption-Rejection Notice and (ii) the rejection of Executory Contracts and Unexpired Leases pursuant to Section 10.01 of the Plan. Such assumption or rejection shall be legal, valid, and binding upon the applicable Post-Effective Date Debtor and all counterparties to such Executory Contracts or Unexpired Leases, and satisfies all requirements of Bankruptcy Code § 365.

20. **INSURANCE POLICIES**.  Pursuant to the Plan and the Insurance Cancellation Notice, all of the Debtors' insurance policies identified in the Insurance Cancellation Notice (collectively, the **"Cancelled Insurance Policies"**) shall be cancelled as of June 30, 2021.  To the extent that any of the Cancelled Insurance Policies constitute Executory Contracts, such Cancelled Insurance Policies shall be deemed rejected as of the Effective Date pursuant to Article X of the Plan.  For the avoidance of doubt, and notwithstanding anything to the contrary contained in the Plan or this Order, the Debtors' directors and officers liability insurance policy (as further described and defined in the Ching Declaration, the **"D&O Policy"**) shall ***not*** be cancelled or rejected under the Plan, but rather shall be retained by the Post-Effective Date Debtors following the Effective Date.

21. **REJECTION CLAIMS**.

(a) **Rejection Pursuant to Supplemental Assumption-Rejection Notice**. Unless a Proof of Claim is timely Filed on or before Supplement Rejection Claims Bar Date, all Supplement Rejection Claims for which a Proof of Claim is not timely Filed on or before Supplement Rejection Claims Bar Date are forever barred, disallowed, and discharged pursuant to this Order.  Any objections to a timely-Filed Supplement Rejection Claim shall be filed within fourteen (14) days after the Supplement Rejection Claims Bar Date.  If an objection to a Supplement Rejection Claim is timely Filed, such Supplement Rejection Claim shall only become an Allowed Claim upon Final Order of the Bankruptcy Court.

(b) **Rejection Pursuant to the Plan**. Any party asserting a Confirmation Rejection Claim shall File a Proof of Claim for such Confirmation Rejection Claim by no later than the Confirmation Rejection Claims Bar Date, otherwise such Confirmation Rejection Claim shall be forever barred, disallowed, and discharged. Objections to Confirmation Rejection Claims shall be Filed within fourteen (14) days after the Confirmation Rejection Claims Bar Date. If an objection to a Confirmation Rejection Claim is timely Filed, such Rejection Claim shall only become an Allowed Claim upon Final Order of the Bankruptcy Court.

22. **ALLOWED CLAIMS**. Except with respect to (a) Claims hereafter Allowed in accordance with the Plan and this Order (*i.e.*, certain Professional Fee Claims, certain Other Administrative Claims, and certain Rejection Claims), if any, and (b) Class 2 Prepetition Secure Claims and Class 4 Prepetition Secured Lender Deficiency Claims (which are Allowed pursuant to the terms of the Plan), no Claim shall be deemed an Allowed Claim under the Plan unless such Claim is expressly set forth on the Schedule of Allowed Claims, and all such Allowed Claims shall be Allowed only in the amounts set forth on the Schedule of Allowed Claims. Except as otherwise provided in the Plan (including with respect to all Class 2 Prepetition Secured Claims and Class 4 Prepetition Secured Lender Deficiency Claims), all asserted Claims that are not identified on the Schedule of Allowed Claims are hereby Disallowed, discharged, and released. The Plan Administrator is entitled to rely solely upon the Plan, the Schedule of Allowed Claims, and the Orders of this Court for purposes of making Distributions under the Plan.

23. **DISTRIBUTIONS**. All Distributions shall be made in accordance with Plan. The Debtors, Post-Effective Date Debtors, and Plan Administrator, as applicable, are hereby authorized to make any and all Distributions contemplated under the Plan and pay any and all Budgeted Expenses set forth in the Wind-Down Budget. Distributions shall be made to Claimants at the addresses set forth on the Scheduled Allowed Claims, unless the Claimant has notified the Plan Administrator in

writing of a different payment address prior to the Distribution Record Date. No Distributions shall be made on account of any Claim that is not Allowed in accordance with the terms of the Plan and/or this Order.

(a) **Timing of Distributions**. The Debtors, Post-Effective Date Debtors, and Plan Administrator agree not to distribute any funds from the GUC Claims Reserve to holders of Allowed Class 5 Claims until the United States Department of the Interior and Bureau of Land Management (the **"BLM"**) have approved or otherwise consented to the Debtors' assignment of substantially all of its interests in federal oil and gas leases to the Purchaser in accordance with the Asset Purchase Agreement approved by this Court pursuant to the Sale Order. Should the BLM fail to approve or otherwise consent to the aforementioned assignments within 90 days of the entry of this Order, the Debtors, Post-Effective Date Debtors, or Plan Administrator, as the case may be, may seek authority of this Court, upon notice and hearing, to issue Distributions to holders of Allowed Class 5 Claims pursuant to the Plan.

24. **DISTRIBUTION RECORD DATE**. The Distribution Record Date shall be the Effective Date. Neither the Debtors, Post-Effective Date Debtors, nor the Plan Administrator shall have any obligation to recognize any transfer of Claims or Interests after the Distribution Record Date and shall instead be entitled to rely upon the Schedule of Allowed Claims for all purposes related to Distributions under the Plan.

25. **PPP LOAN**. CrossFirst Bank received due and timely notice of these Chapter 11 Cases. The PPP was forgiven in full prior to the Confirmation Hearing, and, accordingly, all remaining Claims (or Interests), if any, in any way associated with the PPP Loan are hereby Disallowed, released, and discharged. Neither CrossFirst nor the SBA are entitled to any Distribution under the Plan. The Debtors, Post-Effective Date Debtors, and/or Plan Administrator, as applicable, shall not reserve or set aside any amounts from the GUC Claims Reserve for Distributions on account of the PPP Loan.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 34 OF 39

8580169 v1 (72651.00003.000)

26. **LIENS OF THE AGENT/CHALLENGE PERIOD**. In accordance with the terms of the Plan, all Assets vesting in the Post-Effective Date Debtors and all Cash in the Distribution Reserve Accounts shall be subject to the Liens of the Agent until the Prepetition Secured Claims are indefeasibly paid in full. The Challenge Period (as defined in the Cash Collateral Order) has expired in accordance with the terms of the Cash Collateral Order, and the stipulations, admissions, and findings in the Cash Collateral Order shall be binding on the Debtors, the Post-Effective Date Debtors, and all parties in interest.

27. **GENERAL AUTHORIZATION**. Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects without any further action by any person or entity or any further Order of this Court.

28. **PAYMENT OF STATUTORY FEES**. All fees currently due and payable under 28 U.S.C. § 1930 shall be paid by the Plan Administrator on the Effective Date, and thereafter, as such fees become due. The Debtors' Cases are hereby deemed consolidated for the purpose of calculating U.S. Trustee Fees incurred after the Effective Date.

29. **GOVERNMENTAL APPROVALS NOT REQUIRED**. Except as otherwise provided herein, this Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto.

30. **GOVERNMENTAL EXCEPTIONS**. Nothing in this Order, the Plan, or any related documents discharges, releases, precludes or enjoins: (i) any police or regulatory liability to a Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 35 OF 39

8580169 v1 (72651.00003.000)

Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any non-debtor. Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in this Order or the Plan shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or the Plan or to adjudicate any defense asserted under this Order or the Plan. Nor shall anything in this Order, the Plan, or any related documents authorize the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization, (v) certification, or (vi) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under nonbankruptcy laws, regulations, and rules (including police or regulatory law or environmental law, or otherwise).

31. **FILING AND RECORDING**. This Order: (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been unconditionally released, discharged, and terminated, except as otherwise provided in the Plan; and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Order without payment of any recording tax, stamp

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 36 OF 39

8580169 v1 (72651.00003.000)

tax, transfer tax, or similar tax imposed by state or local law, including, but not limited to, the transfer of any Assets or Available Cash pursuant to the Plan.

32. **EXEMPTION FROM TRANSFER TAXES**. Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All transactions consummated by the Debtors and approved by the Court on and after the Petition Dates through and including the Effective Date, including the transfers effectuated under the Plan, the Sale by the Debtors pursuant to Bankruptcy Code § 363, and the assumption, assignment, and sale by the Debtors of Executory Contracts and Unexpired Leases pursuant to Bankruptcy Code § 365(a), shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

33. **EXCULPATION, RELEASES, AND INJUNCTION**. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Exculpation, Releases, and Injunction embodied in the Plan, including those contained in Sections 15.04 (Releases by the Debtors), 15.05 (Releases by Releasing Parties), 15.06 (Exculpation), 15.07 (Permanent Injunction), and 15.10 (Release of Liens) of the Plan are hereby approved as set forth in the Plan.

34. **SETTLEMENT OF CLAIMS AND INTERESTS**. Pursuant to Bankruptcy Code § 1123 and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, Releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan (including,

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 37 OF 39

8580169 v1 (72651.00003.000)

without limitation, the Releases, Exculpation, and Injunction) shall constitute a good-faith compromise and settlement of all controversies, Claims, and Interests resolved pursuant to the Plan. The global Settlement of Claims and Interests set forth in Article XV of the Plan and all other Settlements under the Plan and this Order, including, without limitation, the Oak Hills Settlement and the Argonaut Settlement, are hereby approved pursuant to Bankruptcy Code § 1123(b) and Bankruptcy Rule 9019. The parties are authorized and directed to take such other actions as may be necessary to effectuate the same, and perform all obligations contemplated thereby.

35. **SETOFF**. Sections 15.08 (Setoff) and Section 15.09 (Recoupment) of the Plan are proper and approved, and such Sections shall govern for purposes of determining rights of recoupment, setoff, and setoff mutuality under applicable law. The rights of the Debtors, Post-Effective Date Debtors, and Plan Administrator to dispute any alleged right of recoupment or setoff is preserved in all respects.

36. **RETENTION OF JURISDICTION**. Pursuant to Bankruptcy Code §§ 105(a) and 1142, notwithstanding confirmation of the Plan or occurrence of the Effective Date, this Court retains jurisdiction over these Cases and related matters, as legally permissible, to the full extent provided in the Plan.

37. **REVERSAL**. Except as otherwise provided herein, if any provision of this Order is hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or Plan Administrator prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification, or vacatur of this Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 38 OF 39

8580169 v1 (72651.00003.000)

reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto, and shall remain binding.

38. **CONFLICTS**. The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that in the event of any inconsistency among the Plan and the Disclosure Statement (or any exhibit or schedule to the Disclosure Statement), the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and this Order, this Order shall govern. The provisions of this Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of the Court.

*Prepared and submitted by*:

Joseph M. Coleman (SBN 04566100)
John J. Kane (SBN 24066794)
S. Kyle Woodard (SBN 24102661)
R. Hale Neilson (SBN 24116820)
**KANE RUSSELL COLEMAN LOGAN PC**
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
Email: jcoleman@krcl.com
Email: jkane@krcl.com
Email: kwoodard@krcl.com
Email: hneilson@krcl.com

**ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION**

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND
(II) CONFIRMING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

PAGE 39 OF 39

8580169 v1 (72651.00003.000)

# Exhibit A

**Confirmed Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| In re: | § | Chapter 11 |
|---|---|---|
| | § | |
| BAINBRIDGE UINTA, LLC, *et al.*,[1] | § | Case No. 20-42794 |
| | § | |
| Debtors. | § | Jointly Administered |

---

## DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

---

## DATED: June 24, 2021

Joseph M. Coleman (SBN 04566100)
John J. Kane (SBN 24066794)
S. Kyle Woodard (SBN 24102661)
**KANE RUSSELL COLEMAN LOGAN PC**
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
Email: jcoleman@krcl.com
Email: jkane@krcl.com
Email: kwoodard@krcl.com

**COUNSEL FOR DEBTORS AND
DEBTORS-IN-POSSESSION**

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Bainbridge Uinta, LLC (9240); and Bainbridge Uinta Holdings, LLC (9761).

# TABLE OF CONTENTS

ARTICLE I DEFINED TERMS .................................................................................. 1
    Section 1.01    Defined Terms ................................................................... 1
    Section 1.02    Exhibits and Plan Supplement ...................................... 13
    Section 1.03    Rules of Interpretation .................................................. 13

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ................................... 14
    Section 2.01    Administrative Claims ................................................... 14
    Section 2.02    Administrative Claims Bar Date .................................... 15
    Section 2.03    Priority Tax Claims ....................................................... 15
    Section 2.04    Professional Fee Claims ................................................ 15
    Section 2.05    U.S. Trustee Fees .......................................................... 16

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ...................... 16
    Section 3.01    Classification in General ............................................... 16
    Section 3.02    Voting ............................................................................ 16
    Section 3.03    Identification of Claims and Interests ........................... 16
    Section 3.04    Elimination of Vacant Classes ...................................... 17
    Section 3.05    Presumed Acceptance by Non-Voting Classes .............. 17

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS .............................. 17
    Section 4.01    Class 1 – Priority Non-Tax Claims ................................ 17
    Section 4.02    Class 2 – Prepetition Secured Claims ............................ 18
    Section 4.03    Class 3 – Other Secured Claims .................................... 18
    Section 4.04    Class 4 – Prepetition Secured Lender Deficiency Claims ............... 19
    Section 4.05    Class 5 – GUC Claims ................................................... 19
    Section 4.06    Class 6 – Intercompany Claims ..................................... 19
    Section 4.07    Class 7 – Section 510(b) Claims .................................... 20
    Section 4.08    Class 8 – Bainbridge Interests ....................................... 20
    Section 4.09    Class 9 – Bainbridge Holdings Interests ....................... 20
    Section 4.10    PPP Loan ....................................................................... 20

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN ........................... 21
    Section 5.01    Designation of Unimpaired Classes .............................. 21
    Section 5.02    Designation of Impaired Classes ................................... 21
    Section 5.03    Classes Entitled to Vote ................................................ 21
    Section 5.04    Classes Not Entitled to Vote ......................................... 21
    Section 5.05    Cram Down – Nonconsensual Confirmation ................. 21

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN AND POST
EFFECTIVE DATE GOVERNANCE ......................................................... 21
    Section 6.01    Plan Funding .................................................................. 21
    Section 6.02    Vesting of Assets in the Post-Effective Date Debtors .... 22
    Section 6.03    Officers and Directors ................................................... 22
    Section 6.04    Corporate Existence ...................................................... 22
    Section 6.05    Authorization for Transactions ...................................... 22
    Section 6.06    Employee Benefit Plans ................................................ 23

Section 6.07    Exemption from Certain Transfer Taxes .............................................23
Section 6.08    Preservation of Causes of Action ....................................................23
Section 6.09    Plan Administrator Closing of the Chapter 11 Cases ........................24

ARTICLE VII PLAN ADMINISTRATOR ..............................................................24
Section 7.01    The Plan Administrator ....................................................................24
Section 7.02    Compensation of the Plan Administrator .........................................24
Section 7.03    Powers and Duties of the Plan Administrator ...................................25
Section 7.04    Rights and Privileges of the Plan Administrator ..............................26
Section 7.05    Access and Preservation of Records .................................................26
Section 7.06    Termination ......................................................................................26
Section 7.07    Maintenance of Books and Records ..................................................26

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS .............................26
Section 8.01    Distribution Procedures ...................................................................26
Section 8.02    Timing and Delivery of Distributions ..............................................27
Section 8.03    Method of Cash Distributions ..........................................................27
Section 8.04    Sources of Cash for Distributions ....................................................27
Section 8.05    Failure to Negotiate Checks .............................................................27
Section 8.06    No Post-Petition Interest ..................................................................27
Section 8.07    Fractional Dollars ............................................................................27
Section 8.08    Compliance with Tax Requirements .................................................28
Section 8.09    Setoffs ..............................................................................................28
Section 8.10    Distribution Record Date .................................................................28
Section 8.11    Date of Distributions on Account of Allowed Claims .......................28
Section 8.12    No Distributions Pending Allowance ...............................................28

ARTICLE IX DISTRIBUTION RESERVE ACCOUNTS .........................................29
Section 9.01    Establishment of Reserves ...............................................................29
Section 9.02    Plan Distributions ............................................................................29
Section 9.03    Professional Fee Claims Reserve .....................................................29
Section 9.04    GUC Claim Reserve .........................................................................29

ARTICLE X EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER
AGREEMENTS .........................................................................................................29
Section 10.01   Assumption/Rejection ......................................................................29
Section 10.02   Insurance Policies ............................................................................30
Section 10.03   Claims Based on Rejected Executory Contracts and Unexpired Leases ........30

ARTICLE XI PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
UNLIQUIDATED CLAIMS ......................................................................................31
Section 11.01   Objections to Claims ........................................................................31
Section 11.02   Expunging of Disallowed Claims .....................................................31

ARTICLE XII CONDITIONS PRECEDENT TO EFFECTIVE DATE .......................31
Section 12.01   Occurrence of the Effective Date .....................................................31
Section 12.02   Substantial Consummation ...............................................................32
Section 12.03   Waiver of Conditions .......................................................................32

Section 12.04   Revocation, Withdrawal, or Non-Consummation .............................................32

ARTICLE XIII AMENDMENTS AND MODIFICATIONS .................................................................33

ARTICLE XIV RETENTION OF JURISDICTION .............................................................................33

ARTICLE XV EFFECT OF THE PLAN ON CLAIMS AND INTERESTS ...................................34
Section 15.01   Compromise and Settlements ....................................................34
Section 15.02   Discharge of Claims and Termination of Interests....................34
Section 15.03   Term of Injunctions or Stays ...................................................35
Section 15.04   Releases by the Debtors...........................................................35
Section 15.05   Releases by the Releasing Parties ...........................................36
Section 15.06   Exculpation...............................................................................37
Section 15.07   Permanent Injunction...............................................................37
Section 15.08   Setoffs ......................................................................................38
Section 15.09   Recoupment..............................................................................38
Section 15.10   Release of Liens.......................................................................38
Section 15.11   Good Faith ...............................................................................39

ARTICLE XVI MISCELLANEOUS PROVISIONS .............................................................................39
Section 16.01   Severability of Plan Provisions ...............................................39
Section 16.02   Successors and Assigns ...........................................................39
Section 16.03   Binding Effect .........................................................................39
Section 16.04   Governing Law.........................................................................39
Section 16.05   Entire Agreement.....................................................................40

ARTICLE XVII CONFIRMATION REQUEST .....................................................................................40

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN**.

# ARTICLE I
# DEFINED TERMS

**Section 1.01     Defined Terms**

(1)     **Acquired Assets** means the Debtors' assets and properties that were purchased by the Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

(2)     **Administrative Claim** means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) all U.S. Trustee Fees; and (c) all Allowed Professional Fee Claims; *provided, however*, that, for the avoidance of doubt, any Claim assumed by the Purchaser shall not be an Administrative Claim.

(3)     **Administrative Claims Bar Date** means the applicable deadline for Filing requests for allowance and payment of Administrative Claims, which, (a) if subject to the Initial Administrative Claims Bar Date Order, was the Initial Administrative Claims Bar Date; (b) if subject to the Disclosure Statement Order, is the Supplemental Administrative Claims Bar Date; and (c) with respect to Professional Fee Claims, is the Professional Fee Claims Bar Date; *provided, however*, that neither the Agent nor any of the Prepetition Secured Lenders shall be required to File a request for allowance of any Administrative Claim.

(4)     **Affiliate** has the meaning set forth in section 101(2) of the Bankruptcy Code.

(5)     **Agent** means White Oak Global Advisors, LLC in its capacity as administrative agent under the Prepetition Credit Agreement.

(6)     **Agent Released Parties** means (a) the Agent, (b) the Prepetition Secured Lenders, (c) with respect to each of the foregoing in (a) and (b), each of their respective current and former affiliates and subsidiaries, and (d) with respect to each of the foregoing in (a) through (c), each of their respective predecessors, successors and assigns (whether by operation of law or otherwise), current and former affiliates, subsidiaries, members, management companies, fund advisors or managers, managed accounts or funds, partners, limited partners, general partners, principals, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, participants, officers, directors, advisory board members, employees, managers, shareholders, representatives, heirs, executors, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members, and professionals).

(7)     **Allowed** means with reference to any Claim or Interest: any Claim or Interest or any portion thereof (a) as to which no objection to allowance has been interposed on or before the

later of (i) the Claim Objection Deadline or (ii) the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or is listed on the Bankruptcy Schedules as liquidated, non-contingent, and undisputed; (b) as to which any objection to its allowance has been settled, waived through payment, or withdrawn, as permitted herein, or denied by a Final Order; (c) as to which liability of the Debtors and the amount thereof has been determined and expressly allowed by the Plan or a Final Order; (d) as to which the liability of the Debtors and the amount thereof are determined and expressly allowed by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; (e) that is expressly deemed allowed in a liquidated amount in the Plan; or (f) as to which the allowed amount of and type and/or classification is expressly set forth on the Schedule of Allowed Claims; *provided, however*, that with respect to an Administrative Claim, **"Allowed Administrative Claim"** means an Administrative Claim as to which a timely request for payment has been made by the applicable Administrative Claims Bar Date in accordance with the Plan (if such written request is required) or other Administrative Claim, in each case as to which the Debtors, the Agent, or the Plan Administrator (i) have not interposed a timely objection or (ii) have interposed a timely objection and such objection has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order; *provided further* that, except as otherwise set forth herein, the amount of any Secured Claim or Other Secured Claim for purposes of the Plan shall be determined in accordance with the Bankruptcy Code, including without limitation sections 502(b)(6), 503(b), and 506.

(8)     **Asset Purchase Agreement** means that certain *Purchase and Sale Agreement* dated as of March 30, 2021 by and between Debtor Bainbridge Uinta, LLC and the Purchaser for the purchase and sale of the Acquired Assets, as approved by the Bankruptcy Court pursuant to the Sale Order, together with any such other documents attached or annexed thereto, as amended or otherwise modified from time to time.

(9)     **Assets** means all of the Debtors' assets and property existing as of the Effective Date, including without limitation Available Cash.

(10)     **Assigned Contracts** means any and all Executory Contracts and Unexpired Leases (a) designated in the Asset Purchase Agreement as an Assigned Contract (as defined in the Asset Purchase Agreement), and (b) assumed by the Debtors and assigned to the Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

(11)     **Available Cash** means (a) all Cash and Cash Equivalents of the Debtors, determined in accordance with generally accepted accounting principles in the United States, as of the Effective Date (including the amount of any retainer or deposit held by a party in which the Debtors hold an interest), and (b) all other Cash and Cash Equivalents in which the Post-Effective Date Debtors may hold or obtain an interest.

(12)     **Avoidance Actions** means any and all actual or potential Claims or Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a), or any similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

(13)     **Bainbridge** means Debtor Bainbridge Uinta, LLC.

(14)    **Bainbridge Interest** means an Interest in Bainbridge.

(15)    **Bainbridge Holdings** means Debtor Bainbridge Uinta Holdings, LLC.

(16)    **Bainbridge Holdings Interest** means an Interest in Bainbridge Holdings.

(17)    **Ballot** means the document for accepting or rejecting the Plan, in the form approved by the Bankruptcy Court.

(18)    **Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date as heretofore or hereafter amended.

(19)    **Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or any other bankruptcy court having jurisdiction over the Cases from time to time.

(20)    **Bankruptcy Rules** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Cases or proceedings therein, as the case may be.

(21)    **Bankruptcy Schedules** means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, and related information Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(22)    **Bankruptcy SOFAs** means the statements of financial affairs and related financial information Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such statements may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(23)    **Budgeted Expense** means any expense explicitly set forth in the Wind-Down Budget to be funded by Available Cash on the Effective Date and authorized to be paid pursuant to the Wind-Down Budget and the terms of the Plan.

(24)    **Business Day** means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Dallas, Texas.

(25)    **CARES Act** means the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) and applicable rules and regulations, as amended from time to time.

(26)    **Case or Cases** means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

(27)  **Cash** means legal currency of the United States of America or Cash Equivalents, including bank deposits and checks.

(28)  **Cash Collateral Order** means the *Final Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection and Related Relief* [Docket No. 117], as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

(29)  **Cash Equivalents** means any item or asset of the Debtors readily converted to Cash, such as bank accounts, marketable securities, treasury bills, certificate of deposit, commercial paper maturing less than one year from date of issue, or other liquid investments.

(30)  **Causes of Action** means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring through the Effective Date, including any and all Avoidance Actions.

(31)  **Claim** means a claim, whether or not asserted or Allowed, as defined in section 101(5) of the Bankruptcy Code.

(32)  **Claimant** means the holder of a Claim or Interest.

(33)  **Claim Objection Deadline** means the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with the Plan.

(34)  **Claims Bar Date** means the applicable Administrative Claims Bar Date, the General Claims Bar Date, the Government Claims Bar Date, the Professional Fee Claims Bar Date, or the applicable Rejection Claims Bar Date, as applicable.

(35)  **Class** means a category of Claims or Interests as set forth in the Plan pursuant to section 1122 of the Bankruptcy Code.

(36)  **Closing** means the closing of the sale of the Acquired Assets to the Purchaser in accordance with the Asset Purchase Agreement and the Sale Order.

(37)  **Closing Date** means the date of the Closing.

(38)  **Confirmation** means entry by the Bankruptcy Court of the Confirmation Order on the docket of the Cases.

(39)  **Confirmation Date** means the date on which the Confirmation Order is entered on the docket in the Cases within the meaning of Bankruptcy Rules 5003 and 9021.

(40)  **Confirmation Hearing** means the hearing or hearings held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, which

may be combined with the Final Disclosure Statement Hearing, as such hearing may be continued from time to time.

(41) **Confirmation Order** means the order in form and substance acceptable to the Agent entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(42) **Confirmation Rejection Claims** has the meaning provided in Article X of the Plan.

(43) **Confirmation Rejection Claims Bar Date** has the meaning provided in Article X of the Plan.

(44) **Consummation** means the occurrence of the Effective Date.

(45) **Creditor** means any Person who holds a Claim against any Debtor.

(46) **Debtors** means individually or collectively the following debtors and debtors-in-possession: Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC.

(47) **Debtor Related Persons** means each Debtor's current officers, directors, employees, and managers, as of the Effective Date, and any Professionals employed by the Debtors pursuant to a Bankruptcy Court order, each acting only in its capacity as such.

(48) **Deficiency Claim** means an Unsecured Claim for the difference between the aggregate amount of an Allowed Claim and the value received on account of the portion of such Allowed Claim.

(49) **Disallowed** means a Claim or portion thereof which has been disallowed by a Final Order (including the Confirmation Order) or any Claim which is not an Allowed Claim for any other reason.

(50) **Disclosure Statement** means the *Debtors' Joint Disclosure Statement Pursuant to 11 U.S.C. § 1125* [Docket No. 294] in form and substance acceptable to the Agent, as the same may be amended, modified, or supplemented from time to time as acceptable to the Agent, including all exhibits, schedules and attachments thereto.

(51) **Disclosure Statement Order** means the Bankruptcy Court's *Order (I) Conditionally Approving the Disclosure Statement; (II) Scheduling a Combined Plan and Disclosure Statement Hearing; (III) Approving the Solicitation Packages and Procedures; (IV) Approving the Form of Ballots, Notices, and Other Solicitation Materials; (V) Establishing Supplemental Administrative Claims Bar Date; and (VI) Granting Related Relief* [Docket No. 304] in form and substance acceptable to the Agent, as the same may be amended, modified, or supplemented from time to time as acceptable to the Agent.

(52) **Disputed** means, in reference to a Claim or Interest, any Claim or Interest not otherwise Allowed or Disallowed pursuant to the Plan or an Order of the Bankruptcy Court (a) which has been Scheduled, or hereafter is listed on the Bankruptcy Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties; (b) proof of which was required to be Filed but as to which a Proof of Claim or Interest was not timely or properly Filed;

(c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Bankruptcy Schedules as unliquidated, disputed, or contingent; (d) that is disputed in accordance with the provisions of the Plan; or (e) as to which a Debtor has interposed a timely objection in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by a Debtor in accordance with applicable law, which objection or dispute has not been withdrawn or determined by a Final Order; *provided, however,* that for purposes of determining whether a particular Claim is a Disputed Claim before the expiration of any period of limitation fixed for the interposition by a Debtor of objections to the allowance of Claims, any Claim that is not an Allowed Claim shall be deemed Disputed.

(53)     **Distribution** means the payment of Cash or other property, as the case may be, in accordance with the Plan and the Confirmation Order.

(54)     **Distribution Date** means the dates, occurring as soon as practicable after the Effective Date or as otherwise set forth in the Plan, upon which Distributions are made pursuant to the terms of the Plan to holders of Allowed Claims.

(55)     **Distribution Record Date** means the Effective Date.

(56)     **Distribution Reserve Accounts** means the Professional Fee Claim Reserve and GUC Claim Reserve and any other reserve accounts established in accordance with the Plan.

(57)     **Effective Date** means the first Business Day on which all conditions precedent set forth in the Plan have been satisfied or waived as permitted hereunder.

(58)     **Employee Benefit Plans** means any employment, compensation, pension, welfare, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense, reimbursement, dependent care, retirement, savings, deferred compensation, supplemental pension, retention, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, severance or other compensation or benefit plan, agreement or arrangement for the benefit of the current or former directors, officers or employees (whether salaried or hourly, active or retired) of a Debtor.

(59)     **Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

(60)     **Estates** means individually or collectively the estate created for such Debtor in its Case pursuant to section 541 of the Bankruptcy Code.

(61)     **Exculpated Parties** means, in each case only in its capacity as such, (a) the Debtors, (b) the Debtor Related Persons, and (c) the Agent Released Parties.

(62)     **Executory Contract** means a contract to which one or more of the Debtors is a party and that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code.

(63)     **Exhibit** means an exhibit annexed either to the Plan, the Plan Documents, or the Disclosure Statement or Filed as part of the Plan Supplement.

(64)    **File, Filed, or Filing** means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Cases.

(65)    **Final Disclosure Statement Hearing** means the hearing or hearings held by the Bankruptcy Court to consider final approval of the Disclosure Statement, which may be combined with the Confirmation Hearing, as such hearing may be continued from time to time.

(66)    **Final Distribution Date** means the date that the Wind-Down is completed and the Plan Administrator makes final Distributions under the Plan.

(67)    **Final Order** means (a) an order or judgment of the Bankruptcy Court, as entered on the docket in any of the Cases (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction; or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Cases (or in any related adversary proceeding or contested matter), in each case of (a) and (b) that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Rules, may be Filed relating to such order shall not prevent such order from being a Final Order.

(68)    **Framework Agreement** means the *Agreement for Framework for Consensual Resolution of Chapter 11 Cases Between Debtors and White Oak Global Advisors, LLC* [Docket No. 114].

(69)    **General Claims Bar Date** means January 12, 2021, which is the applicable date designated by the Bankruptcy Court as the last date for Persons or Entities (other than Governmental Units) to File Proofs of Claims or Interests in the Cases.

(70)    **Government Claims Bar Date** means April 12, 2021, which is the applicable date designated by the Bankruptcy Court as the last date for Governmental Units to File Proofs of Claims or Interests in the Cases.

(71)    **Governmental Unit** has the meaning set forth in section 101(27) of the Bankruptcy Code.

(72)    **GUC Claim** means any Claim against any Debtor that is not Secured or entitled to priority under the Bankruptcy Code or any Final Order, specifically excluding (for the avoidance of doubt) Administrative Claims, Professional Fee Claims, Prepetition Secured Claims, Other Secured Claims, Priority Tax Claims, Priority Non-Tax Claims, Intercompany Claims, Prepetition Secured Lender Deficiency Claims, or any Claim that was assumed by the Purchaser.

(73)    **GUC Claims Reserve** means an account to be established by the Debtors on the Effective Date and funded in the GUC Claim Reserve Amount for the payment of Allowed GUC Claims.

(74)    **GUC Claim Reserve Amount** means $100,000.00 funded from Available Cash and deposited in the GUC Claim Reserve on the Effective Date.

(75)    **Impaired** means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

(76)    **Initial Administrative Claims Bar Date** means December 15, 2020 at 5:00 p.m. (CT), the deadline for parties to assert Administrative Claims that are subject to the Initial Administrative Claims Bar Date Order.

(77)    **Initial Administrative Claims Bar Date Order** means the *Order (I) Establishing Bar Date for Filing Administrative Expense Claims; (II) Approving Form and Manner of Notice of Administrative Bar Date; and (III) Granting Related Relief* [Docket No. 161].

(78)    **Intercompany Claim** means any Claim by a Debtor against another Debtor.

(79)    **Interest** means an interest of any holder of equity securities in any of the Debtors represented by any issued and outstanding limited liability company interests, common stock or interests, preferred stock or interests, or other instrument evidencing a present ownership interest in any of the Debtors before the Effective Date (including before the Petition Date), whether or not transferable, any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to the common stock or preferred stock interests of any of the Debtors, obligating any of the Debtors to issue, transfer, purchase, redeem, or sell any equity interests or other equity securities, any rights under any equity incentive plans, voting agreements and registration rights agreements regarding equity securities of any of the Debtors, any claims arising from the rescission of a purchase, sale, or other acquisition of any outstanding common stock interests or preferred stock interests or other equity securities (or any right, claim, or interest in and to any common stock interests, preferred stock interests or other equity securities) of any of the Debtors, any claims for the payment of any distributions with respect to any common stock or preferred stock interests of any of the Debtors, and any claims for damages or any other relief arising from the purchase, sale, or other acquisition of any of the Debtors' outstanding common stock interests, preferred stock interests or other equity securities, however evidenced.

(80)    **Internal Revenue Code** means the Internal Revenue Code of 1986, as amended from time to time, and any successor statute or statutes.

(81)    **Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

(82)    **Notice of Non-Voting Status** means a notice provided by the Debtors to holders of Claims or Interests in Classes that are not entitled to vote on the Plan notifying such parties that they are not entitled to vote and providing the opportunity for such holders to opt out of the releases set forth in Section 15.05 of the Plan.

(83)     **Other Secured Claim** means any Secured Claim against a Debtor other than the Prepetition Secured Claims, but excluding, for the avoidance of doubt, any Claim that was assumed by the Purchaser.

(84)     **Order** means any award, decision, writ, injunction, judgment, order, or decree entered, issued, made, or rendered by any Governmental Unit (including the Bankruptcy Court), or by any arbitrator.

(85)     **Ordinary Course Professionals Order** means the Bankruptcy Court's *Order Granting Debtors' Motion to Employ Professionals Utilized Only in the Ordinary Course of the Debtors' Business* [Docket No. 126].

(86)     **Person** has the meaning set forth in section 101(41) of the Bankruptcy Code.

(87)     **Petition Date** means September 1, 2020, the date that each Debtor Filed its voluntary petition in the Bankruptcy Court commencing its respective chapter 11 Case.

(88)     **Plan** means this *Joint Chapter 11 Plan of Liquidation*, including any Exhibits and all supplements, appendices, and schedules thereto (including the Plan Supplement and Plan Documents), either in its present form or as the same may be altered, amended, modified, or supplemented from time to time as permitted herein and in accordance with the provisions of the Bankruptcy Code and the terms hereof.

(89)     **Plan Administrator** means Ching Energy, LLC, who will serve as the initial administrator of the Post-Effective Date Debtors and effectuate the Wind-Down pursuant to the Plan.

(90)     **Plan Distributions** means, collectively, the Distributions to be made on or after the Effective Date pursuant to the Plan and the Wind-Down Budget to holders of Allowed Administrative Claims, Priority Tax Claims, Non-Priority Tax Claims, Other Secured Claims, and GUC Claims.

(91)     **Plan Documents** means all documents, forms, lists and agreements contemplated under the Plan (including, but not limited to the Plan Supplement), each in form and substance acceptable to the Agent, to effectuate the terms and conditions hereof.

(92)     **Plan Supplement** means any supplement to the Plan, and the compilation of Plan Documents and forms of documents and Exhibits to the Plan, including the identity of and notice information for the initial Plan Administrator, the Schedule of Allowed Claims, and the Wind-Down Budget, as amended, modified, or supplemented from time to time, and in each case in form and substance acceptable to the Agent, to be Filed by the Debtors as permitted herein on or before the Plan Supplement Filing Date, and which may be amended, modified, or supplemented with the consent of the Agent at any time prior to the Effective Date.

(93)     **Plan Supplement Filing Date** means June 16, 2021, which date may be modified by (a) the Debtors, with the consent of the Agent, or (b) Order of the Bankruptcy Court.

(94)     **Post-Effective Date Debtor** means a Debtor after the Effective Date.

(95)     **PPP** means the Paycheck Protection Program created by the CARES Act.

(96)     **PPP Loan** means the one-time loan obtained by Bainbridge pursuant to 15 U.S.C. § 636(a)(36) under the CARES Act.

(97)     **Prepetition Credit Agreement** means that certain *Loan, Guaranty and Security Agreement*, dated as of September 25, 2018, by and among the Debtors as borrowers, the guarantors from time to time party thereto, the Agent, and the Prepetition Secured Lenders.

(98)     **Prepetition Loan Documents** means, collectively, (a) the Prepetition Credit Agreement; (b) that certain *Pledge and Security Agreement*, dated as of September 25, 2018 by and among the Debtors, as grantors, and the Agent; (c) those certain *Deeds of Trust, Mortgage Assignments of As-Extracted Collateral, Security Agreements, Fixture Filings and Financing Statements* for the benefit of the Agent; and (d) all other related loan documents, agreements, financing statements, deposit account control agreements, security documents, or instruments executed or delivered in connection therewith, and in each case as amended, amended and restated, modified, or supplemented prior to the Petition Date.

(99)     **Prepetition Secured Lender Deficiency Claim** means any Deficiency Claim held by a Prepetition Secured Lender derived from, based upon, relating to, or arising from the Prepetition Loan Documents.

(100)     **Prepetition Secured Lenders** means the secured parties that are party to the Prepetition Loan Documents.

(101)     **Prepetition Secured Claims** means all Claims arising from or relating to the Prepetition Loan Documents and the corresponding obligations and as set forth in the Cash Collateral Order other than a Prepetition Secured Lender Deficiency Claim.

(102)     **Priority Non-Tax Claims** means any Claim other than an Administrative Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code; *provided, however*, that, for the avoidance of doubt, any Claim assumed by the Purchaser shall not be a Priority Non-Tax Claim.

(103)     **Priority Tax Claim** means a Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code; *provided, however*, that, for the avoidance of doubt, a Claim that was assumed by the Purchaser shall not be a Priority Tax Claim.

(104)     **Pro Rata** means that proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims or Interests in such Class.

(105)     **Professional** means any professional (a) employed or retained in the Cases pursuant to sections 327 or 328 of the Bankruptcy Code by Order of the Bankruptcy Court and (b) to be compensated for services rendered pursuant to sections 327, 328, 329, 330, 331, 363 or 503(b) of the Bankruptcy Code, including without limitation all professionals authorized to be utilized in the ordinary course of the Debtors' business pursuant to the Ordinary Course Professionals Order.

(106)     **Professional Fee Claim** means a Claim of a Professional for compensation or reimbursement of expenses relating to services provided from the Petition Date through the Effective Date.

(107) **Professional Fee Claims Bar Date** means the date that is twenty one (21) days after the Effective Date, which is the deadline for Professionals (other than Professionals retained pursuant to the Ordinary Course Professionals Order) to File applications for allowance and payment of Professional Fee Claims.

(108) **Professional Fee Claim Reserve** means an account to be established by the Debtors on the Effective Date, subject to the Liens of the Agent, for the payment of Allowed Professional Fee Claims.

(109) **Proof of Claim (or Interest)** means the proof of claim (or interest) that must be Filed by a holder of a Claim (or Interest) by the General Claims Bar Date or the Government Claims Bar Date, as applicable.

(110) **Purchaser** means Vaquero Uinta, LLC, the entity that purchased the Acquired Assets pursuant to the Asset Purchase Agreement and the Sale Order.

(111) **Reinstate** means, with respect to Claims and Interests, that the Claim or Interest shall not be discharged hereunder and the holder's legal, equitable, and contractual rights on account of such Claim or Interest shall remain unaltered by Consummation in accordance with section 1124(1) of the Bankruptcy Code.

(112) **Rejection Claim** means any GUC Claim arising from the rejection of any of the Debtors' Executory Contracts or Unexpired Leases, whether pursuant to the Plan or otherwise, including Confirmation Rejection Claims and Supplement Rejection Claims.

(113) **Rejection Claims Bar Date** means the applicable deadline for Filing Proofs of Claim for Rejection Claims, which, (a) with respect to Supplement Rejection Claims, is the Supplement Rejection Claims Bar Date; and (b) with respect to Confirmation Rejection Claims, is the Confirmation Rejection Claims Bar Date.

(114) **Released Parties** means, collectively and individually, and in each case only in its capacity as such: (a) the Debtor Related Persons who do not opt out of the releases contained in the Plan and (b) the Agent Released Parties.

(115) **Releasing Parties** means each of the following solely in its capacity as such: (a) the Debtors; and (b) the holders of Claims or Bainbridge Holdings Interests (1) who vote to accept the Plan, (2) who are Unimpaired under the Plan but do not check the applicable box on the Notice of Non-Voting Status to opt out of granting the releases herein, (3) whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not check the applicable box on the Ballot to opt out of granting the releases herein, (4) who vote to reject the Plan but do not check the applicable box on the Ballot to opt out of granting the releases herein, or (5) who are deemed to reject the Plan but do not check the applicable box on the Notice of Non-Voting Status to opt out of granting the releases herein.

(116) **Sale** means the sale of the Acquired Assets to the Purchaser pursuant to the Asset Purchase Agreement and Sale Order.

(117) **Sale Order** means the *Amended Order (I) Authorizing and Approving (A) The Sale of Debtors' Assets Free and Clear of Liens, Claims and Encumbrances, and (B) Debtors' Assumption and Assignment*

*of Executory Contracts and Unexpired Leases in Connection with the Sale; and (II) Granted Related Relief* [Docket No. 257].

(118) **Sale Proceeds** means all of the Cash received from the sale, disposition, collection or other monetization of the Acquired Assets as contemplated under the Asset Purchase Agreement, including, without limitation, funds held in deposit or in escrow under or in connection with the Asset Purchase Agreement, if any.

(119) **Schedule of Allowed Claims** means the schedule to be included in the Plan Supplement in form and substance acceptable to the Agent identifying the amount and the type and/or classification of Claims against the Debtors that shall be deemed Allowed as of the Effective Date, which may be amended, supplemented, or otherwise modified from time to time prior to the Effective Date with the consent of the Agent. Unless otherwise determined by the Bankruptcy Court prior to or at the Confirmation Hearing, the amount of and the type and/or classification of the Claims set forth on the Schedule of Allowed Claims shall be binding upon the holders of Claims identified thereon.

(120) **Scheduled** means, with respect to any Claim or Interest, the status and amount, if any, of such Claim or Interest as set forth in the Bankruptcy Schedules.

(121) **Section 510(b) Claim** means any Claim against a Debtor arising from (a) rescission of a purchase or sale of an Interest in any Debtor or an Affiliate of any Debtor, (b) purchase or sale of such an Interest, or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

(122) **Secured** means, when referring to a Claim: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan or the Cash Collateral Order as a Secured Claim.

(123) **Supplement Rejection Claims** has the meaning provided in Article X of the Plan.

(124) **Supplement Rejection Claims Bar Date** has the meaning provided in Article X of the Plan.

(125) **Supplemental Administrative Claims Bar Date** means June 14, 2021, the deadline for parties to assert Administrative Claims that are subject to the bar date set forth in the Disclosure Statement Order.

(126) **Supplemental Assumption-Rejection Notice** means the *Supplemental Notice of Assumption, Assumption and Assignment, and Rejection of Executory Contracts and Unexpired Leases* [Docket No. 312] filed by the Debtors on May 28, 2021.

(127) **U.S. Trustee** means the Office of the United States Trustee for the Northern District of Texas, Fort Worth Division, or a representative thereof.

(128)   **U.S. Trustee Fees** means fees payable pursuant to section 1930 of title 28 of the United States Code.

(129)   **Unclaimed Property** has the meaning set forth in 8.05 of the Plan.

(130)   **Unexpired Lease** means a lease to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

(131)   **Unimpaired** means a Claim or Interest that is not Impaired.

(132)   **Unsecured** means, with respect to a Claim, not Secured.

(133)   **Voting Deadline** means the deadline by which a Creditor must deliver a Ballot to accept or reject the Plan as set forth in the Order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to the Plan, which is June 23, 2021 at 5:00 p.m. (prevailing Central Time).

(134)   **Voting Record Date** means the record date for voting on the Plan, which is May 25, 2021.

(135)   **Wind-Down** means the process following the Effective Date for making Distributions pursuant to the Plan, liquidating or abandoning the Assets, reconciling any Claims, if necessary, and winding down, dissolving, and liquidating the Estates and the Post-Effective Date Debtors.

(136)   **Wind-Down Budget** means the budget in form and substance acceptable to the Agent attached to the Plan Supplement and incorporated herein by reference, which shall include line items acceptable to the Agent to fund from Available Cash Budgeted Expenses, including: (a) the payment of Allowed Administrative Claims (other than Professional Fee Claims), Allowed Priority Tax Claims, U.S. Trustee Fees, Allowed Claims in Class 1, and, if applicable, Allowed Claims in Class 3; (b) funding of the Professional Fee Claims Reserve; (c) funding of the GUC Claim Reserve; and (d) funding of such other costs acceptable to the Agent, and pursuant to which the Plan Administrator shall effectuate the orderly Wind-Down of the Estates and the Post-Effective Date Debtors in accordance with the Plan, which budget may be amended from time to time following the Effective Date with the consent of the Agent to include subsequent periods or otherwise in accordance with the Plan.

## Section 1.02       Exhibits and Plan Supplement

All Exhibits, all Plan Documents, and the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be timely Filed with the Clerk of the Bankruptcy Court on or before the Plan Supplement Filing Date.

## Section 1.03       Rules of Interpretation

For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form

or on particular terms and conditions means that such agreement or document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in this Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to this Plan; (e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation of this Plan; (g) "after notice and a hearing," or a similar phrase has the meaning given such term in section 102 of the Bankruptcy Code; (h) "includes" and "including" are not limiting; (i) "may not" is prohibitive, and not permissive; (j) "or" is not exclusive; (k) U.S. Trustee includes a designee of the U.S. Trustee; and (l) any obligations or actions required of the Debtors, Post-Effective Date Debtors, or Plan Administrator under this Plan may be performed by each of them, as applicable, in accordance with the terms hereof.

# ARTICLE II
# TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III and Article IV hereof. These unclassified Claims are treated as set forth in this Article II.

## Section 2.01      Administrative Claims

Subject to the applicable Administrative Claims Bar Date and other provisions herein and except to the extent the holder of an Allowed Administrative Claim agrees to different and less favorable treatment, the Debtors shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the latest of: (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided that* Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses may be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions. Cash payments of Allowed Administrative Claims shall be paid from Available Cash.

Notwithstanding the foregoing, any and all Administrative Claims assumed by the Purchaser under the Asset Purchase Agreement or the Sale Order or otherwise payable by the Purchaser shall be paid by the Purchaser, and from and after the Effective Date, each holder of such an Administrative Claim shall have recourse for payment of such Claim solely against the Purchaser and its assets and property and shall be deemed to have waived and released any recourse against the Debtors, the Post-Effective Date Debtors, or their respective assets or property for payment of or recovery on such Claim.

Other than with respect to U.S. Trustee Fees and Professional Fee Claims, only the Claims identified on the Schedule of Allowed Claims as Administrative Claims shall constitute Allowed

Administrative Claims, and such Allowed Administrative Claims shall be Allowed only to the extent and in the amounts set forth on the Schedule of Allowed Claims.

**Section 2.02     Administrative Claims Bar Date**

Any request for allowance and payment of Administrative Claims that has not been Filed by the applicable Administrative Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtors, the Debtors' Estates, the Plan Administrator, the Post-Effective Date Debtors, or any of their respective affiliates or representatives.

**Section 2.03     Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge thereof, receive: (a) such treatment as to which such holder may agree; or (b) at the sole option of the applicable Debtor or Reorganized Debtor, (i) payment in full, in Cash, of such Allowed Priority Tax Claim on the later of the Effective Date or the date on which the Priority Tax Claim is deemed Allowed (or as soon thereafter as practicable); or (ii) treatment in accordance with Bankruptcy Code §§ 1129(a)(9)(C) or 1129(a)(9)(D), as applicable. Cash payments of Allowed Priority Tax Claims shall be paid on the Effective Date or as soon thereafter as practicable.

Notwithstanding the foregoing, any and all Priority Tax Claims assumed by the Purchaser under the Asset Purchase Agreement or the Sale Order or otherwise payable by the Purchaser shall be paid by the Purchaser, and from and after the Effective Date each holder of such a Priority Tax Claim shall have recourse for payment of such Claim solely against the Purchaser and its assets and property and shall be deemed to have waived and released any recourse against the Debtors, the Post-Effective Date Debtors, or their respective assets or property for payment of or recovery on such Claim.

Only the Claims identified on the Schedule of Allowed Claims as Priority Tax Claims shall constitute Allowed Priority Tax Claims, and such Allowed Priority Tax Claims shall be Allowed only to the extent and in the amounts set forth on the Schedule of Allowed Claims.

**Section 2.04     Professional Fee Claims**

Professional Fee Claims shall be subject to approval by the Bankruptcy Court. Each holder of a Professional Fee Claim seeking an award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred through and including the Effective Date must File and serve its respective application for allowance of such Professional Fee Claim no later than the date that is twenty one (21) days after the Effective Date. Objections to applications of such Professionals for compensation and/or reimbursement of expenses must be Filed and served on the Plan Administrator and the requesting Professional no later than fourteen (14) days after the date on which the applicable application for compensation or reimbursement was served. Cash payments of Allowed Professional Fee Claims shall be subject to the amount set forth for such Claims in the Wind-Down Budget *plus* the amount of any retainer or deposit held by such Professional as of the Effective Date; *provided, however*, that any such Professional shall provide prompt written notice to the Agent if such Professional reasonably expects to incur fees or expenses that would exceed the amount set forth in the Wind-Down Budget and that may be payable from such retainer or deposit. Except as otherwise

set forth in the Plan, the remaining balance of any retainer or deposit held by the holder of a Professional Fee Claim shall be distributed to the Agent following the payment of such holder's Allowed Professional Fee Claim as set forth in this Section 2.04, unless such Professional is engaged by the by the Plan Administrator and/or the Post-Effective Date Debtors after the Effective Date as a professional or other advisor and holds a retainer or deposit as of the Effective Date, in which case such person shall distribute the remaining balance of any retainer or deposit held by such person to the Agent at the conclusion of such person's engagement by the Plan Administrator and/or the Post-Effective Date Debtors in accordance with Section 7.02 of this Plan.

### Section 2.05     U.S. Trustee Fees

On or before the Effective Date (or as soon as reasonably practicable after such fees become due), the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all U.S. Trustee Fees.  After the Effective Date, the Plan Administrator shall pay any and all post-Effective Date U.S. Trustee Fees when due and payable until such time as the Bankruptcy Court enters a final decree closing the Cases.  From and after the Effective Date, the Debtors' Estates shall be deemed substantively consolidated solely for the purpose of calculating U.S. Trustee Fees.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

### Section 3.01     Classification in General

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Allowed Claims and Interests (other than the Claims receiving treatment under Article II) are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as set forth herein.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. Notwithstanding anything to the contrary in the Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest is Allowed and has not been paid, released, or otherwise settled before the Effective Date.

### Section 3.02     Voting

The Plan is being proposed as a joint plan of liquidation for all of the Debtors.  The Plan constitutes a separate chapter 11 plan for each Debtor and the classifications set forth in Classes 1 through 8 shall be deemed to apply to each Debtor to the extent applicable.  For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors.

### Section 3.03     Identification of Claims and Interests

The following table designates the Classes of Allowed Claims against, and Allowed Interests in, the Debtors and specifies which of those Classes and Interest are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) deemed to accept or reject the Plan.

| Class | Impairment | Entitled to Vote |
|---|---|---|
| Class 1 – Priority Non-Tax Claims | Unimpaired | No (Deemed to accept) |
| Class 2 – Prepetition Secured Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 3 – Other Secured Claims | Unimpaired | No (Deemed to accept) |
| Class 4 – Prepetition Secured Lender Deficiency Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 5 – GUC Claims | Impaired | Yes (Entitled to vote to accept or reject) |
| Class 6 – Intercompany Claims | Impaired | No (Deemed to reject) |
| Class 7 – 510(b) Claims | Impaired | No (Deemed to reject) |
| Class 8 – Bainbridge Interests | Unimpaired | No (Deemed to accept) |
| Class 9 – Bainbridge Holdings Interests | Impaired | No (Deemed to reject) |

### Section 3.04        Elimination of Vacant Classes

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class. Any Claim or Interest in a Class that is considered vacant under this Plan shall receive no Distribution.

### Section 3.05        Presumed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims in such Class.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS

### Section 4.01        Class 1 – Priority Non-Tax Claims

*Classification*: Class 1 consists of the Priority Non-Tax Claims.

*Allowance*: Only the Claims identified on the Schedule of Allowed Claims as Priority Non-Tax Claims shall constitute Allowed Priority Non-Tax Claims, and such Allowed Priority Non-Tax Claims shall be Allowed only to the extent and in the amounts set forth on the Schedule of Allowed Claims.

*Treatment*: Except to the extent that a holder of an Allowed Claim in Class 1 agrees in writing to a different treatment (in which event such other writing will govern), on the Effective Date, each holder of an Allowed Claim in Class 1 shall receive, on account of, and in full, final, and complete satisfaction, settlement, release, and discharge of and in exchange for, such Claim, Cash equal to the

amount of such Allowed Claims in Class 1, in accordance with section 1129(a)(9) of the Bankruptcy Code.

*Voting*: Claims in Class 1 are Unimpaired. The holders of Claims in Class 1 shall be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, shall not be entitled to vote to accept or reject the Plan.

## Section 4.02     Class 2 – Prepetition Secured Claims

*Classification*: Class 2 consists of the Prepetition Secured Claims.

*Allowance*: The Prepetition Secured Claims shall be (a) deemed Allowed in the amount of (i) $61,900,000.00 of unpaid principal, plus all interest, fees, costs, charges, and expenses due and owing pursuant to the terms of the Prepetition Loan Documents *less* (ii) any amounts distributed on account of the Prepetition Secured Claims pursuant to the Sale Order, and (b) deemed secured by a valid, binding, and perfected security interest in and to the properties and Assets of the Debtors pledged under the Prepetition Loan Documents and as set forth in the Cash Collateral Order.

*Treatment*: The Agent shall receive, on behalf of the holders of the Prepetition Secured Claims:

(a)     on the Effective Date, from the Debtors, all Available Cash, up to an amount necessary to satisfy the Prepetition Secured Claims in full, except for any portion of such Available Cash set forth in the Wind-Down Budget to fund Budgeted Expenses; and

(b)     on the Final Distribution Date, from the Plan Administrator, all Available Cash remaining at such time, up to an amount necessary to satisfy the Prepetition Secured Claims in full.

For the avoidance of doubt, unless and until the Allowed Prepetition Secured Claims are satisfied in full, except with respect to the Plan Distributions and all other Budgeted Expenses, all Available Cash shall be distributed to the holders of Allowed Prepetition Secured Claims. All Assets vesting in the Post-Effective Date Debtors shall be subject to the Liens of the Agent until the Prepetition Secured Claims are indefeasibly paid in full.

*Voting*: Claims in Class 2 are Impaired. The holders of Claims in Class 2 shall be entitled to vote to accept or reject the Plan.

## Section 4.03     Class 3 – Other Secured Claims

*Classification*: Class 3 consists of Other Secured Claims.

*Allowance*: Only the Claims identified on the Schedule of Allowed Claims as Other Secured Claims shall constitute Allowed Other Secured Claims, and such Allowed Other Secured Claims shall be Allowed only to the extent and in the amounts set forth on the Schedule of Allowed Claims.

*Treatment*: On the Effective Date, each holder of an Allowed Other Secured Claim, if any, shall receive, on account of, and in full, final and complete satisfaction, settlement, and release of, and in exchange for such Allowed Other Secured Claim, (i) such treatment in accordance with section 1124 of the Bankruptcy Code as may be determined by the Bankruptcy Court; (ii) payment in full, in

Cash, of such Allowed Other Secured Claim; (iii) satisfaction of any such Allowed Other Secured Claim by delivering the collateral securing any such Claims and paying any interest fees, costs and/or expense required to be paid under section 506(b) of the Bankruptcy Code; or (iv) providing such holder with such treatment in accordance with section 1129(b) of the Bankruptcy Code as may be determined by the Bankruptcy Court.

*Voting*: Claims in Class 3 are Unimpaired. Each holder of an Allowed Other Secured Claim in Class 3, if any, shall be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject the Plan.

**Section 4.04      Class 4 – Prepetition Secured Lender Deficiency Claims**

*Classification*: Class 4 consists of all Prepetition Secured Lender Deficiency Claims.

*Allowance*: The Prepetition Secured Lender Deficiency Claims shall be deemed Allowed in the amount of (i) $61,900,000.00 of unpaid principal, plus all interest, fees, costs, charges, and expenses due and owing pursuant to the terms of the Prepetition Loan Documents, *less* (ii) any amounts distributed on account of the Prepetition Secured Claims pursuant to the Sale Order, *less* (iii) any amounts distributed on account of the Prepetition Secured Claims pursuant to the Plan.

*Treatment*: All Prepetition Secured Lender Deficiency Claims shall be canceled, released, and extinguished as of the Final Distribution Date, and will be of no further force or effect, and holders of Prepetition Secured Lender Deficiency Claims shall not be entitled to receive any Distribution on account of such Prepetition Secured Lender Deficiency Claims.

*Voting*: Claims in Class 4 are Impaired. The holders of Class 4 Prepetition Secured Lender Deficiency Claims shall be entitled to vote to accept or reject the Plan.

**Section 4.05      Class 5 – GUC Claims**

*Classification*: Class 5 consists of all GUC Claims.

*Allowance*: Only the Claims identified on the Schedule of Allowed Claims as GUC Claims shall constitute Allowed GUC Claims, and such Allowed GUC Claims shall be Allowed only to the extent and in the amounts set forth on the Schedule of Allowed Claims; *provided, however*, that Allowed GUC Claims shall also include Rejection Claims that are Allowed by Final Order of the Bankruptcy Court following the Effective Date, in accordance with Article X.

*Treatment*: As soon as practical following the Effective Date, each holder of an Allowed GUC Claim shall receive its Pro Rata share of Cash from the GUC Claims Reserve in full and final satisfaction, settlement and release of, and in exchange for, such Allowed GUC Claim.

*Voting*: Claims in Class 5 are Impaired. The holders of GUC Claims shall be entitled to vote to accept or reject the Plan.

**Section 4.06      Class 6 – Intercompany Claims**

*Classification*: Class 6 consists of all Intercompany Claims.

*Treatment*: On the Effective Date, each Intercompany Claim shall be discharged, canceled, released, and extinguished, and will be of no further force or effect nor entitled to receive any Distribution on account of such Intercompany Claims.

*Voting*: Claims in Class 6 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, accordingly are not entitled to vote to accept or reject the Plan.

### Section 4.07     Class 7 – Section 510(b) Claims

*Classification*: Class 7 consists of all Section 510(b) Claims.

*Treatment*: Class 7 Section 510(b) Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and shall be of no further force or effect, and Holders of Class 7 Section 510(b) Claims shall not receive any Distribution on account of such Section 510(b) Claims.

*Voting*: Claims in Class 7 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, accordingly are not entitled to vote to accept or reject the Plan.

### Section 4.08     Class 8 – Bainbridge Interests

*Classification*: Class 8 consists of all Bainbridge Interests.

*Treatment*: All of the Class 8 Bainbridge Interests outstanding as of the Effective Date shall be Reinstated.

*Voting*: Interests in Class 8 are Unimpaired. Each holder of an Interest in Class 8 shall be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject the Plan.

### Section 4.09     Class 9 – Bainbridge Holdings Interests

*Classification*: Class 9 consists of all Bainbridge Holdings Interests.

*Treatment*: All of the Class 9 Bainbridge Holdings Interests outstanding as of the Effective Date shall be eliminated, extinguished, and cancelled; *provided, however*, that notwithstanding the foregoing, on the Effective Date, one (1) Class 9 Bainbridge Holdings Interest shall be issued to the Plan Administrator to be held solely in its capacity as such solely for purposes of administering the Wind-Down. Pursuant to section 1129(b)(2)(C) of the Bankruptcy Code, holders of Class 9 Bainbridge Holdings Interests shall not be entitled to, nor shall they receive, any Distribution or retain any property or interest in property on account of such Interests.

*Voting*: Interests in Class 9 are Impaired. The holders of Allowed Interests in Class 9 are deemed to have rejected the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

### Section 4.10     PPP Loan

The Debtors used all proceeds of the PPP Loan to pay "forgivable expenses," as that term is defined under the PPP and the CARES Act. As such, it is anticipated that the full amount of the PPP Loan will be forgiven in accordance with the terms of the PPP and the CARES Act. To the extent

any portion of the PPP Loan is not forgiven in accordance with the terms of the PPP and the CARES Act by the Effective Date, such portion of the PPP Loan (if any) shall be treated as a GUC Claim in Class 5 and, if Allowed, shall receive its Pro Rata Share of the GUC Claim Reserve.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THE PLAN

**Section 5.01      Designation of Unimpaired Classes**

Classes 1, 3, and 8 are Unimpaired.

**Section 5.02      Designation of Impaired Classes**

Classes 2, 4, 5, 6, 7, and 9 are Impaired.

**Section 5.03      Classes Entitled to Vote**

Holders of Claims in Classes 2, 4, and 5 are entitled to cast Ballots with respect to the Plan.

**Section 5.04      Classes Not Entitled to Vote**

Classes 1, 3, and 8 are Unimpaired under the Plan.  Therefore, holders of Class 1 Claims, Class 3 Claims, and Class 8 Interests are not entitled to cast Ballots with respect to the Plan, as they are deemed to accept the Plan in accordance with section 1126(f) of the Bankruptcy Code.

Classes 6, 7, and 9 are not entitled to receive or retain any property under the Plan.  Therefore, holders of Class 6 Claims, Class 7 Claims, and Class 9 Interests are deemed to reject the Plan in accordance with section 1126(g) of the Bankruptcy Code.

**Section 5.05      Cram Down – Nonconsensual Confirmation**

If each Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in sections 1126(c) or 1126(d) of the Bankruptcy Code, the Debtors request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code.  In that event, subject to the consent of the Agent or by announcement on the record at the Confirmation Hearing, the Debtors may modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification or any other reason in their discretion.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN AND
## POST EFFECTIVE DATE GOVERNANCE

**Section 6.01      Plan Funding**

The Plan will be funded with the Available Cash.  On the Effective Date, the Debtors or the Plan Administrator, as applicable, shall make Distributions from Available Cash as set forth below:

---

(a)     *First*, the Debtors or the Plan Administrator, as applicable, shall pay to the Agent for application to the Prepetition Secured Claim all Available Cash, less the amount set forth in the Wind-Down Budget;

(b)     *Second*, the Debtors or the Plan Administrator, as applicable, shall fund from Available Cash the Professional Fee Claim Reserve; and

(c)     *Third*, the Debtors or the Plan Administrator, as applicable, shall reserve $101,705 for the satisfaction of Allowed Priority Non-Tax and Priority Tax Claims and Allowed Administrative Expense Claims as set forth in the Wind-Down Budget; and

(d)     *Fourth*, the Debtors or the Plan Administrator, as applicable, shall fund from Available Cash the GUC Claim Reserve.

## Section 6.02     Vesting of Assets in the Post-Effective Date Debtors

On the Effective Date, and except as otherwise set forth herein, the Assets (including, without limitation, any and all of the Debtors' Causes of Action against third parties to the extent not otherwise released under the Plan) shall vest in each respective Post-Effective Date Debtor pursuant to section 1141(b) of the Bankruptcy Code free and clear of all Liens, Claims, and Causes of Action except with respect to the Liens of the Agent.

## Section 6.03     Officers and Directors

On the Effective Date, (a) the positions of the current directors, officers, and managers, or in the case of a governing body created by a partnership agreement, limited liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "**Governors**") of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action); and (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor that has a Governor shall vest in the Plan Administrator, who shall serve as the sole officer and director of each Post-Effective Date Debtor after the Effective Date.

## Section 6.04     Corporate Existence

After the Effective Date, the Plan Administrator shall, subject to the Agent's consent and consistent with applicable non-bankruptcy law and consistent with the implementation of the Plan, take action with respect to each Post-Effective Date Debtor (including the cancellation of all Interests in a Post-Effective Date Debtor) and complete the Wind-Down of such Post-Effective Date Debtor as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Post-Effective Date Debtor or its directors or officers or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate Governmental Unit.

## Section 6.05     Authorization for Transactions

On the Effective Date or as soon as reasonably practicable thereafter, the Plan Administrator may, subject to the consent of the Agent, take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan,

including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; (d) the execution and delivery of appropriate agreements or other documents of restructuring, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; and (e) all other actions that the Plan Administrator determines are necessary or appropriate, including the making of filings or recordings in connection with the Plan, which actions may be set forth in a Plan Supplement Exhibit. The Plan Administrator shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Plan Administrator shall be authorized to certify or attest to any of the foregoing actions. The Debtors are authorized to perform their obligations under the Plan.

## Section 6.06    Employee Benefit Plans

Before the Effective Date, all Employee Benefit Plans shall be terminated in accordance with the applicable provisions of state and federal law.

## Section 6.07    Exemption from Certain Transfer Taxes

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of an Interest or transfer of property, in each case, pursuant to, in contemplation of, or in connection with the Plan will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate or personal property transfer tax, sale or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, fee or charge, and upon entry of the Confirmation Order, the appropriate taxing authority, governmental officials or agents shall forgo the collection of any such tax or governmental assessment, fee or charge and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, or governmental assessment, fee or charge.

## Section 6.08    Preservation of Causes of Action

Pursuant to § 1123(b) of the Bankruptcy Code, all Claims and Causes of Action (including, without limitation, Avoidance Actions) held by the Debtors against third parties that are not otherwise released under the Plan (including under Article XV of the Plan) are hereby preserved under the Plan, notwithstanding the occurrence of the Effective Date. Subject to the Wind-Down Budget, the Plan Administrator shall retain the sole and exclusive authority and all rights to enforce, commence, and pursue, as appropriate, any and all such Causes of Action, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action on behalf of the Post-Effective Date Debtors shall be preserved in their entirety and for all purposes. For the avoidance of doubt, the preservation of such Causes of Action herein includes, without limitation, the Plan Administrator's right to object to any and all Claims in accordance with the Plan.

***No entity may rely on the absence of a specific reference in the Plan, Disclosure Statement, or Bankruptcy Schedules to any Cause of Action against them as any indication that the Debtors, Post-Effective Date Debtors, or Plan Administrator will not pursue any and all available Causes of Action against them***. The Debtors and Post-Effective Date Debtors expressly reserve all rights to prosecute any and all Causes of Action that are not otherwise released under the Plan (including under Article XV of the Plan), and, subject to the Wind-Down Budget, the Plan Administrator shall have the sole and exclusive authority to pursue such Causes of Action on behalf of the Post-Effective Date Debtors. The Plan Administrator shall retain and may exclusively enforce any and all such Causes of Action. Subject to the Wind-Down Budget, the Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing, without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

**Section 6.09      Plan Administrator Closing of the Chapter 11 Cases**

When (a) the Bankruptcy Court has adjudicated all applications by Professionals for final allowances of compensation for services and reimbursement of expenses and the issuance of a Final Order for each application and the payment of all amounts payable thereunder, (b) the Plan Administrator has reconciled all Claims, if necessary, and (c) all appropriate Distributions to holders of Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, U.S. Trustee Fees, and Allowed Claims in Classes 1, 2, 3, and 5 have been made pursuant to the Plan (other than Distributions that are to be made after the closing of the Cases to the Agent on behalf of holders of Allowed Class 2 Prepetition Secured Claims), the Plan Administrator shall, subject to the consent of the Agent, seek authority from the Bankruptcy Court to close the Debtors' Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules, which closing shall occur prior to the Final Distribution Date. Notwithstanding the foregoing, the Plan Administrator shall seek authority from the Bankruptcy Court to close all but one of the Debtors' Cases immediately following the occurrence of the Effective Date. Following the closing of the Cases, the Plan Administrator shall liquidate any remaining Assets and distribute the proceeds of such Assets to the Agent on behalf of holders of Class 2 Prepetition Secured Claims pursuant to Section 4.02 of the Plan.

## ARTICLE VII
## PLAN ADMINISTRATOR

**Section 7.01      The Plan Administrator**

Subject to the Bankruptcy Court's approval and appointment of the selection of the Plan Administrator at the Confirmation Hearing, a Person to be designated by the Agent and disclosed in the Plan Supplement shall initially serve as the Plan Administrator, and such initial Plan Administrator shall only be removable for cause. Any subsequent Plan Administrator shall be appointed by the Agent. The Plan Administrator shall be required to perform his or her duties as set forth in the Plan and the Plan Administrator Agreement.

**Section 7.02      Compensation of the Plan Administrator**

The Plan Administrator's compensation, on a post-Effective Date basis, shall be disclosed in the Plan Supplement. The payment of the reasonable fees of the Plan Administrator shall be subject

to, and paid in accordance with, the Wind-Down Budget and made in accordance with the provisions of the Plan. Payments of the reasonable fees and expenses of professionals or other advisors engaged by the Plan Administrator or the Post-Effective Date Debtors shall be subject to (a) the amount set forth in the Wind-Down Budget for such persons *plus* (b) solely to the extent such person is a "Professional" and holds a retainer or deposit as of the Effective Date, the amount of such retainer or deposit; *provided however*, that any such person shall provide prompt written notice to the Agent if such person reasonably expects to incur fees or expenses that would exceed the amount set forth in the Wind-Down Budget and that may be payable from such retainer or deposit. The remaining balance of any retainer or deposit held by such person at the conclusion of such person's engagement by the Plan Administrator and/or the Post-Effective Date Debtors shall be distributed to the Agent.

### Section 7.03       Powers and Duties of the Plan Administrator

Upon the Effective Date, the Plan Administrator shall have the authority and right on behalf of each Post-Effective Date Debtor, without the need for Bankruptcy Court approval (unless otherwise set forth herein), to carry out and implement all provisions of the Plan, including to:

(a)       make Distributions to holders of Allowed Claims in accordance with the Plan;

(b)       subject to the Wind-Down Budget, exercise its reasonable business judgment to direct and control the Wind-Down under the Plan and in accordance with applicable law;

(c)       liquidate the remaining Assets;

(d)       prepare, File, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator as described herein;

(e)       maintain the books and records and accounts of the Post-Effective Date Debtors (in good faith consultation with the Agent);

(f)       administer each Debtor's and Post-Effective Date Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws, and (iii) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including any action, suit, proceeding, or audit;

(g)       prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or by applicable law;

(h)       subject to the consent of the Agent, administer any obligations of the Debtors under the Asset Purchase Agreement, including any matters regarding the administration of any settlement statement, purchase price adjustment, purchase price allocation, or similar such matter;

(i)       consult with and update the Agent when reasonably requested, including with respect to Claims and the Wind-Down, and other actions relating to implementation of the

Plan and provide an accounting to the Agent of all post-Effective Date receipts and disbursements on a monthly basis or such other frequency as agreed to between the Plan Administrator and Agent;

(j)     pay U.S. Trustee Fees in accordance with the Plan;

(k)     close the Chapter 11 Cases in accordance with the Plan; and

(l)     perform any other duties and functions that are consistent with the implementation of the Plan.

## Section 7.04     Rights and Privileges of the Plan Administrator

All of the Debtors' rights and privileges—including, without limitation, the attorney-client privilege and any other privileges between the Debtors and their Professionals—shall be preserved and shall remain in full force and effect following the Effective Date, and the Plan Administrator shall succeed to, possess, and be entitled to assert all such rights and privileges on behalf of the Post-Effective Date Debtors.

## Section 7.05     Access and Preservation of Records

The Plan Administrator shall be granted access to, among other things, the offices, books, and records relating to the Debtors or any of their businesses or operations that are in possession of the Purchaser and the Purchaser shall preserve records, all to the extent and on the terms of the Asset Purchase Agreement.

## Section 7.06     Termination

The duties, responsibilities, and powers of the Plan Administrator shall terminate after all Assets have been fully resolved, abandoned, or liquidated, the Assets have been distributed in accordance with the Plan, and the Cases have been closed.

## Section 7.07     Maintenance of Books and Records

The Debtors or Plan Administrator, as applicable, shall retain and store such books, records, and files provided by the Debtors for a period of three (3) years after the Effective Date or longer if required under applicable law.  The right of the Post-Effective Date Debtors or the Plan Administrator to seek authorization from the Bankruptcy Court for the destruction of books and records prior to the expiration of any statutory period requiring that such records be maintained is preserved.

# ARTICLE VIII
# PROVISIONS GOVERNING DISTRIBUTIONS

## Section 8.01     Distribution Procedures

Any payments or Distributions to be made by the Plan Administrator to holders of Claims as required by the Plan shall be made only to the holders of Allowed Claims.  No payments or other Distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed.  No Distribution will be made on account of a Claim or

Interest to the extent that such Claim or Interest has been Disallowed, released, extinguished, cancelled, withdrawn, waived, settled, or otherwise satisfied or paid.

## Section 8.02    Timing and Delivery of Distributions

The terms of the Plan shall in all respects govern Distributions from the Debtors and the Post-Effective Date Debtors. Distributions to Creditors under the Plan shall be made at the address set forth on Creditors' respective Proofs of Claim. If a Creditor has not Filed a Proof of Claim, Distributions shall be made to such Creditor's address reflected in the Bankruptcy Schedules or as agreed upon between the Debtors and such Creditor. If any Distribution is returned as undeliverable, no further payment shall be made on account of such Allowed Claim unless and until the Debtors are notified in writing of such Creditor's proper current address, at which time all missed payments shall be made to such Creditor; *provided, however*, that if the Debtors are not notified in writing of such Creditor's proper current address within sixty (60) days after the date of issuance of such Distribution, such Distribution shall constitute Unclaimed Property.

## Section 8.03    Method of Cash Distributions

Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

## Section 8.04    Sources of Cash for Distributions

Except as otherwise specifically provided herein or in the Confirmation Order, all Cash required for the payments to be made pursuant to the Plan shall be obtained from Available Cash.

## Section 8.05    Failure to Negotiate Checks

Checks issued in respect of Distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. Thereafter, all such amounts shall be deemed to be forfeited "**Unclaimed Property**," notwithstanding any federal or state escheat laws to the contrary and all Claims in respect of void checks and the underlying Distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Plan Administrator, the Post-Effective Date Debtors, or any other Person. On or before the Final Distribution Date, all Unclaimed Property shall be distributed to the Agent on behalf of the holders of Class 2 Prepetition Secured Claims pursuant to Section 4.02 of the Plan.

## Section 8.06    No Post-Petition Interest

Except as otherwise specifically provided in the Plan or Confirmation Order, and other than with respect to post-petition interest payments made to the Agent under the Cash Collateral Order or otherwise, post-petition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after Petition Date.

## Section 8.07    Fractional Dollars

Notwithstanding any other provision of the Plan, Cash Distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with

half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to the Plan. No Cash payment of less than twenty ($20.00) dollars shall be made to the holder of any Claim on account of its Allowed Claim.

## Section 8.08    Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Debtors, the Post-Effective Date Debtors, and the Plan Administrator, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

## Section 8.09    Setoffs

Except for any Claim that is Allowed in an amount set forth in the Plan, the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, may, subject to the consent of the Agent, but shall not be required to, set off against any Claims and the payments or Distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and Claims of every type and nature whatsoever that the Estates or the Debtors may have against the holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtors of any such Claims the Debtors may have against such holder of any Claim, and all such Claims shall be preserved for and retained by the Post-Effective Date Debtors.

## Section 8.10    Distribution Record Date

The Plan Administrator shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

## Section 8.11    Date of Distributions on Account of Allowed Claims

Except as otherwise specifically provided herein, any Distributions and delivery to be made under the Plan shall be made on the Effective Date or as soon as practicable thereafter. Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

## Section 8.12    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been resolved, settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. For the avoidance of doubt, no Disputed Claim shall become an Allowed Claim except by Final Order of the Bankruptcy Court or by agreement of the Debtors.

# ARTICLE IX
## DISTRIBUTION RESERVE ACCOUNTS

### Section 9.01    Establishment of Reserves

On the Effective Date, the Debtors or the Plan Administrator, as applicable, shall establish and fund the Professional Fee Reserve Account and the GUC Claim Reserve (which, notwithstanding anything to the contrary contained in the Plan, may be effected by either establishing a segregated account or establishing book entry accounts, as determined by the Plan Administrator with the consent of the Agent). The Distribution Reserve Accounts shall be funded from the Available Cash and shall be subject to the Liens of the Agent.

### Section 9.02    Plan Distributions

On or as soon as reasonably practicable after the Effective Date, the Debtors or the Plan Administrator, as applicable, shall make the Plan Distributions. After the payment of all Plan Distributions and all other Budgeted Expenses, any remaining Cash of the Post-Effective Date Debtors shall be paid to the Agent as provided in the Plan for the benefit of holders of Allowed Prepetition Secured Claims.

### Section 9.03    Professional Fee Claims Reserve

On the Effective Date, the Debtors or the Plan Administrator, as applicable, shall fund the Professional Fee Claims Reserve using an amount of Available Cash equal to the Budgeted Expense line item for Professional Fee Claims in the Wind-Down Budget. Except as otherwise set forth in the Plan, after the payment of Allowed Professional Fee Claims up to the amount set forth in Section 2.04 of the Plan, any remaining funds in the Professional Fee Claims Reserve (if any) and the balance of any retainer or deposit held by a Professional shall be paid to the Agent for the benefit of holders of Allowed Prepetition Secured Claims.

### Section 9.04    GUC Claim Reserve

On the Effective Date, the Debtors or the Plan Administrator, as applicable, shall fund the GUC Claim Reserve using an amount of Available Cash equal to the GUC Claim Reserve Amount to be used for the purposes set forth under the Plan. The Plan Administrator shall have no obligations to make any Distributions from the GUC Claims Reserve until all GUC Claims have been Allowed or Disallowed.

# ARTICLE X
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND
## OTHER AGREEMENTS

### Section 10.01    Assumption/Rejection

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease that (i) was not previously assumed, assumed and assigned, or rejected pursuant to an Order of the Bankruptcy Court or the Supplemental Assumption-Rejection Notice, (ii) is not pending assumption, assumption and assignment, or rejection pursuant to the Supplemental Assumption-Rejection Notice; or that (iii) is not an Assigned Contract, shall be deemed rejected as of

the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Except as otherwise previously approved by an Order of the Bankruptcy Court, entry of the Confirmation Order by the Bankruptcy Court shall constitute an order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, approving the rejections of such Executory Contracts and Unexpired Leases as set forth in the preceding sentence. Unless otherwise indicated herein, such rejections of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

## Section 10.02    Insurance Policies

All insurance policies to which the Debtors have any rights as of the date of the Confirmation Order shall be deemed and treated as Executory Contracts and assumed by the Debtors unless other treatment of such policies is proposed in the Plan Supplement.

## Section 10.03    Claims Based on Rejected Executory Contracts and Unexpired Leases

All Rejection Claims resulting from the Debtors' rejection of an Executory Contract or Unexpired Lease pursuant Section 10.01 of the Plan and the Confirmation Order ("**Confirmation Rejection Claims**") shall be Filed no later than twenty one (21) days after the Effective Date (the "**Confirmation Rejection Claims Bar Date**"). Any Confirmation Rejection Claim that is not properly Filed on or before the Confirmation Rejection Claims Bar Date shall be (a) Disallowed and forever barred; (b) unenforceable against the Debtors, the Estates, or the Post-Effective Date Debtors (without any further action by any Person or further Order or approval from the Bankruptcy Court); and (c) deemed fully satisfied, released, and discharged, notwithstanding anything in the Bankruptcy Schedules or a Proof of Claim to the contrary.

All Rejection Claims resulting from the Debtors' rejection of Executory Contracts or Unexpired Leases pursuant to the Supplemental Assumption-Rejection Notice ("**Supplement Rejection Claims**") must be Filed by no later than July 6, 2021 (the "**Supplement Rejection Claims Bar Date**"), in accordance with the terms of the Supplemental Assumption-Rejection Notice and *Amended Certificate of Service Concerning the Debtors' Supplemental Notice of Assumption, Assumption and Assignment, and Rejection of Executory Contracts and Unexpired Leases* [Docket No. 333]. Any Supplement Rejection Claim that is not properly Filed on or before the Supplement Rejection Claims Bar Date shall be (a) Disallowed and forever barred; (b) unenforceable against the Debtors, the Estates, or the Post-Effective Date Debtors (without any further action by any Person or further Order or approval from the Bankruptcy Court); and (c) deemed fully satisfied, released, and discharged, notwithstanding anything in the Bankruptcy Schedules or a Proof of Claim to the contrary.

All Allowed Rejection Claims, including Allowed Confirmation Rejection Claims and Allowed Supplement Rejection Claims, shall be classified as Class 5 GUC Claims and shall be treated in accordance with the particular provisions of the Plan applicable to such Claims.

# ARTICLE XI
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

**Section 11.01     Objections to Claims**

All objections to Claims shall be Filed by no later than the Claim Objection Deadline (except with respect to objections to Rejection Claims, which shall be Filed by no later than fourteen (14) days after the applicable Rejection Claims Bar Date).  The Debtors or Plan Administrator, as applicable, shall have the exclusive authority to File, settle, compromise, or litigate to Final Order any objections to Claims.

**Section 11.02     Expunging of Disallowed Claims**

Except with respect to the Prepetition Secured Claims and except as otherwise provided by a Bankruptcy Court Order, all Claims that are marked or otherwise Scheduled as contingent, unliquidated, or disputed, or that are not Scheduled at all, and for which no Proof of Claim or request for payment has been timely Filed by the applicable Claims Bar Date, shall be deemed Disallowed Claims and such Claims shall be expunged as of the applicable Claims Bar Date without the necessity of Filing a Claim objection and without further notice to, or action, order, or approval of the Bankruptcy Court.

Except as otherwise provided by a Bankruptcy Court Order, all Claims that are (a) temporarily allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court, or that are (b) attributable to punitive damages or penalties, or that are (c) Disallowed or not Allowed for any other reason, shall be deemed Disallowed Claims and such Claims shall be expunged as of the Effective Date without the necessity of filing a Claim objection and without further notice to, or action, order or approval of the Bankruptcy Court.

# ARTICLE XII
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

**Section 12.01     Occurrence of the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied (or waived by the Agent) in accordance with the terms below:

(a)     The Confirmation Order shall have been entered in form and substance acceptable to the Debtors and the Agent, and such Order shall have become a Final Order;

(b)     The Plan and the Plan Supplement shall have been approved by the Bankruptcy Court and shall be in form and substance acceptable to the Debtors and the Agent;

(c)     The Debtors shall have paid to the Agent on or prior to May 21, 2021 certain proceeds due and owing to Agent pursuant to the Sale Order;

(d)     The "Completion Date" as defined in and pursuant to that certain *Transition Services Agreement* dated April 30, 2021 by and between Bainbridge Uinta, LLC and Vaquero

Uinta, LLC approved by the Bankruptcy Court by order entered on April 29, 2021 [Docket No. 277] shall have occurred;

(e)    On the Effective Date, the aggregate amount of all asserted Priority Tax Claims, Priority Non-Tax Claims, and Administrative Expense Claims (excluding Professional Fee Claims), whether Allowed or not Allowed as of the Effective Date, shall not exceed $101,705.00;

(f)    All documents and agreements necessary to implement the Plan, which documents shall be in form and substance acceptable to the Debtors and the Agent shall have (i) been tendered for delivery and (ii) been effected or executed by all Persons party thereto, and all conditions precedent to the effectiveness of such documents and agreements (other than any conditions related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

(g)    There shall not be in effect any (i) order entered by any court of any competent jurisdiction; (ii) any order, opinion, ruling or other decision entered by any administrative or governmental entity or (iii) applicable law, prohibiting or making illegal the consummation of any material transactions contemplated by the Plan.

## Section 12.02    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## Section 12.03    Waiver of Conditions

Each of the conditions set forth above other than the condition set forth in Section 12.01(c) may be waived in whole or in part by the Debtors with the consent of the Agent.

## Section 12.04    Revocation, Withdrawal, or Non-Consummation

Subject to the terms of the Cash Collateral Order and the Framework Agreement, the Debtors reserve the right to revoke or withdraw the Plan (including, without limitation, any portion of the Plan related to one or more of the two separate Debtors) at any time before the Confirmation Date and to file subsequent plans if the Debtors see fit. For each revoked or withdrawn portion of the Plan, (a) the portion of the Plan that was revoked or withdrawn shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan related to the withdrawn or revoked portion (including the fixing, allowance or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE XIII
## AMENDMENTS AND MODIFICATIONS

Subject to the consent of the Agent, the Debtors may alter, amend, or modify the Plan, the Plan Documents, or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time before the Confirmation Date. After the Confirmation Date and before "substantial consummation" of the Plan, as defined in Bankruptcy Code § 1101(2), the Debtors may, subject to the consent of the Agent, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; *provided, however,* that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE XIV
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to: (a) Allow, Disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests; (b) hear and determine all applications for compensation and reimbursement of expenses of Professionals; (c) hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease; (d) hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Cases, including contested matters relating to any Cause of Action, Assets or property of the Estates, or any rights, interests, or obligations of the Debtors or Post-Effective Date Debtors; (e) enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Sale Order and/or the Confirmation Order; (f) hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan; (g) consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order; (h) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of this Plan, and/or the Confirmation Order; (i) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated; (j) hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement and/or the Confirmation Order or any other contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement and/or the Confirmation Order; (k) hear and determine any disputes regarding any purported liens, claims, or encumbrances against any Debtor or Reorganized Debtor's assets, and any turnover or other similar proceeding related to such assets; (l) enforce all orders, judgments, injunctions, releases, exculpations,

indemnifications and rulings entered in connection with the Cases or pursuant to this Plan; (m) recover all assets of the Debtors and property of the Estates, wherever located; (n) hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146; (o) hear and determine all disputes involving the existence, nature, or scope of any releases granted in the Plan; (p) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; (q) enter an order or final decree concluding or closing the Cases; and (r) enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XV
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### Section 15.01    Compromise and Settlements

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions, releases, and other benefits provided pursuant to the Plan, which Distributions, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, and the Distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and holders of Claims and Interests and are fair, equitable, and reasonable.

### Section 15.02    Discharge of Claims and Termination of Interests

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and the Plan Supplement, or in a contract, instrument, or other agreement or document executed pursuant to the Plan and the Plan Supplement, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Interests of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has voted to accept the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

## Section 15.03    Term of Injunctions or Stays

Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

## Section 15.04    Releases by the Debtors

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Estates, the Post-Effective Date Debtors, and each of their respective successors and assigns, from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of the Debtors or the Estates, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' in- or out-of-court sale efforts or the Sale, the Prepetition Loan Documents, any Avoidance Actions, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the restructuring of any Claim or Interest before or during the Cases, the Cases, the filing of the Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the Distribution of property pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Section 15.04 do not release any post-Effective Date obligations of any party or Entity under the Plan or any obligations of Purchaser under the Asset Purchase Agreement or Sale Order; and (ii) nothing in this Section 15.04 shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors, the Estates, the Post-Effective Date Debtors, and each of their respective successors and assigns set forth in this Section 15.04, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan; and (7) a bar to any of the Debtors, the Estates, the Post-Effective Date Debtors, and each of their respective successors and assigns asserting any Claim or Cause of Action released pursuant to such releases.

**Section 15.05     Releases by the Releasing Parties**

As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtors, the Estates, and each Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation of the Debtors after the Effective Date and the acts or omissions of their current directors and officers), the Debtors' in- or out-of-court sale efforts or the Sale, the Prepetition Loan Documents, any Avoidance Actions, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the restructuring of any Claim or Interest before or during the Cases, the Cases, the filing of the Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the Distribution of property pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing; *provided, however,* that except as expressly provided under the Plan, the foregoing releases shall not release continuing obligations arising under agreements among the Releasing Parties and the Released Parties other than the Debtors and the Debtor Related Parties.  Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth in this Section 15.05 do not release any post-Effective Date obligations of any party or Entity under the Plan (including any obligations of the Debtors, the Post-Effective Date Debtors, and/or the Plan Administrator to make Distributions under the Plan), or any obligations of Purchaser under the Asset Purchase Agreement or Sale Order; and (ii) nothing in this Section 15.05 shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, fraud, or willful misconduct.

In order to avoid being deemed a Releasing Party and thereby granting the releases set forth in Section 15.05 of the Plan, the holder of a Claim submitting a Ballot for acceptance or rejection of the Plan must indicate its intent to opt out of the aforementioned releases by checking the "OPT OUT" box on its Ballot *and* voting to reject the Plan.  A holder of a Claim or Interest will be deemed a Releasing Party if it (1) votes to accept the Plan; (2) is Unimpaired under the Plan but does not check the applicable box on the Notice of Non-Voting Status to opt out of granting the releases herein; (3) is solicited to vote to accept or reject the Plan but does not vote either to accept or to reject the Plan and does not check the applicable box on the Ballot to opt out of granting the releases herein; (4) votes to reject the Plan but does not check the applicable box on the Ballot to opt out of granting the releases herein; or (5) is deemed to reject the Plan but does not check the applicable box on the Notice of Non-Voting Status to opt out of granting the releases herein.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Releasing Parties set forth in this Section 15.05, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties;

(2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to such releases.

## Section 15.06     Exculpation

The Exculpated Parties shall not have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action arising in connection with or out of the filing of these Cases, the administration of the Cases, the assumption and rejection of Executory Contracts and Unexpired Leases, the planning of the Cases, the formulation, negotiation, or implementation of the Plan, the good faith solicitation of acceptances of the Plan in accordance with section 1125(e) of the Bankruptcy Code, pursuit of Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the Acquired Assets sold pursuant to the Asset Purchase Agreement or to be distributed under the Plan, except for (a) intentional fraud, criminal conduct, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court or other court of competent jurisdiction, and (b) obligations under the Plan, the Plan Supplement, and the Confirmation Order. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or Cause of Action against any Exculpated Party as to which such Exculpated Party has been exculpated from liability pursuant to the preceding sentence.

## Section 15.07     Permanent Injunction

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to

the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.

**Section 15.08      Setoffs**

Except as otherwise expressly provided for in the Plan and/or the Confirmation Order pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim or Interest, the Debtors, the Post-Effective Date Debtors or the Plan Administrator, as applicable, may set off against any Allowed Claim or Interest and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such Distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtors or Post-Effective Date Debtors, as applicable, may hold against the holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or before the Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Debtors, the Post-Effective Date Debtors, or the Plan Administrator of any such Claims, rights, and Causes of Action that the Debtors or the Post-Effective Date Debtors may possess against such holder.  In no event shall any holder of Claims or Interests be entitled to setoff or offset any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtors or their successors or assigns unless such holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff within twenty one (21) days of the Effective Date and provided notice thereof in writing to the Plan Administrator and the Post-Effective Date Debtors, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff or offset pursuant to section 553 of the Bankruptcy Code or otherwise.  **Failure by a holder of Claims or Interests to assert the right to setoff or recoupment within this period shall result in a permanent waiver of the right to setoff by the holder and the Claim will no longer be enforceable against the Debtors or the Post-Effective Date Debtors or their successors or assigns.**

**Section 15.09      Recoupment**

Except as provided in the Plan and/or the Confirmation Order, any holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors unless such holder actually has performed such recoupment and provided notice thereof in writing to the Plan Administrator and the Post-Effective Date Debtors within twenty one (21) days of the Effective Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.  **Failure by a holder of Claims or Interests to assert the right to recoupment within this period shall result in a permanent waiver of the right to setoff or recoupment by the holder and the Claim will no longer be enforceable against the Debtors or their successors or assigns.**

**Section 15.10      Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, and expressly excluding the Liens of the Agent as provided herein, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the

Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

**Section 15.11     Good Faith**

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptance or rejections of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

# ARTICLE XVI
## MISCELLANEOUS PROVISIONS

**Section 16.01     Severability of Plan Provisions**

If, before the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court (at the request of the Debtors, with the consent of the Agent) shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 16.02     Successors and Assigns**

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan, including any holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**Section 16.03     Binding Effect**

In accordance with section 1141 of the Bankruptcy Code, the Plan shall be binding upon and inure to the benefit of the Debtors, the Post-Effective Date Debtors, the Debtor Related Persons, all present and former holders of Claims against and Interests in the Debtors (whether or not the Claim or Interest of such holder is Impaired and whether or not such holder has Filed a Proof of Claim or accepted the Plan), any Person or Entity acquiring property under the Plan, and each of the foregoing parties' respective successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in the Cases.

**Section 16.04     Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any

agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors.

## Section 16.05    Entire Agreement

The Plan and the Plan Documents set forth the entire agreement and understanding among the parties-in-interests relating to the subject matter hereof and supersede all prior discussions and documents.

# ARTICLE XVII
# CONFIRMATION REQUEST

The Debtors request Confirmation of the Plan under section 1129 of the Bankruptcy Code. If any Impaired Class does not accept the Plan pursuant to section 1126 of the Bankruptcy Code, the Debtors request Confirmation pursuant to section 1129(b) of the Bankruptcy Code.  In that event, the Debtors, subject to the consent of the Agent or by announcement on the record at the Confirmation Hearing, may modify the Plan to the extent (if any) that Confirmation of the Plan under section 1129(b) of the Bankruptcy Code requires modification.

DATED:  June 24, 2021

**BAINBRIDGE UINTA HOLDINGS, LLC**

By:_____/s/ Paul Ching_____
Name:  Paul Ching
Title:    Chief Executive Officer


**BAINBRIDGE UINTA, LLC**

By:_____/s/ Paul Ching_____
Name:  Paul Ching
Title:    Chief Executive Officer

# Exhibit B

**Form of Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (this "**Agreement**") is made on this [●] day of June, 2021, by and between (i) Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC (collectively, the "**Debtors**") and (ii) Ching Energy, LLC, solely in its capacity as Plan Administrator (the "**Plan Administrator**"), and is executed in connection with the *Debtor's First Amended Joint Chapter 11 Plan of Liquidation* dated June 24, 2021 [Docket No. 345] (as may be further amended, modified, or supplemented, and including all exhibits thereto, the Plan Supplement, and the Plan Documents, the "**Plan**").[1]

## RECITALS

**WHEREAS**, on September 1, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "**Bankruptcy Court**" or "**Court**"), thereby commencing Case Nos. 20-42974 and 20-42795 (collectively, the "**Chapter 11 Cases**");

**WHEREAS**, on [●], the Bankruptcy Court entered an order confirming the Plan [Docket No. [●]] (the "**Confirmation Order**");

**WHEREAS**, on the Effective Date of the Plan, and except as otherwise set forth in the Plan, pursuant to and in accordance with the terms of the Plan, the Debtors' Assets shall vest in the Post-Effective Date Debtors pursuant to section 1141(b) of the Bankruptcy Code free and clear of all Liens, Claims, and Causes of Action except with respect to the Liens of the Agent;

**WHEREAS**, the Plan's Effective Date occurred on [●], 2021; and

**WHEREAS**, under the terms of the Plan and the Confirmation Order, as of the Effective Date, among other things: (a) the Bainbridge Interests shall be Reinstated without any further corporate action; (b) Bainbridge Holdings Interests shall be eliminated, extinguished, and cancelled, save and except for one Bainbridge Holding Interest issued to the Plan Administrator solely in his capacity as such, without any further corporate action, for purposes of administering the Wind-Down under the Plan; (c) the positions of the current directors, officers, and managers, or in the case of a governing body created by a partnership agreement, limited liability company agreement, or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "**Governors**") of each Debtor shall be eliminated, and each Governor shall be terminated for all purposes without the necessity of any further action; and (d) to the fullest extent permitted by applicable law, all of the rights, powers, and duties of the Debtors' Governors shall vest in the Plan Administrator, who shall serve as the sole officer and director of each Post-Effective Date Debtor after the Effective Date.

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings provided in the Plan. Unless otherwise noted all docket references are to Case No. 20-42794 in the Bankruptcy Court (defined herein).

consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereto (collectively, the "**Parties**") hereby agree as follows:

# ARTICLE I
## THE PLAN ADMINISTRATOR

**1.01     Appointment**. The Plan Administrator has been selected by the Debtors and Agent, pursuant to Section 7.01 of the Plan, and has been approved by the Bankruptcy Court and appointed as of the Effective Date.   As more fully described in Sections 1.02 and 1.03 hereof, the Plan Administrator shall have all the rights, powers, and duties set forth herein and in the Plan for effectuating the Plan.   The Plan Administrator's appointment shall continue until the earlier of: (a) the Plan Administrator's resignation in accordance herewith; (b) the removal of the Plan Administrator for cause in accordance with the terms of the Plan; or (c) the dissolution of the Post-Effective Date Debtors in accordance with the provisions of the Plan (including Section 7.05 of the Plan) and Article VII hereof.

**1.02     Representative Capacity**. The Plan Administrator shall act for the Post-Effective Date Debtors in the same fiduciary capacity as the Debtors' Governors.   On the Effective Date, the positions, authority, power, and incumbency of the Debtors' Governors shall be terminated and eliminated and the Plan Administrator shall be appointed as the sole Governor of the Post-Effective Date Debtors and shall succeed to the rights, powers, and duties of the Debtors' Governors to the fullest extent permitted by law.   From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtors.   For the avoidance of doubt, the Plan Administrator shall act not in its individual capacity, but solely as a representative of, and through, the Post-Effective Date Debtors.   Any prior membership interests in Bainbridge Holdings, which have been canceled, terminated and eliminated under the Plan shall be of no force and effect for any purpose or in any manner whatsoever regarding the governance, decision making, rights and entitlement of the Post-Effective Date Debtors, all of which shall, subject to the Plan, be the province and authority of the Plan Administrator.

**1.03     General Powers**.[2]   The Plan Administrator's powers and authority shall include, without further Bankruptcy Court order, any and all powers and authority to implement the Plan and to administer and distribute the Assets and to wind down the businesses and affairs of the Post-Effective Date Debtors in accordance with the Plan, the Confirmation Order, this Agreement, and any other agreement entered into pursuant to or in connection with the Plan.   Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator may control and exercise authority over the Assets and the acquisition, management, Distribution and disposition thereof; *provided, however*, that nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking any action that it is obligated to take (or electing not to take any action) in the performance of any duty that the Plan Administrator owes to the Post-Effective Date Debtors or any other Person.   Without limiting the foregoing, but subject to the Plan, the Confirmation Order, and other provisions of this Agreement, the Plan Administrator shall be

---

[2] Section 1.03(a) – (s), entitled "General Powers," provides express authorization of the Plan Administrator.  The Plan Administrator, however, is expressly entitled <u>not</u> to do any individual act or acts if the Plan Administrator, in its sole discretion, determines such acts (or omission from acts) is not in the best interest of Creditors, does not comply or fulfill the requirements of the Plan or Confirmation Order or is otherwise not prudent or appropriate under the circumstances.

expressly authorized, without further Bankruptcy Court order, to carry out and implement all provisions of the Plan, including to:

(a) Exercise all power and authority, including, without limitation, all power and authority outlined in this Agreement and set forth in the Plan (including Article VII), to commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken with respect to the Assets, by any officer, manager, director, shareholder, member or other party acting in the name of the Debtors or their estates with like effect as if duly authorized, exercised, and taken by action of such officers, managers, directors, shareholders, members or other party;

(b) Open and maintain bank accounts on behalf of or in the name of the Post-Effective Date Debtors, calculate and make Distributions, and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Post-Effective Date Debtors;

(c) Manage, invest, supervise, and protect the Assets, subject to the limitations provided herein;

(d) Subject to the applicable provisions of the Plan, collect and liquidate all of the Assets;

(e) Subject to the applicable provisions of the Plan, establish and make Distributions;

(f) Review and, where appropriate, object to Claims and Interests and supervise and administer the resolution, settlement and payment of all Claims and Interests and the distributions to the Creditors of the Post-Effective Date Debtors, in accordance with this Agreement, the Plan, and the Confirmation Order;

(g) Subject to the Agent's consent, prosecute, compromise, settle and determine not to prosecute, if appropriate, all Causes of Action (other than those released pursuant to the Plan);

(h) Set off claims, rights, and Causes of Action of any nature that the Debtor's estate may hold against any Creditor;

(i) Seek a determination of tax liability, including under Bankruptcy Code § 505; file, if necessary, any and all tax and information returns required with respect to the Debtors and the Post-Effective Date Debtors; make tax elections for and on behalf of the Debtors and the Post-Effective Date Debtors; pay taxes, if any, payable for and on behalf of the Debtors and the Post-Effective Date Debtors and cause K-1's or other reports to be issued to any Interest holder;

(j)     Pay all lawful expenses, debts, charges, taxes, and liabilities of the Debtors, as required by the Plan, and the Post-Effective Date Debtors;

(k)     Calculate and implement Distributions to Creditors of the Debtors, as provided for, or contemplated by, the Plan, the Confirmation Order, and this Agreement;

(l)     Withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Plan Administrator has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States, any foreign country, or of any state, local, or political subdivision of either; however the Plan Administrator shall have no obligation to withhold any amounts payable to any Person;

(m)     Enter into any agreement or execute any document required by, or reasonably necessary or advisable to perform, its duties consistent with the Plan, the Confirmation Order, or this Agreement, and perform all obligations thereunder, including, without limitation:

     (i)     Subject to the Wind-Down Budget, purchase and carry all insurance policies of the Post-Effective Date Debtors and pay all insurance premiums and costs it deems reasonably necessary or advisable associated therewith; and

     (ii)     Retain and compensate, without further order of the Bankruptcy Court, but subject to the Wind-Down Budget, the services of employees, professionals, independent contractors and consultants to advise and assist in the administration, prosecution and distribution of the Assets;

(n)     Implement, enforce, or discharge all of the terms, conditions and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Agreement;

(o)     Subject to the provisions of the Plan, enter into agreements with any entity or with holders of Claims or Interests related to Causes of Action;

(p)     Establish any reserves necessary or considered prudent by the Plan Administrator regarding Distributions, expenses or for other purposes;

(q)     Take all actions necessary to dissolve the Debtors state and administer the Wind-Down in accordance with the Plan and Confirmation Order;

(r)     Undertake all administrative functions of the Chapter 11 Cases, including the ultimate dissolution of the Debtors under applicable state law and the closing of the Chapter 11 Cases; and

(s)    Take all other actions consistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable to administer the Plan.

**1.04    Compensation of the Plan Administrator and its Agents and Professionals**. Notwithstanding any contrary provision provided herein, but subject to the provisions of the Plan and the Wind-Down Budget, the Plan Administrator shall be entitled to reasonable compensation and reimbursement of expenses as summarized in **Annex 1** hereto.  Upon resignation, removal, termination, or replacement of the Plan Administrator, the Post-Effective Date Debtors shall enter into an agreement acceptable to the Agent with the successor Plan Administrator appointed by the Agent that will govern such Plan Administrator's compensation and reimbursement under this Section 1.04.

**1.05    Funding Expenses of the Post-Effective Date Debtors; Application of Cash**. The Plan Administrator (in its individual capacity) will not be obligated to provide any funding with respect to the Post-Effective Date Debtors.  Any Cash held by the Post-Effective Date Debtors will be applied or otherwise used in accordance with the Plan, the Wind-Down Budget, and Confirmation Order.  Specifically, the Cash necessary to fund the Budgeted Expenses in the Wind-Down Budget shall be funded from the Available Cash.  The Plan Administrator may pay Allowed Claims and Budgeted Expenses without further Bankruptcy Court or Agent approval, but only as provided under the Plan, Confirmation Order and the Wind-Down Budget, provided that the Plan Administrator may amend the Wind-Down Budget with the prior written consent of the Agent.

**1.06    Replacement of the Plan Administrator**.  The Plan Administrator may resign upon written notice to the Agent; *provided, however*, that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  The Plan Administrator may also be removed for cause or by order of the Bankruptcy Court.  A successor Plan Administrator shall be appointed by the Agent, and notice of the successor Plan Administrator shall be filed with the Bankruptcy Court.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor, and all responsibilities of the predecessor Plan Administrator relating to the Post-Effective Date Debtors shall be terminated; *provided, however*, that the original Plan Administrator's right to indemnification shall survive termination.  In the event the Plan Administrator's appointment terminates, the Plan Administrator shall, subject to the Plan, Confirmation Order, and the Wind-Down Budget, be compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced.

**1.07    Continuance of Post-Effective Date Debtors**.  The dissolution, liquidation, resignation, or removal of the Plan Administrator shall not terminate or dissolve the Post-Effective Date Debtors and shall not revoke any existing agency created by the Plan Administrator pursuant to this Agreement or invalidate any action theretofore taken by the Plan Administrator, and the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator and all of its successors and assigns.

**1.08    Acceptance by Plan Administrator**.  The Plan Administrator, in its individual capacity, hereby accepts the obligations imposed upon it by this Agreement and agrees to observe and perform such obligations on and subject to the terms and conditions set forth in this Agreement

(including the compensation as specified in **Annex 1**), the Plan, and the Confirmation Order. In connection with and in furtherance of the purposes of the Plan, the Plan Administrator agrees to administer the Assets in accordance with the terms of the Plan.

## ARTICLE II
## CAUSES OF ACTION AND DISPUTED CLAIMS

**2.01    Exclusive Authority to Pursue, Settle, or Abandon Causes of Action**. Subject to the provisions of the Plan and Confirmation Order, the Plan Administrator shall have exclusive rights, powers, standing and interests of the estate to, and may, subject to the consent of the Agent, pursue, settle, or abandon all Causes of Action, without approval of the Bankruptcy Court, not otherwise released pursuant to the Plan, as the sole representative of the estate pursuant to Bankruptcy Code Section 1123(b)(3).

**2.02    Authority to Pursue, Settle, or Abandon Disputed Claims**. Subject to the provisions of the Plan and Confirmation Order, the Plan Administrator shall have the rights, powers, and interests of the estate to, and may, subject to the consent of the Agent, pursue, settle, or abandon all Disputed Claims, without approval of the Bankruptcy Court, not otherwise released pursuant to the Plan, as the sole representative of the estate pursuant to Bankruptcy Code Section 1123(b)(3).

## ARTICLE III
## LIMITED LIABILITY OF PLAN ADMINISTRATOR

**3.01    Liability; Indemnification**.

(a)    *Limited Recourse*.    Except as otherwise expressly provided in this Agreement, the Plan, or the Confirmation Order, Persons (including any professionals, employees, consultants and independent contractors retained by the Plan Administrator in accordance with this Agreement) engaged in transactions with the Post-Effective Date Debtors or the Plan Administrator shall look only to the Assets (as such Assets exist from time to time, including after Distributions) of the Post-Effective Date Debtors to satisfy any liability of any kind or character whatsoever incurred in connection with carrying out the terms of this Agreement, the Plan, or the Confirmation Order; *provided, however*, that in no event will such Person be entitled for any reason whatsoever, to recover from the Assets or the Plan Administrator to satisfy punitive, exemplary, consequential, or special damages.

(b)    *Limitation of Personal Liability*.    Notwithstanding anything to the contrary in the Disclosure Statement, Plan, Confirmation Order, any other Plan Document, or other provision of this Agreement, except solely for liability as determined by a Final Order to be the result of actual fraud, criminal conduct, or willful misconduct, the Plan Administrator, and any and all of its professionals, agents, managers, members, employees, consultants and independent contractors and representatives, expressly including Paul Ching (hereafter the "**PA Agents**"), shall not be subject to any liability or damages of any kind or character whatsoever, for any reason including without limitation (i)  relating to tort, contract, environmental, health, safety, plugging and abandonment, or decommissioning liabilities; (ii) arising from or related, directly or indirectly, to the Debtors prior to the entry of the Confirmation Order, the Post-Effective Date Debtors, Post-

Effective Date Debtor's assets, property, rights and entitlements, and the Assets; (iii) related, directly or indirectly, to any Person or otherwise in connection with the business and affairs of the Post-Effective Date Debtors and all Persons claiming against the Plan Administrator and/or the PA Agents, or (iv) otherwise asserting claims of any nature, at law or in equity, or otherwise, in connection with the affairs of the Post-Effective Date Debtors. Notwithstanding anything to the contrary in the Plan, Confirmation Order and this Agreement, all such claims, actions liabilities and damages described in 3.01(b)(i)-(iv) above shall be satisfied solely from and such claimants shall look solely to the Assets, if any Assets remain after Distributions, for satisfaction of any such claims.

(c)      ***Non-Liability for Acts of Others***.  Nothing contained in this Agreement, the Disclosure Statement, Plan, or the Confirmation Order shall be deemed to be an assumption by the Plan Administrator or the PA Agents of any of the liabilities, damages, obligations, or duties of the Debtors and shall not be deemed to be or contain a covenant or agreement by the Plan Administrator or the PA Agents to assume or accept any such liability, obligation, or duty whatsoever. Any successor Plan Administrator may accept and rely upon any accounting made by or on behalf of any predecessor Plan Administrator hereunder, and any statement or representation made by a predecessor Plan Administrator or its agents as to the Post-Effective Date Debtors' Assets or as to any other fact bearing upon the prior administration of the Post-Effective Date Debtors, so long as it has a good faith basis to do so. A Plan Administrator shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. The Plan Administrator, any of the PA Agents or successor Plan Administrator shall not be liable for any act or omission of any predecessor Plan Administrator or the Debtors. The Plan Administrator and each of its PA Agents, (each an "**Indemnified Party**", and collectively, the "**Indemnified Parties**") shall be indemnified and held harmless by the Post-Effective Date Debtors, to the fullest extent permitted by applicable law, solely from the remaining Assets for any losses, claims, damages, liabilities and expenses, including reasonable attorneys' fees, disbursements, and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of an Indemnified Party arising out of the creation, operation or termination of the Post-Effective Date Debtors, including actions taken or omitted in fulfillment of its duties with respect to the Post-Effective Date Debtors; *provided, however*, that the Post-Effective Date Debtors shall not be liable to indemnify any Indemnified Party for those acts or omissions that are determined by a Final Order to be the result of an Indemnified Party's actual fraud, criminal conduct, or willful misconduct. Notwithstanding any provision in this Agreement to the contrary, the Indemnified Parties shall be entitled to request advances from the Post-Effective Date Debtors to the extent of the Assets then on hand with the Plan Administrator, to cover reasonable fees and necessary expenses incurred in connection with defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such; *provided, however*, that the Plan Administrator shall not be required to make any such advances; *provided further, however*, that any Indemnified Parties receiving such advances shall repay the amounts so advanced to the Post-Effective Date Debtors upon the entry of a Final Order of a court of competent jurisdiction finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this subparagraph. This indemnification shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Indemnified Parties and shall inure to the benefit of the Indemnified

Parties' heirs and assigns. For the avoidance of doubt, the Plan Administrator shall consult with the Agent as to any indemnification obligations to any Indemnified Party.

**3.02 Exculpation**. The Plan Administrator and each PA Agent and representatives of each of the foregoing shall be deemed exculpated from all claims, liabilities, damages, and causes of action arising from their actions taken or not taken, as the case may be, in pursuit of their duties under this Agreement and the Plan and Confirmation Order, except for claims that are determined by a Final Order to be the result of actual fraud, criminal conduct, or willful misconduct, in all respects by the Post-Effective Date Debtors.

**3.03 Insurance**. The Plan Administrator may (but is not obligated to) obtain, at the expense of the Post-Effective Date Debtors and subject to the Wind-Down Budget, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Post-Effective Date Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors or the Post-Effective Date Debtors. The Plan Administrator is not required to obtain any bond or similar surety.

**3.04 Survival**. The provisions of this Article III shall survive the termination of this Agreement and the resignation, removal, or replacement of the Plan Administrator.

**ARTICLE IV**
**GENERAL PROVISIONS CONCERNING ADMINISTRATION OF THE ASSETS**

**4.01 Schedule of Allowed Claims**. The Plan Administrator or its Professionals shall maintain at all times on behalf of the Post-Effective Date Debtors a Schedule of Allowed Claims, as referenced in the Plan, including the names, distribution addresses, amounts of Allowed Claims, and the applicable Pro Rata share for each applicable Claimant. The initial Schedule of Allowed Claims shall be delivered to the Plan Administrator by the Debtors and shall be based on the list of holders of Claims maintained by the Clerk of the Bankruptcy Court on the claims registers in the Chapter 11 Cases, as well as Claims scheduled (and not designated as contingent, unliquidated, or disputed) in the Bankruptcy Schedules or otherwise as set forth in the Debtor's accounts payable information. All references in this Agreement to holders of Claims shall be read to mean such holders of record as set forth in the Schedule of Allowed Claims maintained by the Plan Administrator and shall exclude any holder not recorded thereon. The Plan Administrator or its Professionals shall cause the Schedule of Allowed Claims to be kept at its office or at such other place or places as may be designated by the Plan Administrator from time to time.

**4.02 Books and Records**.

(a) In consultation with the Agent, the Plan Administrator may, to the extent not prohibited by applicable law and except as otherwise provided by the Plan, abandon or destroy, without Bankruptcy Court order or notice to any party, any and all books and records deemed obsolete by the Plan Administrator. For the purpose of this Section 4.02(a), books and records include any computer-generated or computer-maintained books and records and computer data, as well as any electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to their books and records, wherever located.

(b)     Subject to the rights of the Plan Administrator to abandon or destroy books and records set forth in Section 4.02(a) hereof and the Plan, the Plan Administrator also shall maintain on behalf of the Post-Effective Date Debtors books and records relating to the Assets and any income or proceeds realized therefrom and the payment of expenses of and claims against or payable from the Assets in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof as contemplated by Section 6.01 hereof. Except as expressly provided in this Agreement, the Plan, and the Confirmation Order, as may be required by applicable law (including securities law), nothing in this Agreement is intended to require the Plan Administrator to file any accounting or seek approval of any court with respect to the administration of the Assets, or as a condition for making any payment or distribution of the Assets.

## ARTICLE V
## DISTRIBUTIONS

**5.01    Distributions to Holders of Allowed Claims**.  All Distributions to be made by the Post-Effective Date Debtors to any holder of an Allowed Claim shall be made only in accordance with the Plan, the Confirmation Order, and this Agreement and from the Assets net of the expenses related to the actions of the Post-Effective Date Debtors and the Plan Administrator, if any, pursuant to the Wind-Down Budget and payable out of the Available Cash or other Assets (or income and proceeds realized from the Assets), and only to the extent that the Assets are sufficient to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Agreement.

**5.02    Distributions; Withholding**.  The Plan Administrator shall make Distributions to holders of Allowed Claims entitled to Distributions under the Plan (each a "**Creditor**", and collectively the "**Creditors**") on behalf of the Post-Effective Date Debtors in accordance with the Plan and Confirmation Order at such times and in such amounts as the Plan Administrator may determine in its sole discretion, after establishment of the Distribution Reserve Accounts; *provided, however*, that in addition to the Distribution Reserve Accounts, the Plan Administrator may retain and supplement on behalf of the Post-Effective Date Debtors from time to time a supplemental reserve (the "**Supplemental Reserve**") in such amount: (a) as is otherwise reasonably necessary to meet contingent liabilities and to maintain the value of the Assets; (b) to otherwise pay reasonable administrative expenses, including, without limitation, the compensation and the reimbursement of reasonable, actual, and necessary costs, fees, and expenses (including attorneys' fees and expenses, financial advisor fees and expenses, and disbursing agent fees and expenses) of the Plan Administrator in connection with the performance of its duties under this Agreement, and in each case subject to the Wind-Down Budget; and (c) to otherwise satisfy all other liabilities and claims of creditors of the Post-Effective Date Debtors incurred or assumed in respect of the Post-Effective Date Debtors (or to which the Assets are otherwise subject) in accordance with the Plan, the Confirmation Order, and this Agreement.  Additionally, the Plan Administrator may withhold from amounts distributable to any Creditor any and all amounts, determined in the Plan Administrator's sole discretion, to be required by applicable law, regulation, rule, ruling, directive, or other governmental requirement.  In addition, all Distributions under this Agreement shall be net of the actual and reasonable costs of making such Distributions, subject to the terms of the Plan.

**5.03    No Distribution Pending Allowance**.  No payment or Distribution shall be made with respect to any Claim (except for Professional Fee Claims) to the extent such Claim is Disputed unless and until such Disputed Claim becomes an Allowed Claim in accordance with, and as provided in, the Plan.

**5.04    Non-Cash Property**.  Any non-Cash property of the Post-Effective Date Debtors (if any), including accounts receivable, may be sold, transferred, liquidated, or abandoned by the Plan Administrator on behalf of the Post-Effective Date Debtors without further Court order.  If, in the Plan Administrator's reasonable judgment, such property cannot be sold or liquidated in a commercially reasonable manner, or the Plan Administrator believes, in good faith, that such property has no reasonable value to the Post-Effective Date Debtors, the Plan Administrator shall have the right to abandon or otherwise dispose of such property on behalf of the Post-Effective Date Debtors.  No party in interest shall have a cause of action against the Plan Administrator or any director, officer, employee, consultant, independent contractor, agent, or professional of the Plan Administrator arising from or related to the disposition of non-Cash property in accordance with this Section 5.04.

**5.05    Compliance Matters**.  In connection with the Plan and all Distributions thereunder, to the extent applicable, the Plan Administrator on behalf of the Post-Effective Date Debtors is authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all distributions pursuant thereto shall be subject to such withholding and reporting requirements.

**5.06    No Distribution in Excess of Allowed Amount of Claims**.  Notwithstanding anything to the contrary herein, no Creditor shall receive in respect of its Claim any Distribution in excess of the Allowed amount of such Claim.

**5.07    Exemption from Registration**.  The Parties intend that the rights of the Creditors arising under this Agreement shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  To the extent that any such rights constitute securities, the parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

### ARTICLE VI
### TAXES

**6.01    Withholding of Taxes and Reporting**.  The Post-Effective Date Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Post-Effective Date Debtors shall be subject to any such withholding and reporting requirements.  To the extent that the operation of the Post-Effective Date Debtors or the liquidation of the Assets creates a tax liability, the Post-Effective Date Debtors shall, subject to the Wind-Down Budget, promptly pay such tax liability, but only out of the Assets (or the income or proceeds thereof) and any such payment shall be considered a cost and expense of the operation of the Post-Effective Date Debtors payable without Bankruptcy Court order.  The Post-Effective Date Debtors may reserve a sum, the amount of which shall be determined by the Plan Administrator, sufficient to pay the accrued or potential tax liability

arising out of the operations of the Post-Effective Date Debtors or the operation of the Assets. The Plan Administrator, on behalf of the Post-Effective Date Debtors, may enter into agreements with taxing authorities or other governmental units for the payment of such amounts as may be withheld. Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Creditors shall be required to provide any information necessary to effect the withholding of such taxes.

## ARTICLE VII
## DISSOLUTION OF THE POST-EFFECTIVE DATE DEBTORS

**7.01    Events upon Termination**.  Upon the dissolution of the Post-Effective Date Debtors as provided in the Plan, the Plan Administrator shall distribute on behalf of the Post-Effective Date Debtors the remaining applicable Assets, including any Cash remaining in any reserve, if any, to the applicable Creditors in accordance with the Plan, the Confirmation Order, and this Agreement.

**7.02    Winding Up, Discharge, and Release of the Plan Administrator**.  For the purposes of winding up the affairs of the Post-Effective Date Debtors, the Plan Administrator shall continue to act as Plan Administrator until its duties under this Agreement have been fully discharged or its role as Plan Administrator is otherwise terminated under this Agreement and the Plan.  Upon a motion or notice by the Plan Administrator, the Bankruptcy Court may enter an order relieving and releasing the Plan Administrator, its agents, professionals, independent contractors and employees of any further duties, and discharging and releasing the Plan Administrator of its duties hereunder and under the Plan.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

**8.01    Amendments**.  The Plan Administrator may, subject to the Agent's consent, modify, supplement, or amend this Agreement solely to clarify any ambiguity or inconsistency, or render this Agreement in compliance with its stated purposes, in a manner that is not inconsistent with the Plan, or the Confirmation Order.

**8.02    Waiver**.  No failure by the Plan Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**8.03    Cumulative Rights and Remedies**.  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

**8.04    No Bond Required**.  Notwithstanding any state law to the contrary, the Plan Administrator (including any successor Plan Administrator) shall be exempt from giving any bond or other security in any jurisdiction.

**8.05    Relationship to the Plan and Confirmation Order**.  In the event that any provision of this Agreement is found to be inconsistent with a provision in the Plan, or the Confirmation Order, the provisions of the Plan, or the Confirmation Order, as applicable, shall

control. Notwithstanding anything to the contrary in this Agreement, the Post-Effective Date Debtors, the Plan Administrator, and all holders of Claims and Interests shall be bound by the terms of the Plan and, accordingly, shall not commence any proceeding with respect to any Cause of Action released, enjoined, and/or exculpated pursuant to the Plan.

**8.06    Applicable Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to rules governing the conflict of laws.

**8.07    Retention of Jurisdiction**.  Notwithstanding the Effective Date, and to the fullest extent permitted by law and subject to Article XIV of the Plan, the Bankruptcy Court shall retain exclusive jurisdiction over the Post-Effective Date Debtors, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection with the Plan Administrator's implementation of the Plan on behalf of the Post-Effective Date Debtors, including, without limitation, this Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Plan Administrator or any professional retained by the Plan Administrator, in each case in its capacity as such.  Each party to this Agreement and each Creditor hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, and/or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court.  Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision in this Agreement.

**8.08    Severability**.  In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**8.09    Limitation of Benefits**.  Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer on or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

**8.10    Notices**.  All notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

*If to the Plan Administrator:*

Paul Ching
3451 Shenandoah St.
Dallas, Texas 75205
PChing@BainbridgeEP.com

*With a copy to:*

Joseph M. Coleman; John J. Kane; S. Kyle Woodard
Kane Russell Coleman Logan PC
901 Main Street, Suite 5200
Dallas, Texas 75202
jcoleman@krcl.com; jkane@krcl.com; kwoodard@krcl.com

The Parties may designate in writing from time to time other and additional places to which notices may be sent.

**8.11    Further Assurances**.  From and after the Effective Date, the Parties covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

**8.12    Integration**.  This Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties, hereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Confirmation Order.  This Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.

**8.13    Interpretation**.  The enumeration and article and section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular article or subsection of any article hereof unless the context requires otherwise.

**8.14    Counterparts**.   This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

**8.15    Conflicts**.  Notwithstanding anything to the contrary herein, in the event of a conflict between the provisions of this Agreement and the Plan, the Plan shall control.

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

**BAINBRIDGE UINTA HOLDINGS, LLC**

By:_____
Name: Paul Ching
Title:   Chief Executive Officer

**BAINBRIDGE UINTA, LLC**

By:_____
Name: Paul Ching
Title:   Chief Executive Officer

**CHING ENERGY, LLC, SOLELY IN ITS CAPACITY AS PLAN ADMINISTRATOR**

By:_____
Name: Paul Ching
Title:   Member

# ANNEX 1

## IDENTITY OF INITIAL PLAN ADMINISTRATOR

Ching Energy, LLC, Plan Administrator
8150 N. Central Expressway, Suite 650
Dallas, Texas 75206
PChing@BainbridgeEP.com

## PLAN ADMINISTRATOR COMPENSATION

For the term of this Agreement, and subject to the Wind-Down Budget, Ching Energy, LLC shall receive 10,000 per month (not to exceed an aggregate amount of $60,000) from the Post-Effective Date Debtors as compensation for services as Plan Administrator. From this amount, Ching Energy, LLC may hire the Debtors former employees on an as-needed basis. Subject to the Wind-Down Budget, the Post-Effective Date Debtors shall also reimburse Ching Energy, LLC for all reasonable and necessary out-of-pocket expenses incurred as Plan Administrator. All compensation and reimbursement of expenses paid to Ching Energy, LLC shall be paid on a monthly basis from the Available Cash.

# Exhibit C

**Wind-Down Budget**

## BAINBRIDGE BANK ACCOUNT RECONCIALIATION

| ACCOUNT | BALANCE | DATE |
|---|---|---|
| OPERATING | $ 8,985,947.52 | 4/30/2021 |
| SEGREGATED | $ 41,502,477.61 | 4/30/2021 |
| SUBTOTAL | $ 50,488,425.13 | 4/30/2021 |
| CASH PAYMENT TO WHITE OAK | $ (39,000,000.00) | 4/30/2021 |
| CASH AVAILABLE | $ 11,488,425.13 | |
| | | |
| POST CLOSING DISBURSEMENTS | | |
| VENDERA DEPOSIT | $ (3,525,000.00) | RETURNED 5/4/21 |
| VENDERA SH FEE | $ (881,250.00) | PAID 5/4/21 |
| VENDERA SH EXP | $ (150,000.00) | PAID 5/4/21 |
| SUBTOTAL | $ (4,556,250.00) | |
| | | |
| CASH AVAILABLE | $ 6,932,175.13 | |
| | | |
| OTHER POST CLOSING DISBURSEMENTS | | |
| CURE COSTS | $ (120,508.00) | PAID 5/4/2021 |
| | | |
| CASH AVAILABLE | $ 6,811,667.13 | 5/4/2021 |
| | | |
| CASH PAYMENT TO WHITE OAK | $ (4,500,000.00) | PAID 5/21/21 |
| | | |
| CASH AVAILABLE | $ 2,311,667.13 | |
| | | |
| POST SALE ACTIVITY REVENUE/COSTS | $ 1,343,119.76 | |
| BAINBRIDGE COSTS (G&A + PROF + INV BANK) | $ (1,212,160.36) | |

| | CASH IN BANK ACCOUNT 6/24 | BANK ACCOUNT ACTUAL | UNRECONCILED DIFFERENCE |
|---|---|---|---|
| | $ 2,442,626.53 | $ 2,442,724.08 | $ (97.55) |

| | |
|---|---|
| PRE-EFFECTIVE DATE ADDITIONAL ACTIVITY | $ (812,103.61) |
| ESTIMATED WIND DOWN BUDGET EXPENSES JUNE | $ (473,094.54) |
| ESTIMATED WIND DOWN BUDGET EXPENSES JULY FORWARD | $ (379,079.00) |
| | |
| CASH AVAILABLE | $ 778,349.38 |

**WIND DOWN BUDGET**

| | |
|---|---|
| $ (1,197,826.46) | BAINBRIDGE COSTS |
| $ (473,094.54) | ESTIMATED JUNE REMAING EXPENSES |
| $ (379,079.00) | ESTIMATED JULY FORWARD EXPENSES |
| $ (2,050,000.00) | TOTAL WIND DOWN BUDGET |

**Bainbridge Uinta, LLC**
**Projected Wind Down Budget**
**Beginning 5/1/2021**

| CATEGORY | 5/3/2021 | 5/10/2021 | 5/17/2021 | 5/24/2021 | 5/31/2021 | MAY TOTAL | 6/7/2021 |
|---|---|---|---|---|---|---|---|
| **Incoming Funds** | | | | | | | |
| Wind Down Funds - White Oak | $2,050,000.00 | | | | | | |
| Rerserve For Final Settlement Statement True Up* | | | | | | | |
| KRCL RETAINER | | | | | | | |
| Cash Back From Jan - Mar Settlement Statement True Up** | | | | | | | $0.00 |
| **TOTAL REVENUES** | **$2,050,000.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | | |
| **SG&A** | | | | | | | |
| Wind Down Payroll - White Oak | | $5,079.64 | | $5,079.64 | | $10,159.29 | |
| Stay Pool Payout (6) | | | | | | | |
| Admin Cost | $160.86 | | | | | $160.86 | $160.86 |
| Office Rent | $675.79 | | | | | $675.79 | $675.79 |
| Telephone/Logix | $81.47 | | | | | $81.47 | $81.47 |
| Software | $209.12 | | | | | $209.12 | $209.12 |
| Supplies/Copiers | $83.65 | | | | | $83.65 | $83.65 |
| IT Support | $418.24 | | | | | $418.24 | $418.24 |
| Legal/Tax Accounting | $5,000.00 | | | | | $5,000.00 | $5,000.00 |
| Contingencies (Texas Franchise & Prop Taxes) | | | | | | $0.00 | |
| **TOTAL SG&A EXPENSES** | **$6,629.12** | **$5,079.64** | **$0.00** | **$5,079.64** | **$0.00** | **$16,788.41** | **$6,629.12** |
| **RESTRUCTURING COSTS** | | | | | | | |
| Unpaid 80% Professional Fees plus expenses (8) | $300,526.00 | | | | | $300,526.00 | |
| Unpaid 20% Professional Fees | $91,426.00 | | | | | $91,426.00 | |
| Petrie Partners Unpaid Fee and expenses | $756,793.00 | | | | | $756,793.00 | |
| Proffessional Fees Incurred May/June Paid In July For KRCL | | | | | | | |
| Proffessional Fees Incurred May/June Paid In July For DRP | | | | | | | |
| Estimated Post Confirmation Professional Fees | | | | | | | |
| Services, mailings | | | | | | | |
| Priority Claims (9) | | | | | | | |
| Admin Claims | | | $0.00 | $15,000.00 | | $15,000.00 | |
| Other Secured Claims | | | | | | | |
| General Unsecured Claims | | | | | | | |
| US Trustee Fee (7) | | | | | | | |

| CATEGORY | 5/3/2021 | 5/10/2021 | 5/17/2021 | 5/24/2021 | 5/31/2021 | MAY TOTAL | 6/7/2021 |
|---|---|---|---|---|---|---|---|
| TOTAL PROFESSIONAL FEES | $1,148,745.00 | $0.00 | $0.00 | $15,000.00 | $0.00 | $1,163,745.00 | $0.00 |
| | | | | | | | |
| RESERVE FOR FINAL SETTLEMENT STATEMENT | | | | | | | |
| | | | | | | | |
| TOTAL COSTS | $6,629.12 | $5,079.64 | | $20,079.64 | | | $6,629.12 |
| | | | | | | | |
| NET CASH | | | | | | | |

**NOTE:  SECOND HALF JUNE ARE BEST ESTIMATES TO BE PAID**

**Footnotes:**

Assumes the TSA ends at the end of June and Wind Down budget will have 100% of the budgeted G&A in July.

All cash collateral remaining with the Debtor after Closing is projected to be paid out to the Lender except for the beginning cash balance set forth in this budget.

These are estimates only, the Debtors professionals reserve all righs as to fees actually earned

The Debtor's payroll is based on an allocation of about 90% to TSA and 10% to Wind Down

(6) Employee Stay Pool is to incentivize employees to stay to the end of the wind down period and is only paid at the end of the wind down period to employees who re

(7) A payment of $250,000 is due the US Trustee out of the net sales proceeds to White Oak.

(8) As of 4/22/21.

(9) Priority claims for CGA (Calley), Elk Mesa & Oak Hills

*Based On No Reserve Required For Settlement True Up

**Based on Jan - Mar settlement statement true up (Total cash transferred to Vaquero from April revenue about $675,000--work in progress)

**NOTE:  ABOVE TWO ARE ESTIMATES SUBJECT TO NEGOTIATIONS WITH VAQUERO WHICH COULD GO UP OR DOWN**

**Bainbridge Uinta, LLC**
**Projected Wind Down Budget**
**Beginning 5/1/2021**

| CATEGORY | BUDGET 6/14/2021 | 6/21/2021 | 6/28/2021 | JUNE TOTAL | SUBTOTAL | JULY FORWARD |
|---|---|---|---|---|---|---|
| **Incoming Funds** | | | | | | |
| Wind Down Funds - White Oak | | | | | $2,050,000.00 | $200,000.00 |
| Rerserve For Final Settlement Statement True Up* | | | | | | $200,000.00 |
| KRCL RETAINER | | | | | | $239,003.00 |
| Cash Back From Jan - Mar Settlement Statement True Up** | | | | | | |
| **TOTAL REVENUES** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$2,050,000.00** | **$639,003.00** |
| **SG&A** | | | | | | |
| Wind Down Payroll - White Oak | $5,079.64 | | $5,079.64 | $10,159.29 | $20,318.58 | $60,000.00 |
| Stay Pool Payout (6) | | | $10,000.00 | $10,000.00 | $10,000.00 | $0.00 |
| Admin Cost | | | | $160.86 | $321.72 | $0.00 |
| Office Rent | | | $675.79 | $675.79 | $1,351.58 | $8,079.00 |
| Telephone/Logix | | | $81.47 | $81.47 | $162.95 | $2,500.00 |
| Software | | | $209.12 | $209.12 | $418.24 | $0.00 |
| Supplies/Copiers | | | $83.65 | $83.65 | $167.30 | $1,000.00 |
| IT Support | | | $418.24 | $418.24 | $836.48 | $1,000.00 |
| Legal/Tax Accounting | | | $5,000.00 | $10,000.00 | $15,000.00 | $5,000.00 |
| Contingencies (Texas Franchise & Prop Taxes) | $5,000.00 | | $5,000.00 | $10,000.00 | $10,000.00 | $20,000.00 |
| **TOTAL SG&A EXPENSES** | **$10,079.64** | **$0.00** | **$25,079.64** | **$41,788.41** | **$58,576.82** | **$97,579.00** |
| **RESTRUCTURING COSTS** | | | | | | |
| Unpaid 80% Professional Fees plus expenses (8) | | | $0.00 | $0.00 | $300,526.00 | |
| Unpaid 20% Professional Fees | | | $0.00 | $0.00 | $91,426.00 | |
| Petrie Partners Unpaid Fee and expenses | | | $0.00 | $0.00 | $756,793.00 | |
| Proffessional Fees Incurred May/June Paid In July For KRCL | | | | | | $90,000.00 |
| Proffessional Fees Incurred May/June Paid In July For DRP | | | | | | $40,000.00 |
| Estimated Post Confirmation Professional Fees | | | | | | $50,000.00 |
| Services, mailings | $4,000.00 | | $4,000.00 | $8,000.00 | $8,000.00 | |
| Priority Claims (9) | | | $3,090.86 | $3,090.86 | $3,090.86 | |
| Admin Claims | | | $0.00 | $0.00 | $15,000.00 | |
| Other Secured Claims | | | $418.09 | $418.09 | $418.09 | |
| General Unsecured Claims | | | $0.00 | $0.00 | $0.00 | $100,000.00 |
| US Trustee Fee (7) | | | $250,000.00 | $250,000.00 | $250,000.00 | $1,500.00 |

| CATEGORY | 6/14/2021 | 6/21/2021 | 6/28/2021 | JUNE TOTAL | SUBTOTAL | JULY FORWARD |
|---|---|---|---|---|---|---|
| TOTAL PROFESSIONAL FEES | $4,000.00 | $0.00 | $257,508.95 | $261,508.95 | $1,425,253.95 | $281,500.00 |
| RESERVE FOR FINAL SETTLEMENT STATEMENT | | | $0.00 | $0.00 | $0.00 | |
| TOTAL COSTS | $14,079.64 | $0.00 | $282,588.59 | | $1,483,830.77 | $379,079.00 |
| NET CASH | | | | | $566,169.23 | $259,924.00 |

**NOTE: SECOND HALF JUNE ARE BEST ESTIMATES TO BE PA**

**Footnotes:**

Assumes the TSA ends at the end of June and Wind Down budget will

All cash collateral remaining with the Debtor after Closing is projecte

These are estimates only, the Debtors professionals reserve all righs a

The Debtor's payroll is based on an allocation of about 90% to TSA an

(6) Employee Stay Pool is to incentivize employees to stay to the end main to the end.

(7) A payment of $250,000 is due the US Trustee out of the net sales

(8) As of 4/22/21.

(9) Priority claims for CGA (Calley), Elk Mesa & Oak Hills

*Based On No Reserve Required For Settlement True Up

**Based on Jan - Mar settlement statement true up (Total cash transf

**NOTE: ABOVE TWO ARE ESTIMATES SUBJECT TO NEGOTIA**

**Bainbridge Uinta, LLC**
**Projected Wind Down Budget**
**Beginning 5/1/2021**

| CATEGORY | 5/1/21 - 5/15/2021 | 5/16/21 - 5/31/21 | ACTUALS MAY | 6/1/21 - 6/15/21 | 6/16/21 - 6/30/21 | TOTAL JUNE |
|---|---|---|---|---|---|---|
| **Incoming Funds** | | | | | | |
| Wind Down Funds - White Oak | $2,050,000.00 | | $2,050,000.00 | | | $0.00 |
| Rerserve For Final Settlement Statement True Up* | | | | | | $0.00 |
| KRCL RETAINER | | | | | | |
| Cash Back From Jan - Mar Settlement Statement True Up** | | | | | | |
| **TOTAL REVENUES** | $2,050,000.00 | | $2,050,000.00 | | $0.00 | $0.00 |
| **SG&A** | | | | | | |
| Wind Down Payroll - White Oak | $5,139.96 | $5,139.95 | $10,279.91 | $5,142.96 | $5,142.96 | $10,285.92 |
| Stay Pool Payout (6) | | | $0.00 | | $10,000.00 | $10,000.00 |
| Admin Cost | | $18.00 | $18.00 | | | $0.00 |
| Office Rent | | $656.31 | $656.31 | | $656.24 | $656.24 |
| Telephone/Logix | | $30.37 | $30.37 | $68.87 | $33.28 | $102.15 |
| Software | | | $0.00 | | | $0.00 |
| Supplies/Copiers | | $29.84 | $29.84 | | $80.00 | $80.00 |
| IT Support | | $63.75 | $63.75 | | $750.00 | $750.00 |
| Legal/Tax Accounting | | $5,000.00 | $5,000.00 | | $3,500.00 | $3,500.00 |
| Contingencies (Texas Franchise & Prop Taxes) | | | $0.00 | $9,965.97 | | $9,965.97 |
| **TOTAL SG&A EXPENSES** | $5,139.96 | $10,938.22 | $16,078.18 | $15,177.80 | $20,162.48 | $35,340.28 |
| **RESTRUCTURING COSTS** | | | | | | |
| Unpaid 80% Professional Fees plus expenses (8) | | $147,455.01 | $147,455.01 | $205,537.79 | $205,537.79 | $205,537.79 |
| Unpaid 20% Professional Fees | | | $0.00 | $49,711.27 | $49,711.27 | $49,711.27 |
| Petrie Partners Unpaid Fee and expenses | | | $0.00 | $754,196.70 | $754,196.70 | $754,196.70 |
| Proffessional Fees Incurred May/June Paid In July For KRCL | | | | | | |
| Proffessional Fees Incurred May/June Paid In July For DRP | | | | | | |
| Estimated Post Confirmation Professional Fees | | | | | | |
| Services, mailings | | | $0.00 | $0.00 | | $0.00 |
| Priority Claims (9) | | $3,090.86 | $3,090.86 | $6,639.90 | | $6,639.90 |
| Admin Claims | | | $0.00 | | $15,000.00 | $15,000.00 |
| Other Secured Claims | | | | | $418.09 | $418.09 |
| General Unsecured Claims | | | $0.00 | | $0.00 | $0.00 |
| US Trustee Fee (7) | | | $0.00 | | $250,000.00 | $250,000.00 |

| CATEGORY | 5/1/21 - 5/15/2021 | 5/16/21 - 5/31/21 | MAY | 6/1/21 - 6/15/21 | 6/16/21 - 6/30/21 | JUNE |
|---|---|---|---|---|---|---|
| TOTAL PROFESSIONAL FEES | $0.00 | $150,545.87 | $150,545.87 | $760,836.60 | $520,667.15 | $1,281,503.75 |
| RESERVE FOR FINAL SETTLEMENT STATEMENT | | | | | | $0.00 |
| TOTAL COSTS | $5,139.96 | $161,484.09 | $166,624.05 | | | $1,316,844.03 |
| NET CASH | | | $1,883,375.95 | | | -$1,316,844.03 |

**NOTE:  SECOND HALF JUNE ARE BEST ESTIMATES TO BE PA**

**Footnotes:**

Assumes the TSA ends at the end of June and Wind Down budget will

All cash collateral remaining with the Debtor after Closing is projected

These are estimates only, the Debtors professionals reserve all righs a

The Debtor's payroll is based on an allocation of about 90% to TSA an

(6) Employee Stay Pool is to incentivize employees to stay to the end

(7) A payment of $250,000 is due the US Trustee out of the net sales

(8) As of 4/22/21.

(9) Priority claims for CGA (Calley), Elk Mesa & Oak Hills

*Based On No Reserve Required For Settlement True Up

**Based on Jan - Mar settlement statement true up (Total cash trans

**NOTE:  ABOVE TWO ARE ESTIMATES SUBJECT TO NEGOTIA**

**Bainbridge Uinta, LLC**
**Projected Wind Down Budget**
**Beginning 5/1/2021**

| CATEGORY | TOTAL MAY & JUNE | TOTAL JULY | MAY | JUNE | MAY & JUNE |
|---|---|---|---|---|---|
| | | | | BUDGET vs ACTUALS (VARIANCES) | |
| **Incoming Funds** | | | | | |
| Wind Down Funds - White Oak | $2,050,000.00 | | $2,050,000.00 | $0.00 | $2,050,000.00 |
| Rerserve For Final Settlement Statement True Up* | $0.00 | | $0.00 | $0.00 | $0.00 |
| KRCL RETAINER | | | | | |
| Cash Back From Jan - Mar Settlement Statement True Up** | | | | | |
| **TOTAL REVENUES** | **$2,050,000.00** | | **$0.00** | **$0.00** | **$0.00** |
| **SG&A** | | | | | |
| Wind Down Payroll - White Oak | $20,565.83 | | -$120.62 | -$126.63 | -$247.25 |
| Stay Pool Payout (6) | $10,000.00 | | $0.00 | $0.00 | $0.00 |
| Admin Cost | $18.00 | | $142.86 | $160.86 | $303.72 |
| Office Rent | $1,312.55 | | $19.48 | $19.55 | $39.03 |
| Telephone/Logix | $132.52 | | $51.10 | -$20.68 | $30.42 |
| Software | $0.00 | | $209.12 | $209.12 | $418.24 |
| Supplies/Copiers | $109.84 | | $53.81 | $3.65 | $57.46 |
| IT Support | $813.75 | | $354.49 | -$331.76 | $22.72 |
| Legal/Tax Accounting | $8,500.00 | | $0.00 | $6,500.00 | $6,500.00 |
| Contingencies (Texas Franchise & Prop Taxes) | $9,965.97 | | $34.03 | $34.03 | $34.03 |
| **TOTAL SG&A EXPENSES** | **$51,418.46** | | **$710.23** | **$6,448.13** | **$7,158.36** |
| **RESTRUCTURING COSTS** | | | | | |
| Unpaid 80% Professional Fees plus expenses (8) | $352,992.80 | | $153,070.99 | -$205,537.79 | -$52,466.80 |
| Unpaid 20% Professional Fees | $49,711.27 | | $91,426.00 | -$49,711.27 | $41,714.73 |
| Petrie Partners Unpaid Fee and expenses | $754,196.70 | | $756,793.00 | -$754,196.70 | $2,596.30 |
| Proffessional Fees Incurred May/June Paid In July For KRCL | | | | | |
| Proffessional Fees Incurred May/June Paid In July For DRP | | | | | |
| Estimated Post Confirmation Professional Fees | $0.00 | | $0.00 | $0.00 | $0.00 |
| Services, mailings | $6,639.90 | | $0.00 | $1,360.10 | $1,360.10 |
| Priority Claims (9) | $3,090.86 | | -$3,090.86 | $3,090.86 | $0.00 |
| Admin Claims | $15,000.00 | | $15,000.00 | -$15,000.00 | $0.00 |
| Other Secured Claims | $418.09 | | $0.00 | $0.00 | $0.00 |
| General Unsecured Claims | $0.00 | | $0.00 | $0.00 | $0.00 |
| US Trustee Fee (7) | $250,000.00 | | $0.00 | $0.00 | $0.00 |

| CATEGORY | MAY & JUNE | JULY | MAY | JUNE | MAY & JUNE |
|---|---|---|---|---|---|
| TOTAL PROFESSIONAL FEES | $1,432,049.62 | | $1,013,199.13 | -$1,019,994.80 | -$6,795.67 |
| RESERVE FOR FINAL SETTLEMENT STATEMENT | $0.00 | | | | |
| TOTAL COSTS | $1,483,468.08 | | $1,013,909.36 | -$1,013,546.67 | $362.69 |
| NET CASH | $566,531.92 | | | | |

**NOTE: SECOND HALF JUNE ARE BEST ESTIMATES TO BE PA**

**Footnotes:**

Assumes the TSA ends at the end of June and Wind Down budget will

All cash collateral remaining with the Debtor after Closing is projecteo

These are estimates only, the Debtors professionals reserve all rights a

The Debtor's payroll is based on an allocation of about 90% to TSA an

(6) Employee Stay Pool is to incentivize employees to stay to the end

(7) A payment of $250,000 is due the US Trustee out of the net sales

(8) As of 4/22/21.

(9) Priority claims for CGA (Calley), Elk Mesa & Oak Hills

*Based On No Reserve Required For Settlement True Up

**Based on Jan - Mar settlement statement true up (Total cash transf

**NOTE: ABOVE TWO ARE ESTIMATES SUBJECT TO NEGOTIA**

# Exhibit D

**Schedule of Allowed Claims**

# Amended Schedule of Allowed Claims

**Joint Chapter 11 Plan of Liquidation of Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC**

### Class 1 - Priority Non-Tax Claims

| Claimant | Distribution Address | Allowed Amount | Percent of Total | Projected Distribution |
|----------|---------------------|----------------|------------------|------------------------|
| NONE | | | | |

**Total Allowed Class 1 Claims / Projected Distributions**                    $0.00                    $0.00

# Amended Schedule of Allowed Claims

**Joint Chapter 11 Plan of Liquidation of Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC**

### Class 2 - Prepetition Secured Claims

| Claimant | Distribution Address | Allowed Amount | Percent of Total | Projected Distribution |
|---|---|---|---|---|
| White Oak Global Advisors, LLC | SRS Acqulom<br>c/o Joshua James<br>150 South Fifth Street, Ste 2600<br>Minneapolis, MN 55402 | TBD | 100% | TBD |

**Total Allowed Class 2 Claims / Projected Distributions***　　　　　　　**TBD**　　　　　　　　**TBD**

\* Pursuant to Section 4.02 of the Plan, total Distributions to Class 2 Prepetition Secured Claims will be determined based upon the final amount of Available Cash remaining after payment of Budgeted Expenses set forth in the Wind-Down Budget. Notwithstanding anything herein to the contrary, the Allowed amount of Class 2 Claims shall be determined in accordance with the provisions of the Plan governing Allowance of such Claims.

# Amended Schedule of Allowed Claims

**Joint Chapter 11 Plan of Liquidation of Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC**

### Class 3 - Other Secured Claims

| Claimant | Distribution Address | Allowed Amount | Percent of Total | Projected Distribution |
|---|---|---|---|---|
| BP Energy Company | 201 Helios Way<br>Helios Plaza<br>Houston, TX 77079 | $0.00 | 0% | $0.00 |
| Elk Mesa Energy, LLC | c/o Jackson Walker LLP<br>Attn: Bruce J. Ruzinsky<br>1401 McKinney, Suite 1900<br>Houston, TX 77010 | $418.09 | 100% | $418.09 |

**Total Allowed Class 3 Claims / Projected Distributions**       **$418.09**       **$418.09**

# Amended Schedule of Allowed Claims

**Joint Chapter 11 Plan of Liquidation of Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC**

**Class 4 - Prepetition Secured Lender Deficiency Claims**

| Claimant | Distribution Address | Allowed Amount | Percent of Total | Projected Distribution |
|---|---|---|---|---|
| White Oak Global Advisors, LLC | SRS Acqulom<br>c/o Joshua James<br>150 South Fifth Street, Ste 2600<br>Minneapolis, MN 55402 | $0.00 | 100% | $0.00 |

**Total Allowed Class 4 Claims\* / Projected Distributions**          **$0.00**          **$0.00**

\* Notwithstanding anything herein to the contrary, the Allowed amount of Class 4 Claims shall be determined in accordance with the provisions of the Plan governing Allowance of such Claims.

# Amended Schedule of Allowed Claims

**Joint Chapter 11 Plan of Liquidation of Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC**

### Class 5 - GUC Claims

| Claimant | Distribution Address | Allowed Amount | Percent of Total | Projected Distribution |
|---|---|---|---|---|
| American Express National Bank | Becket and Lee LLP c/o Shraddha Bharatia PO Box 3001 Malvern, PA 19355-0701 | $615.44 | 0.08% | $84.56 |
| Argonaut Insurance Company | c/o Harold E. McKee 225 W. Washington Street 24th Floor Chicago, IL 60606 | $37,000.00 | 5.08% | $5,083.56 |
| Arrow Oilfield and Sanitation Inc | PO Box 1049 Roosevelt, UT 84066 | $745.15 | 0.10% | $102.38 |
| Auto Tech | PO Box 1024 Vernal, UT 84078 | $873.93 | 0.12% | $120.07 |
| Automation X Corporation | Dept 1538 PO Box 17180 Denver, CO 80217 | $3,941.35 | 0.54% | $541.52 |
| B&G Crane and Oilfield Services Inc. | PO Box 527 Altamont, UT 84001 | $2,100.00 | 0.29% | $288.53 |
| Blue Wing Consulting, LLC | PO Box 908 Big Piney, WY 83113 | $6,340.29 | 0.87% | $871.12 |
| Campbell Centre | Attn: Building Manager 8350 N. Central Expy, Suite 100 Dallas, TX 75206 | $49,223.34 | 6.76% | $6,762.97 |
| Cawley Gillespie & Associates Inc. | 306 West 7th Street, Suite 302 Fort Worth, TX 76102 | $11,619.34 | 1.60% | $1,596.42 |
| Cornwell Jackson PLLC | 6865 Windcrest Drive, Suite 100 Plano, TX 75024 | $4,973.50 | 0.68% | $683.33 |
| CrossFirst Bank | 11440 Tomahawk Creek Parkway Leawood, Kansas 66211 | $0.00 | 0.00% | $0.00 |

| Claimant | Distribution Address | Allowed Amount | Percent of Total | Projected Distribution |
|---|---|---|---|---|
| Double Hook Inc. | 1843 West 1500 S<br>Vernal, UT 84078-4527 | $76,440.00 | 10.50% | $10,502.37 |
| Endurance Lift Solutions LLC | c/o Vianey Garza<br>Dore Rothberg McKay, P.C.<br>17171 Park Row, Suite 160<br>Houston, TX 77084 | $34,970.43 | 4.80% | $4,804.71 |
| Energy Armor LLC | PO Box 1445<br>Vernal, UT 84078 | $34,111.00 | 4.69% | $4,686.63 |
| Five Star Tire Auto LLC | 1011 West Hwy 40<br>Vernal, UT 84078 | $514.05 | 0.07% | $70.63 |
| J&C Enterprises Inc. | PO Box 1096<br>Vernal, UT 84078 | $435.00 | 0.06% | $59.77 |
| Knight Oil Tools, LLC | PO Box 207923<br>Dallas, TX 75320 | $1,572.48 | 0.22% | $216.05 |
| Metro Repro Inc. | PO Box 560092<br>Dallas, TX 75247 | $880.07 | 0.12% | $120.92 |
| Moon Lake Electric Association Inc.** | PO Box 337<br>Roosevelt, UT 84066 | $0.00 | 0.00% | $0.00 |
| Mort's Car Wash & Fuel Inc. | PO Box 26<br>Vernal, UT 84078 | $77.31 | 0.01% | $10.62 |
| National Oilwell Varco, L.P. | Attn: Bobbi Ingram<br>7909 Parkwood Circle Drive<br>Houston, TX 77036 | $46,496.93 | 6.39% | $6,388.38 |
| Norco Inc. | LB 413124<br>PO Box 35144<br>Seattle, WA 98124-5144 | $115.89 | 0.02% | $15.92 |
| Oil and Gas Equipment Corp. | PO Box 459<br>Flora Vista, NM 87415 | $560.45 | 0.08% | $77.00 |
| Ponderosa Oilfield Service Inc. | 807 East 500 South<br>PO Box 1111<br>Vernal, UT 84078 | $94,046.22 | 12.92% | $12,921.35 |
| Pumpers Inc. | PO Box 1015<br>Roosevelt, UT 84066 | $2,669.16 | 0.37% | $366.73 |

| Claimant | Distribution Address | Allowed Amount | Percent of Total | Projected Distribution |
|---|---|---|---|---|
| Questar Energy Services Inc. | Attn Mrp Processing Dept<br>PO Box 27503<br>Richmond, VA 23261 | $483.90 | 0.07% | $66.48 |
| Red Mountain Equipment Supply Inc. | 625 W 500 N<br>PO Box 447<br>Vernal, UT 84078 | $12,015.42 | 1.65% | $1,650.84 |
| Reladyne West LLC | PO Box 954039<br>St Louis, MO 63195-4039 | $11,214.70 | 1.54% | $1,540.83 |
| Rhetts Trucking LLC | PO Box 397<br>Vernal, UT 84078 | $210,078.60 | 28.86% | $28,863.45 |
| RN Industries Inc. | PO Box 1168<br>Vernal, UT 84066 | $6,220.00 | 0.85% | $854.59 |
| Runners Inc | PO Box 176<br>Myton, UT 84052 | $465.86 | 0.06% | $64.01 |
| Rusco Operating LLC | 98 San Jacinto Blvd, Suite 550<br>Austin, TX 78701 | $5,800.00 | 0.80% | $796.88 |
| Schlumberger Rod Lift Inc. | 713 Market Drive<br>Oklahoma City, OK 73114 | $11,007.20 | 1.51% | $1,512.32 |
| Small Business Administration (SBA) | 4300 Amon Carter Blvd., Ste 114<br>Fort Worth, TX 76155 | $0.00 | 0.00% | $0.00 |
| Spectra LLC | PO Box 400<br>Roosevelt, UT 84066 | $360.00 | 0.05% | $49.46 |
| Split Mountain Pipe & Supply Inc. | 1120 East Hwy 40<br>Vernal, UT 84078 | $6,245.93 | 0.86% | $858.15 |
| Star Point Enterprises Inc. | 2580 Creekview Dr<br>Moab, UT 84532 | $635.00 | 0.09% | $87.24 |
| Triple H Inc. | PO Box 788<br>Vernal, UT 84078 | $5,720.18 | 0.79% | $785.92 |
| U.S. Department of Interior, BLM Utah State Office* | Phyllisina Leslie<br>1849 C Street NW, MS 5358<br>Washington, DC 20240 | $0.00 | 0.00% | $0.00 |
| UELS LLC Uintah Engineering | 85 South 200 East<br>Vernal, UT 84078 | $6,046.75 | 0.83% | $830.78 |

| Claimant | Distribution Address | Allowed Amount | Percent of Total | Projected Distribution |
|---|---|---|---|---|
| Van Wagoner Electric | 393 W 1070 S<br>Vernal, UT 84078 | $3,166.02 | 0.43% | $434.99 |
| West End Cleaners Inc. | 933 West Hwy 40<br>Vernal, UT 84078 | $80.00 | 0.01% | $10.99 |
| Wild Mountain Supply LLC | 2959 N 3000 W<br>Roosevelt, UT 84055 | $37,975.06 | 5.22% | $5,217.53 |

**Total Allowed Class 5 Claims / Projected Distributions**          **$727,835.95**          **$100,000.00**

* Denotes Claims that are currently Disputed under the Plan and that are subject to an unresolved objection and/or ongoing negotiations among the Debtors and the respective Claimant. Disputed Claims shall only become Allowed Claims in accordance with the terms of the Plan.

** Moon Lake shall not have an Allowed GUC Claim for purposes of the Plan and Distributions thereunder; however, Moon Lake shall be entitled to offset the balance of its security deposit from the Debtors, which totals approximately $40,000.00.

# Amended Schedule of Allowed Claims

**Joint Chapter 11 Plan of Liquidation of Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC**

**Class 6 - Intercompany Claims**

| Claimant | Distribution Address | Allowed Amount | Percent of Total | Projected Distribution |
|---|---|---|---|---|
| NONE | | | | |

**Total Allowed Class 6 Claims / Projected Distributions**          $0.00          $0.00

# Amended Schedule of Allowed Claims

**Joint Chapter 11 Plan of Liquidation of Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC**

**Class 7 - 510(b) Claims**

| Claimant | Distribution Address | Allowed Amount | Percent of Total | Projected Distribution |
|----------|---------------------|----------------|------------------|------------------------|
| NONE | | | | |

**Total Allowed Class 7 Claims / Projected Distributions**          $0.00          $0.00

## Amended Schedule of Allowed Claims

**Joint Chapter 11 Plan of Liquidation of Bainbridge Uinta, LLC and Bainbridge Uinta Holdings, LLC**

**Unclassified Claims**

| Claimant | Distribution Address | Allowed Amount | Type of Claim | Projected Distribution |
|---|---|---|---|---|
| Oak Hills Securities Inc. | 232 NE 50th Street<br>Oklahoma City, OK 73105 | $15,000.00 | Administrative Claim | $15,000.00 |

**Total Allowed Unclassified Claims\* / Projected Distributions**      **$15,000.00**      **$15,000.00**

\* Consistent with Article II of the Plan, Allowed Professional Fee Claims and U.S. Trustee Fees are not listed in this Schedule of Allowed Claims.  There are no Allowed Priority Tax Claims under the Plan.

# Exhibit E

**Insurance Cancellation Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BAINBRIDGE UINTA, LLC, *et al.*,[1] | § | Case No. 20-42794 |
| | § | |
| Debtors. | § | Jointly Administered |

## NOTICE OF INSURANCE POLICY CANCELLATION

**PLEASE TAKE NOTICE THAT**, on or about September 29, 2020, Bainbridge Uinta LLC and Bainbridge Uinta Holdings, LLC, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the **"Debtors"**), filed their *Debtors' Motion for Authority to Enter into Insurance Premium Financing Agreement* [Docket No. 90] seeking authority to enter into that certain *Commercial Premium Finance Agreement* attached thereto as <u>Exhibit B</u> [Docket No. 90-2] (the **"Insurance Financing Agreement"**). A true and correct copy of the Insurance Financing Agreement is attached hereto as **<u>Annex 1</u>** and is fully incorporated herein by reference.

**PLEASE TAKE FURTHER NOTICE THAT**, on or about October 22, 2020, the Bankruptcy Court entered an *Order Authorizing Debtors to Enter into Insurance Premium Finance Agreement and to Provide Adequate Protection* [Docket No. 120] authorizing the Debtors to enter into the Insurance Financing Agreement, among other things.

**PLEASE TAKE FURTHER NOTICE THAT**, by way of the Insurance Financing Agreement, the Debtors financed each of the nine (9) insurance policies set forth in the "Schedule of Policies" section of the Insurance Financing Agreement (each an **"Insurance Policy,"** and collectively, the **"Insurance Policies"**).

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the *Debtors' Joint Chapter 11 Plan of Liquidation* [Docket No. 293] (as may be amended, supplemented, or modified from time to time, the **"Plan"**),[2] **the Debtors hereby give notice that each of the Insurance Policies set forth in the Insurance Financing Agreement shall be cancelled and terminated effective as of <u>June 30, 2021</u>**. To the extent that any of the Insurance Policies are determined by the Bankruptcy Court to be Executory Contracts subject to 11 U.S.C. § 365, each insurance policy shall be deemed rejected as of the Plan's Effective Date pursuant to Article X of the Plan.

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Bainbridge Uinta, LLC (9240); and Bainbridge Uinta Holdings, LLC (9761).

[2] Capitalized terms not defined herein shall have the meanings provided in the Plan unless otherwise noted.

**Annex 1**
Insurance Financing Agreement

**LENDER:**

# PREMIUM FINANCE AGREEMENT

☐ Personal  ☑ Commercial  ☐ Additional Premium

**FIRST INSURANCE** FUNDING

A WINTRUST COMPANY

Northbrook, IL 60062-7917
P:(800) 837-2511 F:(800) 837-3709
www.firstinsurancefunding.com

**Quote #:**

| INSURED/BORROWER | Customer ID: N/A | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy)<br>Bainbridge Uinta, LLC<br>8150 N Central Expressway, Suite 650<br>Dallas, TX 75206 | | (Name and Business Address)<br>ALLIANT INSURANCE SRVCS-MARINE & ENERGY<br>5444 WESTHEIMER SUITE 900<br>HOUSTON, TX 77056 |

## LOAN DISCLOSURE

| Total Premiums, Taxes, and Fees | Down Payment | Unpaid Premium Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 311,018.15 | 78,879.54 | 232,138.61 | 0.00 | 232,138.61 | 3,879.69 | 236,018.30 | 3.630 % |

*YOUR PAYMENT SCHEDULE WILL BE:*   *Mail Payments to: FIRST INSURANCE Funding, PO Box 7000, Carol Stream, IL 60197-7000*

| Number of Payments | Amount of Each Payment | First Installment Due | 10/25/2020 |
|---|---|---|---|
| 10 | 23,601.83 | Installment Due Dates | 25th (Monthly) |

**INSURED'S AGREEMENT:**

**1. SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a first priority lien on and security interest in the financed policies and any additional premium required under the financed policies listed in the Schedule of Policies, including (a) all returned or unearned premiums, (b) any credits generated by the financed policies, (c) dividend payments, and (d) loss payments which reduce unearned premiums (collectively, the "Financed Policies"). If any circumstances exist in which premiums related to any Financed Policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

**2. FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the Financed Polices. The finance charge is computed using a 365-day calendar year.

**3. LATE PAYMENT.** For commercial loans, a late charge will be assessed on any installment at least 5 days in default, and the late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less. For personal loans, a late charge will be assessed on any installment 10 days in default, and the late charge will be the lesser of $10 or 5% of the delinquent installment.

**4. PREPAYMENT.** If Insured prepays the loan in full, Insured is entitled to a refund of the unearned finance charge computed according to the Rule of 78s.

### SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C03059-ST PAUL FIRE AND MARINE INS COMPANY<br>G03220-TRAVELERS<br>[CX:0]   [90%PR] | GL | 12 | 09/25/2020<br>ERN TXS/FEES<br>FIN TXS/FEES | 19,825.00<br>0.00<br>0.00 |
| TBD | C03059-ST PAUL FIRE AND MARINE INS COMPANY<br>G03220-TRAVELERS<br>[CX:0]   [90%PR] | AUTO | 12 | 09/25/2020<br>ERN TXS/FEES<br>FIN TXS/FEES | 41,458.00<br>0.00<br>0.00 |
| (Policies continued on next page ) | | | | TOTAL | 311,018.15 |

Q# 24067324, PRN: 090220, CFG: ALLIANT-MARINE & ENERGY, RT: ALLIANT-CSG-30D, DD: 30, BM: Invoice, Qtd For: A14909 Original, Memo 0

**5. PROMISE TO PAY.** In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies (or their authorized representative) or the Agent or Broker listed above, Insured unconditionally promises to pay, to the order of LENDER, the Amount Financed plus interest subject to all the provisions of this Agreement.

**6. POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (a) cancel the Financed Policies in accordance with the provisions contained herein, (b) receive all sums assigned to LENDER, and (c) execute and deliver on behalf of Insured all documents relating to the Financed Policies in furtherance of this Agreement. This right to cancel will terminate only after all of Insured's indebtedness under this Agreement is paid in full. Insured is responsible for the Amount Financed plus interest, irrespective of whether LENDER exercises this right to cancel the Financed Policies.

**7. SIGNATURE & ACKNOWLEDGEMENT.** Insured has received, reviewed, and signed a copy of this Agreement. If Insured is not an individual, the undersigned has the requisite authority to (a) enter into this Agreement on behalf of Insured and any other insureds named on the Financed Policies, and (b) jointly and severally agree on behalf of all named insureds to the provisions set forth in this Agreement. All named Insured(s), jointly and severally if more than one, agree to all provisions set forth in this Agreement. **Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.**

**NOTICE TO INSURED: (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space.  (2) You are entitled to a completely filled-in copy of this Agreement.  (3) You have the right prepay the loan in full and receive a refund of any unearned finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.**

_____   _____   _____   _____
Signature of Insured or Authorized Agent   Date   Signature of Agent   Date

**The undersigned hereby warrants and agrees to the Agent or Broker Representations and Warranties set forth herein.**

**ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT**

**8. APPLICATION OF PAYMENTS.** (a) Payments received by LENDER from Insured shall be applied first to installments, then to any fees. The payment of installments is prioritized over the payment of fees, which means when LENDER receives partial payments or overpayments of any installment(s), amounts previously applied to fees may reallocated to enable a full installment(s) to be paid. This payment application method may cause fees to reappear as unpaid and owing after the payment period in which the fees were originally assessed and paid, but does not increase or otherwise change the amount of fees that Insured may be required to pay under this Agreement. (b) Any returned premium received by LENDER from the Financed Policies will be applied to reduce the total unpaid balance under this Agreement, which shall not relieve Insured of its obligation to pay any remaining installments due but may reduce the amount of such installments.

**9. EFFECTIVE DATE.** This Agreement will not become effective until it is accepted in writing by LENDER. LENDER will send a Notice of Acceptance to Insured to confirm this Agreement is effective.

**10. DEFAULT/CANCELLATION.** Insured is in default under this Agreement if (a) the Down Payment, if to be collected by LENDER, or any payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in a cancellation of the Financed Policies, Insured agrees to pay a cancellation charge for commercial loans, which will be the maximum permitted by law. No cancellation charge shall apply to personal loans. If cancellation or default occurs, Insured agrees to pay interest on the unpaid balance due at the contract rate until the balance is paid in full.

**11. LIMITATION OF LIABILITY. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER.**

**12. INSUFFICIENT FUNDS CHARGE.** If Insured's payment is dishonored for any reason and if permitted by law, Insured will pay LENDER an insufficient funds charge equal to the maximum fee permitted by law for commercial loans and $10 for personal loans.

**13. LENDER's RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER. Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation of the Financed Policies will be credited to the balance due with any excess paid to the Insured; the minimum refund is $1.00. Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER's representations about the Financed Policies.

**14. ASSIGNMENT.** Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent. LENDER may transfer its rights under this Agreement without the consent of Insured.

**15. AGENT OR BROKER.** Insured agrees that the Agent or Broker issuing the Financed Policies or through whom the Financed Policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. Where permissible by law, LENDER will pay some portion of the finance charge or other form of compensation to the Agent or Broker executing this Agreement for aiding in the administration of this Agreement. In NY, the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

**16. COLLECTION COSTS.** Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**17. GOVERNING LAW.** This Agreement is governed by applicable federal law and Illinois law (to the extent not preempted by federal law), without regard to principles of conflicts of law or choice of law. If any court finds any part of this Agreement to be invalid, such finding shall not affect the remaining provisions of this Agreement.

**18. WARRANTY OF ACCURACY.** Insured represents and warrants that to the best of it's knowledge: (a) the Financed Policies are in full force and effect and that the Insured has not and will not assign any interest in the Financed Policies except for the interest of mortgagees and loss payees, (b) the Down Payment and any past due payments have been paid in full to the Agent or Broker in cash or other immediately available funds, (c) all information provided herein or in connection with the Agreement is true, correct, and not misleading, (d) Insured is not insolvent nor presently involved in any insolvency proceeding, (e) Insured has no indebtedness to the insurance companies issuing the Financed Policies, (f) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of the Financed Policies, and (g) Insured has disclosed if he or she is a covered member of the armed forces or a dependent of a covered member as defined in the Military Lending Act.

**19. ADDITIONAL PREMIUMS.** (a) Insured expressly agrees to (i) fully and timely comply with all audits by the insurance companies issuing the Financed Policies, (ii) timely provide complete and accurate payroll information, if applicable, and (iii) pay to the insurance companies any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. (b) Insured, or Agent or Broker, may request that LENDER finance additional policies and/or additional premiums (the "Additional Premiums") for Insured during the term of this Agreement. If LENDER agrees, LENDER will send a Notice of Acceptance to Insured to confirm its approval to finance the Additional Premiums. For commercial loans, this Agreement shall be deemed amended on the date of the Notice of Acceptance to consolidate the Additional Premiums with Financed Policies into a single and indivisible loan transaction subject to this Agreement (with applicable changes to the payment schedule), and the Additional Premiums shall be "Financed Policies" on the date of the Notice of Acceptance. For personal loans, LENDER (or Agent or Broker on LENDER's behalf) will provide a separate Premium Finance Agreement to Insured for any Additional Premiums.

**20. CORRECTIONS.** LENDER may insert the names of insurance companies or policy numbers in the Schedule of Policies, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement.

**21. NON-WAIVER.** Not Applicable.

**22. ELECTRONIC STATEMENT AND NOTICE DELIVERY. By executing this Agreement, Insured agrees to receive all billing statements, notices, and other communications via electronic delivery in PDF format as permitted by applicable law. It is Insured's responsibility to provide LENDER with true, accurate, and complete e-mail and contact information related to this Agreement and to maintain and update promptly any changes to this information. If Insured wishes to (i) opt out of electronic statement and notice delivery, or (ii) update contact information, Insured can log into Insured's account on www.firstinsurancefunding.com or call (800) 837-2511.**

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES**

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1) Insured has received a copy of this Agreement and has authorized this transaction, Insured's signature is genuine, and the Down Payment has been received from Insured (unless the Down Payment was made to Lender), (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the Financed Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will hold harmless and indemnify LENDER and its successors and assigns against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

## SCHEDULE OF POLICIES

Insured: Bainbridge Uinta, LLC
Quote #: ▮▮▮▮▮

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C03059-ST PAUL FIRE AND MARINE INS COMPANY<br>[CX:0]   [90%PR] | EPLI | 12 | 09/25/2020<br>ERN TXS/FEES<br>FIN TXS/FEES | 163.00<br>0.00<br>0.00 |
| TBD | C01313-ST PAUL FIRE & MARINE INS<br>G03220-TRAVELERS<br>[CX:0]   [90%PR] | UMB | 12 | 09/25/2020<br>ERN TXS/FEES<br>FIN TXS/FEES | 31,457.00<br>0.00<br>0.00 |
| TBD | C03111-TRAVELERS PROPERTY CASUALTY COMPANY OF A<br>G03220-TRAVELERS<br>[CX:0]   [90%PR] | WC | 12 | 09/25/2020<br>ERN TXS/FEES<br>FIN TXS/FEES | 13,992.00<br>0.00<br>0.00 |
| TBD | C03027-IRONSHORE SPECIALTY INSURANCE COMPANY<br>G00600-SYNAPSE PARTNERS LLC<br>[CX:0]   [90%PR] | POLL | 12 | 09/25/2020<br>ERN TXS/FEES<br>FIN TXS/FEES | 45,523.00<br>750.00<br>2,313.65 |
| TBD | C03027-IRONSHORE SPECIALTY INSURANCE COMPANY<br>G00600-SYNAPSE PARTNERS LLC<br>[CX:0]   [90%PR] | POLL | 12 | 09/25/2020<br>ERN TXS/FEES<br>FIN TXS/FEES | 14,134.00<br>750.00<br>744.20 |
| TBD | C00481-ST PAUL FIRE & MARINE INSURANCE<br>G03220-TRAVELERS<br>[CX:0]   [90%PR] | EXLB | 12 | 09/25/2020<br>ERN TXS/FEES<br>FIN TXS/FEES | 36,000.00<br>0.00<br>1,800.00 |
| TBD | C00005-LLOYDS OF LONDON<br>G03803-BISHOPSGATE INSURANCE BROKERS LTD<br>[CX:0]   [90%PR] | PKG | 12 | 09/25/2020<br>ERN TXS/FEES<br>FIN TXS/FEES | 97,246.00<br>0.00<br>4,862.30 |

**FIF0720NBP**